FIRST AMENDMENT TO
TRI-PARTY FORBEARANCE AGREEMENT

THIS FIRST AMENDMENT TO TRI-PARTY FORBEARANCE AGREEMENT (this "First Amendment"), dated as of January 30, 2020, is entered into by and among VIDEOMINING CORPORATION, a corporation organized under the laws of the State of Delaware, having its principal offices at 403 South Allen Street, Suite 101, State College, Pennsylvania 16801 ("Company"), Enterprise Bank, a bank formed under the laws of the Commonwealth of Pennsylvania, having its principal offices at 4091 Mount Royal Boulevard, Allison Park, PA 15101 (the "Bank") and WHITE OAK BUSINESS CAPITAL, INC. (formerly known as Federal National Payables, Inc., and formerly doing business as Federal National Commercial Credit) ("White Oak" and collectively and individually with the Bank referred to herein as the "Secured Creditors").

## W I T N E S S E T H:

WHEREAS, the Company and the Secured Creditors have entered into that certain Tri-Party Forbearance Agreement (the "Tri-Party Forbearance Agreement") dated as of January 8, 2020 (capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Tri-Party Forbearance Agreement).

WHEREAS, a Forbearance Termination Event has occurred pursuant to Section 6.3 of the Tri-Party Forbearance Agreement as a result of the Company's failure to comply with the terms of Section 5.2(d) of the Tri-Party Forbearance Agreement (the "Budget Default");

WHEREAS, the Company has requested the Secured Creditors substitute the amended Budget annexed to this First Amendment as Exhibit A and made a part hereof (the "Amended Budget") in place of the Budget annexed as Exhibit A to the Tri-Party Forbearance Agreement;

WHEREAS, the Company and Green Note Capital Partners, Inc. ("Green Note") are about to enter into a certain Settlement Agreement and Release (the "Green Note Agreement") on or about the date of this First Amendment in order for the Company to settle its obligations with Green Note and obtain the release of the accounts receivable due to the Company from Hershey;

WHEREAS, in order to fund the payment of $25,000 due to Green Note under the Green Note Agreement, the Company has requested, and the Secured Creditors have agreed to, allow the Company to borrow $25,000 from Murtaza Amil (the "New Lender") pursuant to a certain Subordinated Secured Note Purchase Agreement dated on or about the date of this First Amendment (the "Subordinated Note Purchase Agreement");

WHEREAS, the Company and Guarantors have requested that the Secured Creditors forbear from exercising their respective rights and remedies and/or waive the Budget Default and make certain other amendments to the Tri-Party Forbearance Agreement in accordance with the recitals hereinabove.

NOW, THEREFORE, in consideration of the foregoing, and the respective agreements, warranties and covenants contained herein, the parties hereto agree, covenant and warrant as follows:

SECTION 1.  AGREEMENT.

1.1  Budget Default. The definition "White Oak Specified Defaults" and "Bank Specified Defaults" are both hereby amended to include the Budget Default.

1.2  Loan from the New Lender. The Secured Creditors hereby consent to the Company borrowing $25,000 from the New Lender on an unsecured subordinated basis ( the "New Loan"). The Borrower shall not be permitted to receive or demand, and the New Lender shall not demand or accept, any payments of principal, interest, fees or expenses under the Subordinated Note Purchase Agreement. The Subordinated Note Purchase Agreement shall evidence that the New Loan is unsecured, the payments are fully subordinated to the Company's Obligations to the Secured Creditors and the New Lender agrees to standstill and not take any actions to enforce its rights and remedies against the Company and the Guarantors until the Secured Creditors are fully paid and satisfied.

1.3  Green Note Litigation and Hershey Receivable. As a condition to the Secured Creditors' consent to this First Amendment, within 3 Business Days after the payment to Green Note, the Company shall have received and provided copies to the Secured Creditors of a filed copy of a Stipulation of Dismissal with Prejudice of the judgment bearing Index Number 517719-19 in the New York Supreme Court in Kings County and receipt of the payment in an amount equal to $171,600 from Hershey. Failure of the Company to provide proof to the Secured Creditors as required herein shall be a Termination Event under the Tri-Party Forbearance Agreement.

