FILED
2/13/20 2:19 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | |
| **VIDEOMINING CORPORATION,** | Bankruptcy No. 20-20425-GLT |
| Debtor. | Chapter 11 |
| **VIDEOMINING CORPORATION,** | Document No. |
| Movant, | Related to Doc. Nos. 52 |
| vs. | |
| **ENTERPRISE BANK, WHITE OAK BUSINESS CAPITAL, INC., ON DECK CAPITAL, ITRIA VENTURES, LLC, BROADWAY ADVANCE FUNDING, GREEN NOTE CAPITAL PARTNERS, INC.,** | Hearing Date and Time: March 12, 2020 at 3:30 p.m. |
| Respondents. | |

<u>**ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL
THROUGH MARCH 12, 2020**</u>

AND NOW, after notice and hearing on the Emergency Motion of the Debtor for Authorization to use Cash collateral and White Oak Business Capital, Inc. ("White Oak") and Enterprise Bank ("Enterprise" and individually and collectively referred to herein as the "Secured Creditors") having claimed liens thereon, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

(1) Debtor shall be, and hereby is, authorized on an interim basis to utilize the cash collateral in the operation of its business and in accordance with the budget attached as Exhibit A to its Emergency Motion for Interim and Final Orders Authorizing the Debtor to Use Cash Collateral (the "Budget"). The Debtor shall be permitted a variance of 15% of the budgeted amount of total weekly operating expenses and a

variance of 10% of the budgeted amount of post-petition sales on a trailing 4 week basis to be tested every 2 weeks commencing with the week ending on February 21, 2020. Said authorization shall be valid through and including March 12, 2020. In the event the Debtor's actual financial results negatively deviate from the variances described above, the Secured Creditors may make a motion to the Court on shorten time to revoke the Debtor's use of cash collateral.

(2)  All payments from Debtor to Robert O Lampl Law Office shall be deposited and held in trust in the escrow account of Robert O Lampl Law Office until such payments, and the fees and expenses related thereto, are approved by the entry of a Court Order approving the relevant fee application of Robert O Lampl law Office.

(3) The pre-petition liens of the Secured Creditors are hereby continued post-petition to the same extent, priority and validity as existed prior to the within bankruptcy on all assets including but not limited to the Debtor's post-petition receivables.

(4) The value of the Secured Creditors' liens shall not be greater post-petition than the value thereof at the time of the filing of the bankruptcy petition initiating this case, plus accruals thereafter and minus payments to the Secured Creditors thereafter. No additional financing statements or mortgages need be filed to perfect such post-petition liens and security interests.

(5) In the event the Debtor seeks the entry of an Order ("DIP Order") authorizing Debtor in Possession financing ("DIP Loan"), unless required on a more emergent basis by the Borrower, it shall use its best efforts to file the motion for the DIP Loan (the "DIP Motion") to be returnable on March 12, 2020 at 3:30 pm, if practical and acceptable to the Court. Upon the entry of the DIP Order, if one is entered, White Oak's lien on the

Debtor's post-petition receivables shall be subordinated in favor of the DIP lender in the amount owed to the DIP lender under the DIP Loan. Such a subordination shall apply only to receivables generated by the Debtor after the entry of the DIP Order. White Oak shall maintain its first priority lien position on all post-petition receivables created between the date of the filing of the Debtor's Voluntary Petition for Non-Individuals Filing for Bankruptcy on February 4, 2020 (the "Petition Date") and the date immediately prior to the entry of the DIP Order.

(6) The Debtor shall promptly pay to White Oak 30% of the collected amount of all pre-petition receivables and all post-petition receivables created prior to the entry of the DIP Order.

(7) The Debtor shall participate in a weekly conference call with the Secured Creditors and their advisors during which the Debtor shall provide details regarding its performance and compliance with the Budget.

(8) The Debtor shall provide White Oak's consultant, Clear Thinking Group, LLC ("CTG") and Enterprise with access to view its books and records and make personnel of the Debtor available to CTG and Enterprise's reasonable requests to discuss the Debtor's financial, operational and sale process results.

