

February 25, 2020

Rajeev Sharma, PhD
Founder & CEO
VideoMining Corporation
403 South Allen Street, Suite 101
State College, PA 16801

Dear Dr. Sharma:

I am pleased to inform you that Enterprise Bank (hereinafter the "Bank") has approved the following financing request to VideoMining Corporation (hereinafter the "Borrower"). This offer is subject to the terms and conditions in the documents signed by the parties to evidence the loan transaction and include, but are not limited to, the following terms and conditions:

A.   Debtor in Possession Revolving Line of Credit

| | |
|---|---|
| Borrower: | VideoMining Corporation |
| Amount: | Borrower shall be permitted to draw on the DIP Line of Credit up to 50% of eligible accounts receivable arising after the entry of an Order of Court authorizing this Debtor in Possession Revolving Line of Credit ("DIP Line of Credit") in the Borrower's Chapter 11 bankruptcy case filed in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") at Case Number: 20-20425 (hereinafter the "Bankruptcy Case") not to exceed an outstanding balance at any time of $175,000. Borrower may redraw on the DIP Line of Credit up to 50% of eligible A/R upon Enterprise Bank's positive confirmation of the A/R from VideoMining's customer(s). |
| Rate: | 8.00% fixed |
| Repayment: | The DIP Line of Credit will be paid in monthly installments of interest with principal reduction payments in the amount of 50% paid upon collection of the eligible A/R upon which the advance(s) was made. |
| Maturity: | The DIP Line of Credit shall mature upon the earlier of (i) 12 months from the loan closing; (ii) the sale of all or a substantial part of the |

**EXHIBIT A**

|  |  |
|---|---|
|  | Borrower's patent portfolio or any other sale of the Borrower's assets under section 363 of the Bankruptcy Code (11 U.S.C. §363); or (iii) the confirmation of a Chapter 11 plan of reorganization or liquidation in the Bankruptcy Case. |
| Cross Collateral: | If Borrower has, or will in the future have, other loan(s) with Enterprise Bank that have business assets, personal assets or real estate pledged by Borrower(s) and/or other pledgor(s) of assets ("Grantor(s)") to secure the loan(s), those assets shall also be collateral for the loans(s) covered by this commitment letter and the assets for the loan(s) covered by this commitment letter shall be collateral for all other loan(s) with Enterprise Bank that exist now or in the future. The collateral for all loans with Enterprise Bank shall be cross collateralized. |
| Collateral: | 1st lien on all accounts receivable generated after the entry of a Debtor in Possession Financing Order of the Court to be entered in Borrower's Chapter 11 Bankruptcy Case (the "Financing Order"). |
|  | Mortgage (best available position) and Assignment of Rents Mortgage on commercial real estate owned by Rajeev and Vishnu Sharma located at 403 South Allen St., Suite 101, State College, PA 16801. |
|  | Mortgage (best available position) on residential real estate owned by Rajeev and Vishnu Sharma located at 2391 Shagbark Court, State College, PA 16802. |
|  | Lien (best available position) on all business assets of Borrower including but not limited to accounts, inventory, machinery, equipment, patents and general intangibles. |
|  | Administrative expense claim with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code. |
| Compensating Balance: | Borrower shall maintain at Enterprise Bank Borrower's Debtor in Possession Account authorized by that certain Order Authorizing Debtor to Use Existing Bank Accounts dated February 10, 2020 entered in the Bankruptcy Case and that certain Order Authorizing Interim Use of Cash Collateral through March 12, 2020 ("Cash Collateral Order") entered in the Bankruptcy Case. If Borrower fails to timely make any interest or principal payment due Bank, Bank may recoup the payment by debiting the deposit account. |
| Guarantor: | Rajeev & Vishnu P Sharma (the "Guarantors") will unconditionally guarantee, jointly and severally, the due and punctual payment of all indebtedness owed to the Bank by the Borrower under the proposed |

2

|  |  |
|---|---|
|  | Line of Credit by executing guaranties in form and content satisfactory to the Bank ("the Guaranties"). |
| Purpose: | Short Term Working Capital |
|  | Proceeds of the DIP Line of Credit shall only be used as authorized and in accordance with the Financing Order, Cash Collateral Order or other order entered by the Bankruptcy Court. |
| Expenses: | In addition to the expenses described below, Borrower shall reimburse the Bank for certain out of pocket expenses incurred by the Bank for the Borrower. These include fees and expenses of appraisers and environmental consultants, if any, and reasonable fees for filing and recording of required documents as well as Bank's attorney fees and expenses relating to Bankruptcy Court approval of the financing. In addition to the foregoing expenses, the Borrower shall pay the Bank a documentation due diligence fee of $1,000 for the preparation of the loan documents and a $100 accounts receivable confirmation fee per invoice advanced upon. |

Conditions, Covenants and Continuing Representations and Warranties:

a. Weekly borrowing base certificate, A/R aging and cash flow actual/budget report for the preceding week provided by close of business on Tuesday of each week.

b. Borrower to provide a copy of each invoice requested to be advanced upon, along with a copy of corresponding purchase order/contract and customer contact information for confirmation of the subject account(s) receivable by VideoMining's customer.

c. The Financing Order shall provide for the automatic perfection of all collateral interests, but the Bank may at its option file or record instruments to further evidence the perfection. By executing this commitment, the Borrower consents and authorizes Bank to file UCC-1 Financing Statements on the Collateral described herein in advance of the Closing date.

d. The Borrower will reimburse the Bank for all expenses in connection with the documentation, closing and collection of this loan.

e. All legal and other expenses associated with the proposed transaction are the responsibility of the Borrower.

f. Borrower shall further provide any additional information that the Bank shall reasonably request.