1.4  Budget. The Budget that was set forth as Exhibit A to the Tri-Party Forbearance Agreement is hereby deleted and replaced by the Amended Budget. All references in the Tri-Party Forbearance Agreement to the Budget are hereby deemed to mean the Amended Budget. Company and the Guarantors hereby acknowledge, confirm, and agree that the Company has prepared and delivered to the Secured Creditors the Amended Budget, which sets forth for the Company, among other information, weekly cash flows, together with a written explanation of all assumptions relevant to the Budget, for the period commencing with the week ending on January 10, 2020 through the Tri-Party Forbearance Termination Date. As a material inducement to the Secured Creditors to enter into this Tri-Party Forbearance Agreement the Company and the Guarantors represent to the Secured Creditors (i) they have used their best efforts to prepare the Budget and the information contained therein is true and accurate to the best of their knowledge, (ii) other than the advance made by White Oak to the Company pursuant to the Fifth Overadvance Letter, the Company will be able to pay its expenses from its own cash flow and will not require any additional borrowings from the Secured Creditors and (iii) the financial results forecasted in the Amended Budget are reasonable and achievable.

1.5  Consultant. White Oak's counsel has employed Clear Thinking Group, LLC (the "Consultant") to review the Amended Budget and to continue to monitor the Borrower's compliance with the Amended Budget and its reporting. The Borrower hereby agrees to fully cooperate with and provide the Consultant with accurate and truthful information in a timely manner. The Borrower acknowledges and agrees the cost of the Consultant will be borne by the Borrower and added to the Borrower's obligations to White Oak.

1.6   Forbearance Fee. In consideration of White Oak entering into this First Amendment, the Company and the Guarantors agree to pay to White Oak simultaneous with the execution of this First Amendment, a non-refundable, irrevocable fee, which is deemed to be fully earned, on the date of this First Amendment, and shall be due and payable on the date of the Sale, in an amount equal to $25,000.

1.7   References to Tri-Party Forbearance Agreement. From and after the date of this First Amendment, all references herein, in the Tri-Party Forbearance Agreement and the Secured Creditors Loan Documents to "Loan Documents" shall be deemed to include, without limitation, a reference to this First Amendment.

SECTION 2.   PROVISIONS OF GENERAL APPLICATION

2.1   Effect of this First Amendment. Except as modified pursuant hereto, no other changes or modifications to the Tri-Party Forbearance Agreement are intended or implied and in all other respects the Tri-Party Forbearance Agreement is hereby specifically ratified, restated and confirmed by all parties hereto as of the effective date hereof. To the extent of a conflict between the terms of this First Amendment and the Tri-Party Forbearance Agreement, the terms of this First Amendment shall control.

2.2   Binding Agreement; No Third Party Beneficiaries. This First Amendment shall be binding upon and inure to the benefit of the Secured Creditors, Company, Guarantors and their respective successors and assigns. This First Amendment is solely for the benefit of Secured Creditors, Company, Guarantors and their respective successors and assigns, and no other person shall have any right, benefit, priority or interest under, or because of the existence of, this First Amendment.

2.3   Costs and Expenses. In addition to all other fees and expenses payable by the Company to Secured Creditors under the Tri-Party Forbearance Agreement, the Company shall reimburse the Secured Creditors for all costs and expenses, including legal fees and expenses, incurred by the Secured Creditors in the structuring, negotiation, arrangement or preparation of this First Amendment and the agreements, documents and/or instruments to be executed in connection herewith or contemplated hereby.

2.4   Further Assurances. The parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this First Amendment.

2.5   Governing Law.   The validity, interpretation and enforcement of this First Amendment whether in contract, tort, equity or otherwise, shall be governed by the internal laws of the Commonwealth of Pennsylvania but excluding any principles of conflicts of law or other rule of law that would cause the application of the law of any jurisdiction other than the laws of the Commonwealth of Pennsylvania.