(9). The Debtor shall employ a broker to market all or substantially all of its assets and/or its patent portfolio, as the Debtor deems appropriate in its reasonable business judgment. The Debtor shall employ the Broker on or before February 29, 2020 and shall promptly file an application with the Court to approve the broker's employment. The broker must agree to commence its services on the date of employment.

(10) Pursuant to a further Order of the Court, the Debtor shall enter into a bona fide sales agreement with a third-party for the sale of some or all of its assets on or before August 21, 2020, the consideration of which shall be sufficient to pay the claims of the Secured Creditors and any other lienholder having a lien superior to the Secured Creditors on the assets being sold, in full. In the event the Debtor has not entered into such sales agreement by August 21, 2020, the Debtor will immediately commence and conduct an auction process for its patent assets which auction shall occur on or before September 30, 2020, with a reputable broker who regularly conducts auctions of assets similar to the Debtor's patents. White Oak and Enterprise reserve their right to objection to any such sale.

(11) The rights, defenses and objections of all parties as to the Debtor's use of cash collateral including, but not limited to, any final determination as to the nature, extent and priority of any lien thereon are preserved in full pending entry of a final cash collateral order and entry of a final order authorizing DIP financing. Additionally, the rights, defenses and objections of all parties are specifically preserved in full with respect to the contemplated DIP Motion, the value of the Debtor's assets, the approval of a broker, the approval of a sale process and auction process, and all terms and conditions of the same including whether to provide DIP financing or agree to the relief requested in such motions, or not.

(12) Enterprise is authorized and directed to continue to service the Debtor's direct deposit or other accounts maintained by Enterprise (the "Bank Account") as an account of the debtor-in-possession, and to receive, process, honor, and pay, to the extent funds are available, any and all checks, drafts, wire transfers, ACH transfers or other requested debits (collectively the "Debits") which are drawn on the Bank Account,

whether dated on, before, or after the Petition Date, whether for obligations arising before or after the Petition Date, including pre-petition payroll and associated payroll taxes, which the Debtor represents such amounts are in compliance with the Budget and the Bankruptcy Code. The Debtor will instruct Enterprise as to which Debits are not authorized by Court Order or the Bankruptcy Code and should not be honored. Except for those Debits that are authorized by an Order of this Court or the Bankruptcy Code, the Debtor shall not instruct or request Enterprise to pay or honor any Debtor issued checks prior to the Petition Date, or for an obligation arising prior to the Petition Date.

(13) White Oak and Enterprise are hereby each granted and entitled to a super priority administrative expense claim (each a "Super-Priority Claim") pursuant to section 507(b) of the Bankruptcy Code, with priority over all other administrative expense claims with the exception of any administrative expense claims asserted by any of the Debtor's Court approved professionals. The Super-Priority Claims of White Oak and Enterprise shall be limited in amount to the diminution in value of their interests in and to their respective collateral existing as of the Petition Date which occurs during this case.

(14) A final hearing to consider the entry of an Order authorizing the Debtor to use cash collateral on a final basis consistent with the terms set forth herein shall be held on March 12, 2020 at 3:30 p.m. in Courtroom A 54th Floor, U.S. Steel Tower, 600 Grant St., Pittsburgh.

(15) Any Objections to the entry of a final Order authorizing the use of cash collateral consistent with the terms set forth herein shall be filed by March 5, 2020 at 4:00 p.m. ET, and promptly served on Respondents, the 20 largest unsecured creditors of the Debtor, the United States Trustee and such other parties, if any, as may be required by Bankruptcy Rule 4001 and Local Rule 4001.1-4001.3.

(16) Counsel for Debtor shall serve this Order on the Respondents, the 20 largest unsecured creditors of the Debtor, the United States Trustee and such other parties, if any, as may be required by Bankruptcy Rule 4001 and Local Rule 4001.1-4001.3.

Dated: 2/13/20

cm: Robert Lampl, Esq.

_____
Gregory␣. Taddonio  hct
United States Bankruptcy Court Judge