3

g.  Contingent upon receipt of an executed commitment letter, entry of the Financing Order and due execution of appropriate loan documents as determined by the Bank.

h.  Bank's obligation to make any advance under the proposed DIP Line of Credit is contingent upon Borrower retaining Christopher Bossi, for financial management of Borrower, (i) either (A) preferably, in order to maintain independence, as a Bankruptcy Court approved independent contractor or professional, or (B) alternatively as an employee hired in a similar capacity, if Borrower's counsel determines that court approval is not necessary to hire him in the ordinary course of business, and (ii) Borrower's continued retention or employment of Christopher Bossi in such independent financial management capacity at the time of any advance.

i.  Bank's agreement to enter into the DIP Line of Credit and provide advances under the line as contemplated herein is contingent upon the entry of an Order of Court, acceptable to Bank, authorizing this Line of Credit and all of the terms and conditions set forth herein and to be set forth in the loan documentation and the Financing Order.

j.  The Financing Order shall be in form and substance satisfactory to Bank and its counsel in their discretion. The Financing Order and loan documentation may contain provisions in addition to, but not inconsistent with, this commitment letter.

Additional Continuing Representations and Warranties of the Borrower:

Within fourteen (14) days from the Borrower's acceptance of this commitment, Borrower shall provide Bank copies of the Borrower's organizational documents consisting of copies of the filed Articles of Incorporation, Bylaws, Partnership Agreement and/or Operating Agreement as the case may be. Failure to provide such documentation within fourteen (14) days from Borrower's acceptance of this commitment will result in the automatic termination of the Bank's commitment and the Bank shall have no further obligation to close the loan.

The Borrower agrees to execute and deliver such additional instruments, documents, certificates, opinions, assurances, and actions as the Bank may request, to effect the purpose of the transactions described in this commitment letter. The Bank's obligation to make the loan shall be subject to receipt by the Bank of properly executed documents in form and substance satisfactory to the Bank and Bank's counsel, in the Bank and/or Bank counsel's sole discretion.  All proceedings, agreements, instruments, documents, and other matters relating to the making of the loan, and all other transactions herein contemplated, shall be satisfactory to the Bank and to Bank's counsel. While our mutual efforts will be directed toward the closing of this transaction, we may require that the transactions be restructured or otherwise modified.

This commitment is issued in reliance on, and the validity and binding effect of this commitment shall be subject to, the accuracy of all information, representations, schedules, and other materials or data submitted by the Borrower on the Borrower's financial standing and the financial standing of the principals of the Borrower as set forth in the financial statements and other information submitted by the Borrower to the Bank and in reliance on the Borrower's testaments as to the value of the Collateral and its intended usage, all of which is deemed material. Any misrepresentation of material fact, whether intentional or otherwise, made prior to issuance of this commitment or any change of any material fact after the issuance hereof shall, at the Bank's sole option, render this commitment void without further notice to the Borrower. In such event, the Bank, at its sole option, may elect not to close the loan.

If the terms of this loan are satisfactory, please sign, date and return the enclosed copy of this letter in the envelope provided. This commitment is effective for ten (10) days from the date of this letter. This offer will expire if we have not closed the loan within sixty (60) days of the commitment letter date. If you have any questions or desire clarification on the conditions, please give me a call.

**Notwithstanding Borrower and/or Guarantors execution of this Commitment Letter, the terms and conditions of this Commitment Letter shall not become effective until approved by the Bankruptcy Court in the Bankruptcy Case.**

Except for discussions among the Borrower's managers and professional advisors or as may be required to be disclosed to the Bankruptcy Court for approval, the terms contained in this letter are confidential and, may not be disclosed in whole or in part to any other person without the Bank's prior written consent. This commitment cannot be assigned to any other party without the express written consent of Enterprise Bank.

I appreciate the opportunity to be of service to you and look forward to a mutually beneficial relationship.

[Signatures/Consent contained on following page]

Sincerely,

Evan R. Hayward
Relationship Manager

Agreed to this 25th day of February, 2020, with the intent of being legally bound, the undersigned hereby accepts the foregoing commitment and agrees to the term and conditions hereof.

VideoMining Corporation

By: _____
Rajeev Sharma, CEO

## CONSENT OF GUARANTORS

The undersigned, as Guarantors of Bank's existing loans and as Guarantors of the DIP Line of Credit (as such term and any other capitalized term is defined in the foregoing commitment letter) agree to execute the Guaranties and further consent to and agree that the loan and transactions contemplated in this letter will not limit or adversely affect in any manner Guarantors' joint and several liability and obligations under their existing Guaranties, all of which are hereby ratified and confirmed.

Guarantors:

_____
Rajeev Sharma

_____
Vishnu P. Sharma

6