2.6   **Waiver of Jury Trial. To the fullest extent permitted by applicable law, the Company and Guarantors each hereby irrevocably waive any right to trial by jury of any claim, demand, action or cause of action arising under this First Amendment or in any way connected with or related or incidental to the dealings of the parties hereto in respect of this**

**First Amendment or the transactions contemplated hereby, in each instance whether now existing or hereafter arising and whether in contract, tort, equity or otherwise.**

  2.7 Counterparts. This First Amendment may be executed in any number of counterparts, each of which shall be an original, but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this First Amendment by telefacsimile or other method of electronic transmission shall have the same force and effect as the delivery of an original executed counterpart of this First Amendment. In making proof of this First Amendment, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties thereto.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have caused this First Amendment to be duly executed and delivered by their authorized officers as of the day and year first above written.

VIDEOMINING CORPORATION

By: _____
Name: Rajeev Sharma
Title: President

_____
RAJEEV SHARMA, Individually, as Guarantor

_____
VISHNU SHARMA, Individually, as Guarantor

SIGNATURES CONTINUED ON NEXT PAGE

4810-6252-6386, v. 5

WHITE OAK BUSINESS CAPITAL, INC.

By: _____
Name:  Kysha Pierre-Louis
Title:   Chief Credit Officer


ENTERPRISE BANK

By: _____
Name:
Title:

WHITE OAK BUSINESS CAPITAL, INC.

By: _____
Name: Kysha Pierre-Louis
Title: Chief Credit Officer


ENTERPRISE BANK

By: _____
Name: Joseph A. Miller
Title: Sr. V.P. / In-House Counsel

# EXHIBIT A

## AMENDED BUDGET

**SEE ATTACHED**

4810-6252-6386, v. 5

VideoMining Corporation
Jan - April 2020 Cash Flow

| Week Ending ==> | Week 1<br>10-Jan | Week 2<br>17-Jan | Week 3<br>24-Jan | Week 4<br>31-Jan | Week 5<br>7-Feb | Week 6<br>14-Feb | Week 7<br>21-Feb | Week 8<br>28-Feb | Week 9<br>6-Mar | Week 10<br>13-Mar | Week 11<br>20-Mar | Week 12<br>27-Mar | Week 13<br>3-Apr | Week 14<br>10-Apr | Week 15<br>17-Apr | Week 16<br>24-Apr | Week 17<br>1-May |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning A/R | $706,520 | $642,270 | $642,270 | $739,770 | $739,770 | $822,485 | $692,885 | $577,350 | $665,350 | $740,350 | $860,350 | $972,850 | $972,850 | $610,850 | $568,850 | $660,250 | $626,250 |
| New Sales | $0 | $0 | $97,500 | $0 | $92,750 | $42,000 | $19,600 | $88,000 | $75,000 | $120,000 | $112,500 | $0 | $56,250 | $0 | $111,000 | $54,000 | $0 |
| Sale of Patents | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $2,500,000 |
| Collections | ($64,250) | $0 | $0 | $0 | ($9,960) | ($171,600) | ($135,135) | $0 | $0 | $0 | $0 | $0 | ($418,250) | ($42,000) | ($19,600) | ($88,000) | ($2,575,000) |
| Discounts Taken | $0 | $0 | $0 | $0 | ($75) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Ending A/R | $642,270 | $642,270 | $739,770 | $739,770 | $822,485 | $692,885 | $577,350 | $665,350 | $740,350 | $860,350 | $972,850 | $972,850 | $610,850 | $568,850 | $660,250 | $626,250 | $551,250 |
| EXPENSES | | | | | | | | | | | | | | | | | |
| Payroll | $0 | $0 | $0 | $45,000 | $0 | $45,000 | $0 | $90,000 | $0 | $0 | $0 | $0 | $90,000 | $0 | $0 | $0 | $90,000 |
| Benefits | $0 | $0 | $0 | $11,500 | $1,000 | $1,000 | $0 | $12,500 | $0 | $0 | $0 | $0 | $12,500 | $0 | $0 | $0 | $12,500 |
| Professional Services | $0 | $0 | $0 | $0 | $0 | $12,000 | $0 | $12,000 | $0 | $0 | $0 | $0 | $12,000 | $0 | $0 | $0 | $12,000 |
| Taxes | $0 | $0 | $0 | $11,500 | $0 | $0 | $11,500 | $0 | $30,000 | $0 | $11,500 | $0 | $30,000 | $0 | $11,500 | $0 | $30,000 |
| Operating Expenses | $145,000 | $0 | $0 | $0 | $9,000 | $27,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 |
| TOTAL OPERATING EXPENSES | $145,000 | $0 | $0 | $68,000 | $10,000 | $85,000 | $19,500 | $122,500 | $38,000 | $8,000 | $19,500 | $8,000 | $152,500 | $8,000 | $19,500 | $8,000 | $152,500 |
| Reserve Account Beginning Cash | $149,000 | $68,250 | $68,250 | $68,250 | $250 | $210 | $86,810 | $202,445 | $79,945 | $41,945 | $33,945 | $14,445 | $6,445 | $272,195 | $306,195 | $306,295 | $386,295 |
| Collections | $64,250 | $0 | $0 | $0 | $9,960 | $171,600 | $135,135 | $0 | $0 | $0 | $0 | $0 | $418,250 | $42,000 | $19,600 | $88,000 | $2,575,000 |
| Less Operating Expenses | ($145,000) | $0 | $0 | ($68,000) | ($10,000) | ($85,000) | ($19,500) | ($122,500) | ($38,000) | ($8,000) | ($19,500) | ($8,000) | ($152,500) | ($8,000) | ($19,500) | ($8,000) | ($2,268,203) |
| Ending Cash Balance | $68,250 | $68,250 | $68,250 | $250 | $210 | $86,810 | $202,445 | $79,945 | $41,945 | $33,945 | $14,445 | $6,445 | $272,195 | $306,195 | $306,295 | $386,295 | $693,092 |
| WOBC Opening Balance | $875,745 | $1,357,592 | $1,360,118 | $1,362,644 | $1,365,171 | $1,367,697 | $1,370,223 | $1,372,749 | $1,375,275 | $1,377,802 | $1,380,328 | $1,382,854 | $1,385,380 | $1,387,906 | $1,390,432 | $1,392,959 | $1,395,485 |
| Estimated Interest, Fees, etc. | $481,847 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $2,526 | $102,526 |
| Payments | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($1,498,011) |
| WOBC Ending Balance | $1,357,592 | $1,360,118 | $1,362,644 | $1,365,171 | $1,367,697 | $1,370,223 | $1,372,749 | $1,375,275 | $1,377,802 | $1,380,328 | $1,382,854 | $1,385,380 | $1,387,906 | $1,390,432 | $1,392,959 | $1,395,485 | $0 |
| Enterprise Opening Balance | $601,038 | $606,596 | $607,290 | $607,983 | $608,677 | $609,370 | $610,064 | $610,757 | $611,451 | $612,144 | $612,838 | $613,531 | $614,225 | $614,918 | $615,612 | $616,305 | $616,999 |
| Estimated Interest, Fees, etc. | $5,558 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 | $694 |
| Payments | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($617,692) |
| Enterprise Ending Balance | $606,596 | $607,290 | $607,983 | $608,677 | $609,370 | $610,064 | $610,757 | $611,451 | $612,144 | $612,838 | $613,531 | $614,225 | $614,918 | $615,612 | $616,305 | $616,999 | $0 |
| Ending A/R | $642,270 | $642,270 | $739,770 | $739,770 | $822,485 | $692,885 | $577,350 | $665,350 | $740,350 | $860,350 | $972,850 | $972,850 | $610,850 | $568,850 | $660,250 | $626,250 | $551,250 |
| (plus) Ending Cash Balance | $68,250 | $68,250 | $68,250 | $250 | $210 | $86,810 | $202,445 | $79,945 | $41,945 | $33,945 | $14,445 | $6,445 | $272,195 | $306,195 | $306,295 | $386,295 | $693,092 |
| Total A/R + Cash | $710,520 | $710,520 | $808,020 | $740,020 | $822,695 | $779,695 | $779,795 | $745,295 | $782,295 | $894,295 | $987,295 | $979,295 | $883,045 | $875,045 | $966,545 | $1,012,545 | $1,244,342 |
| (less) Beginning A/R Balance | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $706,520 | $0 |
| Proceeds Account Availability | $4,000 | $4,000 | $101,500 | $33,500 | $116,175 | $73,175 | $73,275 | $38,775 | $75,775 | $187,775 | $280,775 | $272,775 | $176,525 | $168,525 | $260,025 | $306,025 | $1,244,342 |