FILED
3/4/20 9:48 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

VIDEOMINING CORPORATION,                    Bankruptcy No. 20-20425-GLT

    Debtor.                                    Chapter 11

VIDEOMINING CORPORATION,                    Document No.

    Movant,                                    Related to Doc. No. 76

    vs.

NO RESPONDENT.

## INTERIM ORDER AUTHORIZING
## DEBTOR TO OBTAIN POST-PETITION FINANCING

    Upon review of the Emergency Motion of Debtor for Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing (the "**Motion**") and any responses and objections thereto, and after such notice and opportunity for a hearing as the Court deemed appropriate, including the hearing held on March 2, 2020, it is hereby ORDERED, ADJUDGED, and DECREED that:

    1.    The Motion is GRANTED on the terms set forth in this Order.

    2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Debtor's Chapter 11 case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    3.    Notice of the Motion, the relief requested therein and the order scheduling the hearing and response date were properly served on all required parties by VideoMining Corporation (the "**Debtor**").

4.      All responses and objections to the entry of this Order, including the Objection of White Oak Business Capital, Inc. (Doc. 67) to the extent not withdrawn or settled are resolved or overruled.

5.      Debtor is authorized to obtain, and Enterprise Bank ("**Bank**" or "**DIP Lender**") is authorized to provide, Debtor in Possession financing in an amount not to exceed outstanding at any time the lesser of (a) $175,000 or (b) on an interim basis until the final hearing $35,000.00 (the "**Interim Cap**"), pursuant to the terms set forth in the Motion and the commitment letter attached thereto and subject to the terms of the definitive loan documents attached to this Order, and this Order (the "**DIP Loan**"). The Debtor and the Bank are further authorized to execute such definitive loan documents (the "**DIP Loan Documents**") to memorialize the terms and conditions of the DIP Loan.

6.      The Debtor may request advances, and the DIP Lender may make advances in its discretion, under the DIP Loan Documents up to 50% of ordinary course accounts receivable deemed eligible and arising after entry of this Order (each an "**Advance**") on a revolving basis, not to exceed an outstanding balance of $175,000 (or if applicable, the Interim Cap) at any time. The Advances shall be used to finance working capital needs of the Debtor and for general operating purposes consistent with and in accordance with the Order Authorizing Interim Use of Cash Collateral through March 12, 2020, the Budget defined therein, and any subsequent orders authorizing use of cash collateral and subsequent Court-approved budgets (collectively, the "**Cash Collateral Budget**"). The Debtor must timely repay the DIP Loan in monthly installments of interest with principal reduction payments in the amount of 50% of the amount paid upon collection of the eligible account upon which an Advance was made and otherwise in accordance with the DIP Loan Documents. A copy of the current Cash Collateral Budget is attached and incorporated into this Order as Exhibit A.

7.      The DIP Lender is authorized to make, and the Debtor is authorized to borrow, the Advances available to the Debtor in accordance with, and in the amounts set forth in, this Order and the DIP Loan Documents from entry of this Order until the Maturity Date (defined below).

8.      To the extent the Debtor requests Advances and the DIP Lender makes Advances, the DIP Lender agrees to provide a carve-out from the DIP Loan for the benefit of estate professionals retained under Sections 327 and/or 1103 of the Bankruptcy Code (the "**Retained Professionals**") and the United States Trustee for (a) U.S. Trustee fees pursuant to 28 U.S.C.§ 1930, and (b) the Retained Professionals' fees and expenses allowed under Sections 330 and 503 of the Bankruptcy Code, but only to the extent and not to exceed the amounts set forth for the respective Retained Professionals in the Cash Collateral Budget, and which in both cases (a and b) are incurred or accrued prior to the Maturity Date (the "**Carve Out**").

9.      As security for the Advances and obligations owed under the DIP Loan Documents (including accrued interest, costs, attorney's fees and other charges), the DIP Lender is granted pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, senior first priority security interests and liens, including priority over any liens acquired or perfected under Section 546(b) of the Bankruptcy Code, in and upon all accounts and accounts receivable of the Debtor, arising or created by the issuance of an invoice after the entry of this Order (the "**Senior DIP Lien**"), and junior priority security interests and liens in and upon all other property of the Debtor, whether acquired pre-petition and/or post-petition, including all accounts, goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, commercial tort claims, general intangibles (including all payment intangibles), money, deposit accounts, patents, trademarks, or other intellectual property and any other contract rights or rights to the payment of money, and all other Collateral (as defined in the attached Commercial Security Agreement) (collectively, the "**Junior DIP Lien**"), together with all proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing, together with all real property and fixtures owned by Debtor.  The Senior DIP Lien and the Junior DIP Lien (collectively, the "**DIP Liens**") shall be effective and perfected upon the date of this Order and without necessity of the execution, recordation, or filings by the DIP Lender and/or the Debtor of security agreements, control

agreements, pledge agreements, financing statements, assignments, mortgages or other similar documents; provided, however, the DIP Liens are further governed by, subject to and may be enforced in accordance with the Security Agreement that is party of the DIP Loan Documents.. The DIP Lender may in its discretion, and is authorized to, file or record any financing statement, mortgage, assignment of rents and any other instrument deemed necessary or desirable by the DIP Lender. The Senior DIP Lien shall be subject only to the Carve Out. The Junior DIP Lien shall be junior in priority to all other liens existing as of the date of this Order as their priority may appear pursuant to law, including the liens in favor of the DIP Lender which continue to secure its prepetition loans to the Debtor. The Cross-Collateralization provision in the Commercial Security Agreement or elsewhere in the DIP Loan Documents shall apply only to Debtor's obligations under the DIP Loan Documents and this Order and any final or other Order relating to the DIP Loan.

10.      **"Maturity Date"** shall mean the date on which the earliest of the following occurs:

(a)     The twelve-month anniversary of the date of this Order, or such later date as may be agreed upon by the Debtor and the DIP Lender;

(b)     Debtor's Bankruptcy Case is either dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(c)     A trustee or an examiner with expanded powers is either elected or appointed in this case;

(d)     This Order (or the final order) is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which in the opinion of the DIP Lender materially adversely affects the rights or remedies of the DIP Lender;

(e)     Material non-compliance by the Debtor with any of the terms, provisions or covenants of this Order or the DIP Loan Documents occurs;

(f)    The Debtor uses cash collateral other than as set forth herein or in the Cash Collateral Budget;

(g)    The Debtor has not entered into a bona fide sales agreement with a third party to purchase substantially all of its assets on or before August 21, 2020;

(h)    A sale of substantially all of the Debtor's patents or any other sale of Debtor's assets occurs, other than a de minimis sale;

(i)    The Debtor fails to comply with or perform, in any material respect, the terms and provisions of this Order or the DIP Loan Documents;

(j)    Any motion or other proceeding is filed to approve a sale or other disposition of substantially all of the Debtor's assets that does not provide for full payment of the DIP Loan without the consent of the DIP Lender;

(k)    The automatic stay of Section 362 is lifted, terminated, modified or annulled so as to allow a party other than the DIP Lender to proceed against any material asset of the Debtor; or

(l)    The occurrence of an Event of Default under the DIP Loan Documents or this Order.

11.    The DIP Lender shall not make any Advance following the Maturity Date without further order of this Court.

12.    [Intentionally omitted.]

13.    [Intentionally omitted.]

14.    The DIP Loan Documents are the result of an arm's length negotiation process and thus constitute fair and market-based financing. The rates, fees, and other expenses to be paid in connection with the DIP Loan Documents, including the Charges Paid in Cash as set

forth in the Disbursement Request and Authorization form at the end of the attached DIP Loan Documents, are reasonable, and the Debtor is authorized to pay them.

15.    The Debtor shall use proceeds from the DIP Loan to fund its operations during this Chapter 11 case and not use the DIP Loan proceeds to pay off any of the amounts owed on account of any pre-petition claims other than as permitted in the Cash Collateral Budget and approved by the Court.

16.    The terms of the DIP Loan and DIP Loan Documents are fair and reasonable, reflect the exercise of the Debtor's prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

17.    The Debtor is unable to obtain unsecured credit allowable under Section 364(a) and (b) and Section 503(b)(1) of the Bankruptcy Code as an administrative expense.

18.    The DIP Loan and DIP Loan Documents have been negotiated in good faith between the Debtor and the DIP Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the DIP Loan, the DIP Loan Documents and/or this Order, including, without limitation, all loans made to the Debtor pursuant to the DIP Loan, the DIP Loan Documents and/or this Order (together with any other obligation arising under this Order, the DIP Loan and/or the DIP Loan Documents, collectively the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lender in good faith as that term is used in Section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

19.    The Debtor has requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and, absent the relief sought by this Order, the Debtor's estate will be immediately and irreparably harmed.    Accordingly, the granting of this Order and authorizing the Debtor to borrow under the DIP Loan and DIP Loan Document as set forth in this Order is in the best interest of the Debtor's estate and its creditors.

- 6 -

20.    The Debtor is authorized and directed to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Loan Documents, including, without limitation, the payment to the DIP Lender of the reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the commitment letter or the DIP Loan Documents.

21.    Pursuant to Section 364(c)(1) of the Bankruptcy Code, this Court grants the DIP Lender a super priority administrative claim (senior to any other administrative claims) in an amount equal to the amounts due under the DIP Loan Documents (the **"Post-Petition Advance Superpriority Administrative Claim"**).  The Post-Petition Superpriority Administrative Claim shall be subordinate to only the Carve Out.

22.    The Senior DIP Lien shall not be: (a) subject or subordinate to: (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under Section 551 of the Bankruptcy Code; and/or (ii) any lien arising after the petition date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtor, or (b) subordinated to or made *pari passu* with any other lien or security interest granted under Section 364 of the Bankruptcy Code or otherwise.

23.    In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling," any surcharge or claim under Section 506(c) of the Bankruptcy Code, or any similar doctrine or claim with respect to the collateral securing the DIP Loan.

24.    No rights, claims, liens, or the like of the DIP Lender with respect to the protections provided to the DIP Lender under this Order can be modified in any plan of reorganization or liquidation or any subsequent financing without the prior written consent of the DIP Lender.

25.     Nothing in this Order shall affect the DIP Lender's claims against third parties, including the guarantors of the DIP Lender's prepetition loans and the guarantors of the DIP Loan.

26.     The Debtor and any successor or assign of the Debtor, including any subsequently appointed Chapter 7 or Chapter 11 trustee, are bound by the terms of this Order and any subsequent order of this Court relating to the DIP Loan.

27.     The DIP Lender reserves the right to assign all of its rights, claims and obligations under the DIP Loan Documents.

28.     In addition to any term or condition set forth in the DIP Loan Documents, the obligation to make any Advance shall be subject to the satisfaction of the following conditions:

     (a)     The Maturity Date has not occurred;

     (b)     The representations and warranties of the Debtor to the DIP Lender shall be true and correct in all material respects as of the date of each Advance;

     (c)     The outstanding aggregate amount of all Advances and other amounts owed under the DIP Loan Documents do not exceed the lesser of (i) 50% of all of the ordinary course accounts against which the DIP Lender has agreed to make an Advance and (ii) $175,000 or, if applicable, the Interim Cap;

     (d)     This Order in a form and substance satisfactory to the DIP Lender shall have been entered by the Court and be in full force and effect and the Debtor shall be in compliance with all the terms thereof;

     (e)     Receipt by the DIP Lender of a certificate executed by a duly authorized officer of Debtor requesting an Advance that states the proposed Advance is consistent with the terms of Debtor's Cash Collateral Budget and to the best of the Debtor's knowledge no Event of Default has occurred except as specified in such certificate, together with such other information as may

be required under the DIP Loan Documents or reasonably requested by the DIP Lender ("**Certificate**"); and

(f)    The Debtor shall have reimbursed the DIP Lender for all actual and reasonable out-of-pocket expenses, including, without limitation, the DIP Lender's account confirmation fees and attorneys' fees and expenses relating to the DIP Loan or under the DIP Loan Documents and which are contained in the Debtor's Cash Collateral Budget; provided, however, if the Debtor fails or refuses to properly account for any such fees and expenses in the Cash Collateral Budget, this Order is without prejudice to the DIP Lender's right to request approval from the Court.

29.    In addition to the provisions of the DIP Loan Documents, the occurrence of any of the following shall constitute an "Event of Default" for the purpose of this Order; provided, however, the Cure Provisions in the Promissory Note in the DIP Loan Documents shall be applicable to the following:

(a)    The Debtor's Chapter 11 case shall be dismissed or converted to a Chapter 7 case;

(b)    Any Chapter 11 plan is confirmed without the DIP Lender's consent;

(c)    Any other superpriority administrative claim or post-petition lien equal or superior in priority to the Senior DIP Lien granted to the DIP Lender pursuant to this Order is entered or granted;

(d)    This Order shall be amended, reversed, stayed, vacated or otherwise modified in a way which in the reasonable opinion of the DIP Lender materially and adversely affects the rights of the DIP Lender and which is not acceptable to the DIP Lender;

(e)    Any breach by the Debtor of this Order, the DIP Loan Documents or any existing or future order regarding the use of cash collateral, including, but not limited to, the Order Authorizing Interim Use of Cash Collateral

- 9 -

Through March 12, 2020 (Doc. No. 53) and any final order relating thereto;

(f)    The occurrence of an Event of Default under the DIP Loan Documents after the date this Order is entered;

(g)    Any representation or warranty made or deemed made by the Debtor in this Order or the DIP Loan Documents is incorrect in any material respect on the date as of which such representation or warranty was made or deemed made; or

(h)    The Debtor fails to observe or perform any covenant, condition or agreement contained in the Order or the DIP Loan Documents.

A copy of any notice provided by the DIP Lender to the Debtor under the Cure Provisions in the Promissory Note shall be contemporaneously provided to counsel for White Oak, i.e., Attorneys Rosenthal and Snyder, via email or other expeditious delivery.

In addition to the DIP Lender's other rights and remedies upon the occurrence of an Event of Default, whether arising under this Order, the DIP Loan Documents, or otherwise, the DIP Lender shall have no obligation to make any Advance or other DIP Loan from and after an Event of Default.

All provisions in the DIP Loan Documents which relate to the Debtor's insolvency or bankruptcy as an event of default are hereby stricken. Notwithstanding anything to the contrary in the DIP Loan Documents, the DIP Lender may not confess judgment against the Debtor upon the occurrence of an Event of Default without first seeking authority from the Court; provided, however, there is nothing in this Order or elsewhere that restricts or limits the DIP Lender's rights or remedies against the Guarantors upon the occurrence of an Event of Default, including, without limitation, the DIP Lender's right to confess judgment jointly and severally against the Guarantors.

30.    The DIP Liens, and all the rights and remedies of the DIP Lender granted by this Order and the DIP Loan Documents shall survive, and shall not be modified, impaired, or

discharged by (a) the entry of an order converting the Chapter 11 case of the Debtor to Chapter 7, dismissing this Chapter 11 case or by any other act or omission, or (b) the entry of an order confirming a plan of reorganization or liquidation in the Debtor's Chapter 11 case. The Post-Petition Superpriority Administrative Claims and all the rights and remedies of the DIP Lender granted by this Order and the DIP Loan Documents shall continue in full force and effect until the obligations owed on the Advances and under the DIP Loan Documents are indefeasibly paid in full.

31.    In addition to the Debtor complying with the insurance requirements set forth in the DIP Loan Documents, pursuant to this Order, the DIP Lender shall be, and shall be deemed to be without any further action or notice, named as an additional insured on each insurance policy maintained by the Debtor which in any way relates to the property subject to the DIP Liens.

32.    In the event of any inconsistency between the provisions of this Order and the DIP Loan Documents, the provisions of this Order shall govern.

33.    The provisions of the DIP Loan Documents and this Order, including all findings herein, shall be binding upon all parties in interest in this case, including the Debtor and its successors and assigns, including any subsequently appointed or elected trustee, examiner or other fiduciary appointed for the Debtor or the estate of the Debtor, and shall inure to the benefit of the DIP Lender and the Debtor and each of their respective successors and assigns; provided however, that the DIP Lender shall have no obligation to extend any financing or credit to any trustee or similar responsible person appointed or elected in the Debtor's Chapter 11 case.

34.    The Court finds and concludes that it is necessary to avoid immediate and irreparable harm for the Debtor to obtain and request Advances up to the Interim Cap pending a final hearing on the Motion.

35.    This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

36.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

37.     The final hearing on the Motion shall be held on March 19, 2020, at 1:30 P.M. in Courtroom A, 54th Floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA  15219.

38.     The Debtor shall serve on all parties in interest a copy of this Order (without a copy of the attached DIP Loan Documents unless requested by a party), and file proof of service, and on or before March 3, 2020, the Debtor shall file and serve a notice of hearing in compliance with Judge Taddonio's procedures and the Local Rules of this Court self-scheduling a final hearing to consider the Motion for **March 19, 2020 at 1:30 p.m.**  The notice shall include that responses/objections are due on or before **March 16, 2020 at 12:00 p.m.**

IT IS SO ORDERED, as of this ___4th___ day of March, 2020.

BY THE COURT

Gregory    Taddonio      hct
United States Bankruptcy Judge

3239728

- 12 -

**VideoMining Corporation**
13 Week Cash Flow / Budget
March 2, 2020

| Week Ending ==> | Week 1 14-Feb | Week 2 21-Feb | Week 3 28-Feb | Week 4 6-Mar | Week 5 13-Mar | Week 6 20-Mar | Week 7 27-Mar | Week 8 3-Apr | Week 9 10-Apr | Week 10 17-Apr | Week 11 24-Apr | Week 12 1-May | Week 13 8-May |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **PRE-FILING A/R** | | | | | | | | | | | | | |
| Beginning A/R | $739,770 | $565,635 | $423,000 | $423,000 | $423,000 | $325,500 | $325,500 | $325,500 | $0 | $0 | $0 | $0 | $0 |
| Collections | ($174,135) | ($142,560) | $0 | $0 | ($97,500) | $0 | $0 | ($325,500) | $0 | $0 | $0 | $0 | $0 |
| Discounts Taken | $0 | ($75) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Ending A/R | $565,635 | $423,000 | $423,000 | $423,000 | $325,500 | $325,500 | $325,500 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | | | | | | | | |
| **POST-FILING A/R** | | | | | | | | | | | | | |
| Beginning A/R | $0 | $55,000 | $55,000 | $55,000 | $294,500 | $294,500 | $324,500 | $324,500 | $444,500 | $444,500 | $494,500 | $594,500 | $669,500 |
| Sales | $55,000 | $0 | $0 | $239,500 | $0 | $85,000 | $0 | $120,000 | $0 | $50,000 | $100,000 | $75,000 | $50,000 |
| Collections | $0 | $0 | $0 | $0 | ($55,000) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($182,000) |
| Discounts Taken | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Ending A/R | $55,000 | $55,000 | $55,000 | $294,500 | $294,500 | $324,500 | $324,500 | $444,500 | $444,500 | $494,500 | $594,500 | $669,500 | $537,500 |
| | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | |
| Payroll & Taxes | $42,574 | $0 | $146,203 | $18,900 | $0 | $0 | $105,000 | $0 | $0 | $0 | $100,000 | $0 | $0 |
| Employee Benefits | $0 | $0 | $12,752 | $1,300 | $0 | $0 | $10,500 | $0 | $0 | $0 | $12,500 | $0 | $0 |
| Professional Services | $0 | $0 | $0 | $0 | $0 | $0 | $12,000 | $0 | $0 | $0 | $12,000 | $0 | $0 |
| Contract Services | $0 | $1,500 | $1,000 | $0 | $2,000 | $0 | $1,000 | $0 | $0 | $0 | $1,000 | $0 | $0 |
| Cost of Good Sold | $0 | $0 | $2,737 | $0 | $3,000 | $0 | $3,000 | $0 | $3,000 | $0 | $3,000 | $0 | $3,000 |
| Advertising / Promotion | $0 | $0 | $0 | $0 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Data Processing Services | $0 | $0 | $576 | $0 | $0 | $0 | $750 | $0 | $0 | $0 | $750 | $0 | $0 |
| Facilities Expense (Rent) | $0 | $7,029 | $8,812 | $1,400 | $0 | $0 | $8,000 | $0 | $0 | $0 | $8,000 | $0 | $0 |
| Insurance Expense | $0 | $0 | $0 | $5,900 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Internet Expenses | $0 | $0 | $0 | $0 | $0 | $1,600 | $0 | $0 | $0 | $1,600 | $0 | $0 | $0 |
| Office Supplies & Expenses | $0 | $0 | $59 | $400 | $400 | $400 | $400 | $400 | $400 | $400 | $400 | $400 | $400 |
| Chapter 11 Legal Fees | $0 | $0 | $12,500 | $2,500 | $0 | $0 | $15,000 | $0 | $0 | $0 | $15,000 | $0 | $0 |
| Patent Maintenance / Sale Cost | $0 | $500 | $1,000 | $1,800 | $10,200 | $2,000 | $3,500 | $0 | $0 | $0 | $3,700 | $0 | $2,500 |
| Other Expenses | $0 | $169 | $0 | $400 | $400 | $400 | $400 | $400 | $400 | $400 | $400 | $400 | $400 |
| Telephone | $0 | $0 | $0 | $0 | $0 | $1,200 | $0 | $0 | $0 | $1,200 | $0 | $0 | $0 |
| Travel | $0 | $186 | $1,611 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 |
| DIP Lending Fees | $0 | $0 | $0 | $1,750 | $0 | $0 | $100 | $0 | $0 | $0 | $0 | $0 | $0 |
| DIP Financing Interest | $0 | $0 | $0 | $0 | $46 | $46 | $46 | $186 | $186 | $186 | $186 | $186 | $186 |
| TOTAL OPERATING EXPENSES | $42,574 | $9,384 | $187,250 | $35,150 | $17,846 | $7,446 | $161,496 | $2,786 | $5,786 | $5,586 | $158,736 | $2,786 | $8,286 |
| | | | | | | | | | | | | | |
| Collection Share to WOBC | 30% | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **CASH REQUIREMENTS** | | | | | | | | | | | | | |
| Beginning Cash | $21,778 | $101,269 | $196,677 | $10,038 | $4,638 | $55,042 | $86,096 | $15,600 | $240,664 | $234,879 | $229,293 | $70,557 | $67,771 |
| Collections | $174,135 | $142,560 | $0 | $0 | $97,500 | $55,000 | $0 | $325,500 | $0 | $0 | $0 | $0 | $182,000 |
| 30% Paid to White Oak | ($52,241) | ($42,768) | $0 | $0 | ($29,250) | ($16,500) | $0 | ($97,650) | $0 | $0 | $0 | $0 | $0 |
| Less: Operation Expenses | ($42,574) | ($9,384) | ($187,250) | ($35,150) | ($17,846) | ($7,446) | ($161,496) | ($2,786) | ($5,786) | ($5,586) | ($158,736) | ($2,786) | ($8,286) |
| Refunds / Cobra payment / Deposits | $170 | $5,000 | $611 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

EXHIBIT A

**VideoMining Corporation**
13 Week Cash Flow / Budget
March 2, 2020

| Week Ending ==> | Week 1 14-Feb | Week 2 21-Feb | Week 3 28-Feb | Week 4 6-Mar | Week 5 13-Mar | Week 6 20-Mar | Week 7 27-Mar | Week 8 3-Apr | Week 9 10-Apr | Week 10 17-Apr | Week 11 24-Apr | Week 12 1-May | Week 13 8-May |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIP Lending | $0 | $0 | $0 | $29,750 | $0 | $0 | $91,000 | $0 | $0 | $0 | $0 | $0 | ($91,000) |
| Ending Balance | $101,269 | $196,677 | $10,038 | $4,638 | $55,042 | $86,096 | $15,600 | $240,664 | $234,879 | $229,293 | $70,557 | $67,771 | $150,486 |
| | | | | | | | | | | | | | |
| Qualified DIP AR | $0 | $0 | $0 | $239,500 | $239,500 | $324,500 | $324,500 | $444,500 | $444,500 | $494,500 | $594,500 | $669,500 | $537,500 |
| Facility Limit | $0 | $0 | $0 | $35,000 | $35,000 | $35,000 | $175,000 | $175,000 | $175,000 | $175,000 | $175,000 | $175,000 | $175,000 |
| Borrowing Avail. (50% of AR) | $0 | $0 | $0 | $35,000 | $35,000 | $35,000 | $162,250 | $175,000 | $175,000 | $175,000 | $175,000 | $175,000 | $175,000 |
| DIP Loan Balance | $0 | $0 | $0 | ($29,750) | ($29,750) | ($29,750) | ($120,750) | ($120,750) | ($120,750) | ($120,750) | ($120,750) | ($120,750) | ($29,750) |
| Net Availability | $0 | $0 | $0 | $5,250 | $5,250 | $5,250 | $41,500 | $54,250 | $54,250 | $54,250 | $54,250 | $54,250 | $145,250 |
| | | | | | | | | | | | | | |
| DIP LENDER LINE OF CREDIT | | | | | | | | | | | | | |
| Opening Balance | $0 | $0 | $0 | $0 | $29,750 | $29,750 | $29,750 | $120,750 | $120,750 | $120,750 | $120,750 | $120,750 | $120,750 |
| Net Lending | $0 | $0 | $0 | $29,750 | $0 | $0 | $91,000 | $0 | $0 | $0 | $0 | $0 | ($91,000) |
| Ending Balance | $0 | $0 | $0 | $29,750 | $29,750 | $29,750 | $120,750 | $120,750 | $120,750 | $120,750 | $120,750 | $120,750 | $29,750 |

# DIP LOAN DOCUMENTS

*0280%06007026%251853162%03022020*

# CORPORATE RESOLUTION TO BORROW / GRANT COLLATERAL / SUBORDINATE DEBT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations. | | | | | | | |

**Corporation:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

---

**WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**THE CORPORATION'S EXISTENCE.** The complete and correct name of the Corporation is VideoMining Corporation ("Corporation"). The Corporation is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware. The Corporation is duly authorized to transact business in the Commonwealth of Pennsylvania and all other states in which the Corporation is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Corporation is doing business. Specifically, the Corporation is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Corporation has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Corporation maintains its principal office at 403 South Allen Street, Suite 101, State College, PA 16801. Unless the Corporation has designated otherwise in writing, this is the principal office at which the Corporation keeps its books and records. The Corporation will notify Lender prior to any change in the location of the Corporation's state of organization or any change in the Corporation's name. The Corporation shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Corporation and the Corporation's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the Directors of the Corporation, or if the Corporation is a close corporation having no Board of Directors then at a meeting of the Corporation's shareholders, duly called and held on March 2, 2020, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**OFFICER.** The following named person is an officer of VideoMining Corporation:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| Rajeev Sharma | President | Y | X ______________________ (Seal) |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Corporation. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Corporation:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Corporation and Lender, such sum or sums of money as in his or her judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Corporation's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Corporation's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Corporation or in which the Corporation now or hereafter may have an interest, including without limitation all of the Corporation's real property and all of the Corporation's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Corporation to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Subordination.** To subordinate, in all respects, any and all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be owed, now or hereafter, from any person or entity to the Corporation to all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be owed, now or hereafter, from such person or entity to Lender ("Subordinated Indebtedness"), together with subordination by the Corporation of any and all security interests of any kind, whether now existing or hereafter acquired, securing payment or performance of the Subordinated Indebtedness; all on such subordination terms as may be agreed upon between the Corporation's Officers and Lender and in such amounts as in his or her judgment should be subordinated.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Corporation or in which the Corporation may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Corporation's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

# CORPORATE RESOLUTION TO BORROW / GRANT COLLATERAL / SUBORDINATE DEBT

Loan No: 6007026                                         (Continued)                                            Page 2

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, including agreements waiving the right to a trial by jury and confessing judgment against the Corporation, as the officer may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from the Corporation, at Lender's address shown above, written notice of revocation of such authority: Rajeev Sharma, President of VideoMining Corporation; Christopher Bossi, CFO of VideoMining Corporation.

**ASSUMED BUSINESS NAMES.** The Corporation has filed or recorded all documents or filings required by law relating to all assumed business names used by the Corporation. Excluding the name of the Corporation, the following is a complete list of all assumed business names under which the Corporation does business: None.

**NOTICES TO LENDER.** The Corporation will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Corporation's name; (B) change in the Corporation's assumed business name(s); (C) change in the management of the Corporation; (D) change in the authorized signer(s); (E) change in the Corporation's principal office address; (F) change in the Corporation's state of organization; (G) conversion of the Corporation to a new or different type of business entity; or (H) change in any other aspect of the Corporation that directly or indirectly relates to any agreements between the Corporation and Lender. No change in the Corporation's name or state of organization will take effect until after Lender has received notice.

**CERTIFICATION CONCERNING OFFICERS AND RESOLUTIONS.** The officer named above is duly elected, appointed, or employed by or for the Corporation, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the Corporation, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**NO CORPORATE SEAL.** The Corporation has no corporate seal, and therefore, no seal is affixed to this Resolution.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

IN TESTIMONY WHEREOF, we have hereunto set our hand and attest that the signature set opposite the name listed above is his or her genuine signature.

We each have read all the provisions of this Resolution, and we each personally and on behalf of the Corporation certify that all statements and representations made in this Resolution are true and correct. This Corporate Resolution to Borrow / Grant Collateral / Subordinate Debt is dated March 2, 2020.

THIS RESOLUTION IS DELIVERED UNDER SEAL AND IT IS INTENDED THAT THIS RESOLUTION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

CERTIFIED TO AND ATTESTED BY:

By: _____ (Seal)

Authorized Signer for VideoMining Corporation

NOTE: If the officer signing this Resolution is designated by the foregoing document as one of the officers authorized to act on the Corporation's behalf, it is advisable to have this Resolution signed by at least one non-authorized officer of the Corporation.

LaserPro, Ver. 18.4.23.089 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - DE/PA C:\CFI\LPL\C13.FC TR-3561 PR-COMMLOCV

*0070%06007026%251853162%03022020*

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

THIS BUSINESS LOAN AGREEMENT dated March 2, 2020, is made and executed between VideoMining Corporation ("Borrower") and ENTERPRISE BANK ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of March 2, 2020, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.** The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Rajeev Sharma, President of VideoMining Corporation; Christopher Bossi, CFO of VideoMining Corporation.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains its principal office at 403 South Allen Street, Suite 101, State College, PA 16801. Unless Borrower has designated otherwise in writing, this is the principal office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective

Loan No: 6007026                                                                                          Page 2

terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Additional Requirements.** Borrower must deliver or will cause to be delivered:
1. Weekly Borrowing Base certificate, A/R aging and cash flow actual/budget report for the proceeding week provided by close of business on Tuesday of each week.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the

# BUSINESS LOAN AGREEMENT
## (Continued)

Loan No: 6007026

guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| Rajeev Sharma and Vishnu Priya Sharma | Unlimited |
| Vishnu Priya Sharma | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge or restructure as a legal entity (whether by division or otherwise), consolidate with or acquire any

# BUSINESS LOAN AGREEMENT
(Continued)

Loan No: 6007026

Page 4

other entity, change its name, convert to another type of entity or redomesticate, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

Loans, Acquisitions and Guaranties.  (1)  Loan, invest in or advance money or assets to any other person, enterprise or entity,  (2) purchase, create or acquire any interest in any other enterprise or entity, or  (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

Agreements.  Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

CESSATION OF ADVANCES.  If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender;  (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt;  (C)  there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or  (D)  any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or  (E)  Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

RIGHT OF SETOFF.  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

DEFAULT.  Each of the following shall constitute an Event of Default under this Agreement:

Payment Default.  Borrower fails to make any payment when due under the Loan.

Other Defaults.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties.  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Insolvency.  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Defective Collateralization.  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor.  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

Change in Ownership.  Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change.  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

Insecurity.  Lender in good faith believes itself insecure.

Right to Cure.  If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default: (1) cure the default within ten (10) days; or  (2)  if the cure requires more than ten (10) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

EFFECT OF AN EVENT OF DEFAULT.  If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional.  In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not

# BUSINESS LOAN AGREEMENT
## (Continued)

exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**COMPENSATING BALANCES.** Borrower shall maintain at Enterprise Bank Borrower's Debtor in Possession Account authorized by that certain Order Authorizing Debtor to Use Existing Bank Accounts dated February 10, 2020 entered in the Bankruptcy Case through March 12, 2020 or any other order of the court ("Cash Collateral Order") entered in the Bankruptcy Case. If Borrower fails to timely make any interest or principal payment due, Bank may recoup the payment by debiting the deposit account.

**A/R CONFIRMATION.** Borrower shall provide a copy of each invoice requested to be advanced upon, along with a copy of corresponding purchase order/contract and customer contact information for confirmation of the subject account(s) receivable by VideoMining's customer; Borrower also shall pay the Bank a $100 accounts receivable confirmation fee per invoice advanced upon.

**EMPLOYEE RETENTION.** Bank's obligation to make any advance under the proposed DIP Line of Credit is contingent upon (i) Borrower first obtaining Court approval to retain Christopher Bossi, for financial management of Borrower, preferably as an independent contractor, in order to maintain independence, or alternatively as an employee in a similar capacity, and (ii) Christopher Bossi continuing to be engaged in such capacity.

**LINE OF CREDIT ADVANCE FORMULA.** Borrower shall be permitted to draw on the DIP Line of Credit up to 50% of eligible accounts receivable arising after the entry of an Order of Court authorizing this Debtor in Possession Revolving Line of Credit ("DIP Line of Credit") in the Borrower's Chapter 11 bankruptcy case filed in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") at Case Number: 20-20425 (hereinafter the "Bankruptcy Case") not to exceed an outstanding balance at any time of $175,000. Borrower may redraw on the DIP Line of Credit up to 50% of eligible A/R upon Enterprise Bank's positive confirmation of the A/R from VideoMining's customer(s).

**ADMIN EXPENSE CLAIM.** All amounts advanced pursuant to this Business Loan Agreement shall be entitled to an administrative expense claim with priority over any and all administrative expenses of any kind specified in 503(b) or 507(b) of the Bankruptcy code.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else, including internal legal counsel, to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expense for bankruptcy proceedings (including efforts to modify or vacate any automatic stayor injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court. All such attorneys' fees and expenses will become part of the Indebtedness and, at Lender's option will (A) become payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during (1) the remaining term of the Note or (2) be treated as a balloon payment which will be due and payable at the Note's maturity. The attorneys' fees and expenses shall bear interest at the Note rate from the date of the expenditure until paid.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Commonwealth of Pennsylvania.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided by applicable law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so

## BUSINESS LOAN AGREEMENT
Loan No: 6007026                                      (Continued)                                      Page 6

modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

Subsidiaries and Affiliates of Borrower. To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

Successors and Assigns. All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

Survival of Representations and Warranties. Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here ⬚⬚⬚⬚ )

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

Advance. The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

Agreement. The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

Borrower. The word "Borrower" means VideoMining Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Collateral. The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

GAAP. The word "GAAP" means generally accepted accounting principles.

Grantor. The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

Lender. The word "Lender" means ENTERPRISE BANK, its successors and assigns.

Loan. The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

Note. The word "Note" means the Note dated March 2, 2020 and executed by VideoMining Corporation in the principal amount of $175,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

## BUSINESS LOAN AGREEMENT
### (Continued)

Loan No: 6007026                                                                      Page 7

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED MARCH 2, 2020.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

VIDEOMINING CORPORATION

By: _____ (Seal)
    Rajeev    Sharma,    President    of    VideoMining
    Corporation

ATTEST:

_____
Secretary or Assistant Secretary                              ( Corporate Seal )

LENDER:

ENTERPRISE BANK

By: _____ (Seal)
    Authorized Signer

## Addendum to Business Loan Agreement and Related Documents

This Business Loan Agreement and all other Related Documents are subject to and further governed by the Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing (the "Financing Orders") entered or to be entered by the United States Bankruptcy Court for the Western District of Pennsylvania in Borrower's chapter 11 case pending at Case No. 20-20425-GLT, and upon entry on the docket of the Court such Financing Orders shall become "Related Documents" as such term is defined and used in this Agreement, the Commercial Security Agreement, the Open-End Mortgage and Security Agreements, the Assignments of Rent, the Commercial Guarantys and all other DIP Loan Documents (as defined in the Financing Orders). In the event of any inconsistency between the provisions of the Financing Orders and any of the DIP Loan Documents, the provisions of the Financing Orders shall govern.

ACKNOWLEDGED AND AGREED, this _____ day of March, 2020.

ATTEST:

BORROWER:

VIDEOMINING CORPORATION

_____
Secretary or Assistant Secretary

By:_____
   Rajeev Sharma, President

LENDER:

ENTERPRISE BANK

By:_____(Seal)
   Authorized Signer

CONSENTED TO:
GUARANTORS:

_____
Rajeev Sharma

_____
Vishnu Priya Sharma

3242036.v1

*0955%06007026%251853182%03022020*

# PROMISSORY NOTE

| Principal<br>$175,000.00 | Loan Date<br>03-02-2020 | Maturity | Loan No<br>6007026 | Call / Coll<br>RCC4 | Account | Officer<br>EH | Initials |
|---|---|---|---|---|---|---|---|
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.<br>Any item above containing "* * * *" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**Principal Amount: $175,000.00**    Date of Note: March 2, 2020

**PROMISE TO PAY.** VideoMining Corporation ("Borrower") promises to pay to ENTERPRISE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Seventy-five Thousand & 00/100 Dollars ($175,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.000% per annum based on a year of 360 days. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in accordance with the following payment schedule:

The DIP Line of Credit will be paid in monthly installments of interest with principal reduction payments in the amount of 50% paid upon collection of the eligible A/R upon which the advance(s) was made. The DIP Line of Credit shall mature upon the earlier of (i) 12 months from the loan closing; (ii) the sale of all or a substantial part of the Borrower's patent portfolio or any other sale of the Borrower's assets under section 363 of the Bankruptcy Code (11 U.S.C. §363); or (iii) the confirmation of a Chapter 11 plan of reorganization or liquidation in the Bankruptcy Case.

Unless otherwise agreed or required by applicable law, payments will be applied to the Lender's discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ENTERPRISE BANK, 4091 MT. ROYAL BOULEVARD, ALLISON PARK, PA 15101.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 4.000 percentage points. If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

# PROMISSORY NOTE
## (Continued)

Loan No: 6007026                             Page 2

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Change in Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else, including internal legal counsel, to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. All such attorneys' fees and expenses will become part of the amounts due and owing under this Note and, at Lender's option will (A) become payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the remaining term of the Note or (2) be treated as a balloon payment which will be due and payable at the Note's maturity. The attorneys' fees and expenses shall bear interest at the Note rate from the date of expenditure until paid.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. (Initial Here _____ )

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $10.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Rajeev Sharma, President of VideoMining Corporation; Christopher Bossi, CFO of VideoMining Corporation. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

COMPENSATING BALANCES. Borrower shall maintain at Enterprise Bank Borrower's Debtor in Possession Account authorized by that certain Order Authorizing Debtor to Use Existing Bank Accounts dated February 10, 2020 entered in the Bankruptcy Case through March 12, 2020 or any other order of the court ("Cash Collateral Order") entered in the Bankruptcy Case. If Borrower fails to timely make any interest or principal payment due, Bank may recoup the payment by debiting the deposit account.

ADMIN EXPENSE CLAIM. All amounts advanced pursuant to this Note shall be entitled to an administrative expense claim with priority over any and all administrative expenses of any kind specified in 503(b) or 507(b) of the Bankruptcy code.

A/R CONFIRMATION. Borrower shall provide a copy of each invoice requested to be advanced upon, along with a copy of corresponding purchase order/contract and customer contact information for confirmation of the subject account(s) receivable by VideoMining's customer; Borrower also shall pay the Bank a $100 accounts receivable confirmation fee per invoice advanced upon.

EMPLOYEE RETENTION. Bank's obligation to make any advance under the proposed DIP Line of Credit is contingent upon (i) Borrower first obtaining Court approval to retain Christopher Bossi, for financial management of Borrower, preferably as an independent contractor, in order to maintain independence, or alternatively as an employee in a similar capacity, and (ii) Christopher Bossi continuing to be engaged in such capacity.

LINE OF CREDIT ADVANCE FORMULA. Borrower shall be permitted to draw on the DIP Line of Credit up to 50% of eligible accounts receivable arising after the entry of an Order of Court authorizing this Debtor in Possession Revolving Line of Credit ("DIP Line of Credit") in the Borrower's Chapter 11 bankruptcy case filed in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") at Case Number: 20-20425 (hereinafter the "Bankruptcy Case") not to exceed an outstanding balance at any time of $175,000. Borrower may redraw on the DIP Line of Credit up to 50% of eligible A/R upon Enterprise Bank's positive confirmation of the A/R from VideoMining's customer(s).

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: ENTERPRISE BANK 4091 MT. ROYAL BOULEVARD ALLISON PARK, PA 15101.

GENERAL PROVISIONS. This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude

## PROMISSORY NOTE
(Continued)

Loan No: 6007026

Page 3

Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

CONFESSION OF JUDGMENT. BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

VIDEOMINING CORPORATION

By: _____ (Seal)
    Rajeev Sharma,  President  of  VideoMining
    Corporation

ATTEST:

_____
Secretary or Assistant Secretary

( Corporate Seal )

LENDER:

ENTERPRISE BANK

X _____
  Authorized Signer

*0235%06007026%251853162%03022020*

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated March 2, 2020, is made and executed between VideoMining Corporation ("Grantor") and ENTERPRISE BANK ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

Pursuant to an Order entered on March 2, 2020 in Grantor's Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania at Case number: 20-20425 ("DIP Lending Order") authorizing the Grantor to enter in the Note and this Agreement, Lender shall have a first lien position on all Accounts Receivables of the Grantor arising after the entry of the DIP Lending Order together a best available lien in and to all of business assets of the Grantor including inventory, machinery, equipment, patents and general intangibles, whether now existing or hereafter arising together with and all proceeds thereof.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable. (Initial Here )

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the Commonwealth of Pennsylvania, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 6007026

Page 3

disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 6007026

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Pennsylvania Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 6007026

Page 5

as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Commonwealth of Pennsylvania.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Additional Authorizations.** Grantor hereby authorizes Lender, with full power of substitution, to execute in Grantor's name any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties and, without further authorization from Grantor, to file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral. It is understood and agreed that any exercise of this authorization by Lender shall be on behalf of Lender and not on behalf of Grantor. Lender is not an agent or fiduciary of Grantor. However, in exercising the authorization granted hereby, Lender shall exercise reasonable caution and prudence and Lender shall keep full and accurate record of all actions, receipts and disbursements.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successor Interests.** The terms of this Agreement shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here [illegible] )

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means VideoMining Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 6007026                                                                    Page 6

Grantor. The word "Grantor" means VideoMining Corporation.

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. The liens and security interests created pursuant to this Agreement covering the Indebtedness which may be created in the future shall relate back to the date of this Agreement. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

Lender. The word "Lender" means ENTERPRISE BANK, its successors and assigns.

Note. The word "Note" means the Note dated March 2, 2020 and executed by VideoMining Corporation in the principal amount of $175,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 2, 2020.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:


VIDEOMINING CORPORATION

By: _____ (Seal)
      Rajeev    Sharma,    President    of    VideoMining
      Corporation

ATTEST:

_____                                    ( Corporate Seal )
Secretary or Assistant Secretary


# ENTERPRISE BANK

## Small Business Jobs Act Certification

The following information is requested pursuant to Section 4107(d)(2) of the Small Business Jobs Act of 2010. The law requires an institution to obtain a certification from any business receiving a loan using funds received by the institution under the Small Business Lending Fund.

Legal Name of Loan Request: VideoMining Corporation            ("Borrower")

Legal Name of Lending Institution:    Enterprise Bank   ("Lender")

As required by Section 4107(d)(2) of the Small Business Jobs Act of 2010, Borrower hereby certifies to Lender that the principals' of Borrower and its affiliates have not been convicted of, or pleaded *nolo contendere* to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911)),

Legal Name of Loan Request: VideoMining Corporation
_____

By:  _____
         Authorized Signature

Name:  Rajeev Sharma
_____

Title:  President
_____

Date:  _____

¹The term "principals" is defined as follows: if a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

*0035%06007026%251853162%03022020*

# AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**INSURANCE REQUIREMENTS.** Grantor, VideoMining Corporation ("Grantor"), understands that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to Grantor by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

**Collateral:** All Inventory and Equipment.
Type: All risks, including fire, theft and liability.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Deductibles: $1,000.00.
Latest Delivery Date: By 10 days before the loan closing date.

**Collateral:** 403 South Allen Street Ste 101, State College, PA 16801.
Type: Fire and extended coverage.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
Deductibles: $1,000.00.
Latest Delivery Date: By 10 days before the loan closing date.

**INSURANCE COMPANY.** Grantor may obtain insurance from any insurance company Grantor may choose that is reasonably acceptable to Lender. Grantor understands that credit may not be denied solely because insurance was not purchased through Lender.

**FLOOD INSURANCE.** Flood Insurance for the Collateral securing this loan is described as follows:

Real Estate at 403 South Allen Street Ste 101, State College, PA 16801.
Should the Collateral at any time be deemed to be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program or from private insurers.

**INSURANCE MAILING ADDRESS.** All documents and other materials relating to insurance for this loan should be mailed, delivered or directed to the following address:

ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**FAILURE TO PROVIDE INSURANCE.** Grantor agrees to deliver to Lender, on the latest delivery date stated above, proof of the required insurance as provided above, with an effective date of March 2, 2020, or earlier. Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. GRANTOR ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL; HOWEVER, GRANTOR'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, Grantor authorizes Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

## AGREEMENT TO PROVIDE INSURANCE
### (Continued)

Loan No: 6007026                                                                 Page 2

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 2, 2020.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

VIDEOMINING CORPORATION

By:_____(Seal)
   Rajeev   Sharma,   President   of   VideoMining
   Corporation

ATTEST:

_____                    ( Corporate Seal )
Secretary or Assistant Secretary

---

### FOR LENDER USE ONLY
### INSURANCE VERIFICATION

DATE: _____            PHONE _____

AGENT'S NAME: _____
AGENCY:  The Hartman Agency
ADDRESS: _____
INSURANCE COMPANY:  Cincinnati Insurance Company
POLICY NUMBER:
EFFECTIVE DATES: _____

COMMENTS: _____

---

### FOR LENDER USE ONLY
### INSURANCE VERIFICATION

DATE: _____            PHONE _____

AGENT'S NAME: _____
AGENCY:  Frost & Conn, Inc.
ADDRESS: _____
INSURANCE COMPANY:  Travelers Insurance Company
POLICY NUMBER:
EFFECTIVE DATES: _____

COMMENTS: _____

*0825%06007026%251853162%03022020*

# NOTICE OF INSURANCE REQUIREMENTS

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

TO: The Hartman Agency
ATTN: Insurance Agent

DATE: March 2, 2020

RE: Policy Number(s):

Insurance Companies/Company: Cincinnati Insurance Company

Dear Insurance Agent:

Grantor, VideoMining Corporation ("Grantor") is obtaining a loan from ENTERPRISE BANK. Please send appropriate evidence of insurance to ENTERPRISE BANK, together with the requested endorsements, on the following property, which Grantor is giving as security for the loan.

Collateral: All Inventory and Equipment.
Type: All risks, including fire, theft and liability.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Deductibles: $1,000.00.
Latest Delivery Date: By 10 days before the loan closing date.

GRANTOR:

VIDEOMINING CORPORATION

By: ______________________________ (Seal)
Rajeev Sharma, President of VideoMining Corporation

ATTEST:

______________________________
Secretary or Assistant Secretary

( Corporate Seal )

RETURN TO:

ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

LaserPro, Ver. 18.4.20.088 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - PA C:\CFI\LPL\I11.FC TR-2581 PR-COMMLOCV

Parcel Identification Number:
36-013-315-C101

RECORDATION REQUESTED BY:
ENTERPRISE BANK, 4091 MT. ROYAL
BOULEVARD, ALLISON PARK, PA  15101

WHEN RECORDED MAIL TO:
ENTERPRISE BANK, 4091 MT. ROYAL
BOULEVARD, ALLISON PARK, PA  15101

SEND TAX NOTICES TO:
VideoMining Corporation, 403 South Allen
Street Ste 101, State College, PA  16801

FOR RECORDER'S USE ONLY



*0745%06007026%#########%03022020*

## OPEN - END MORTGAGE AND SECURITY AGREEMENT

*(This instrument is an open-end mortgage and secures future advances pursuant to 42 Pa. C.S. §§ 8143 and 8144, Act No. 126 of 1990)*

**MAXIMUM LIEN.** This Mortgage shall secure unpaid loan advances made after this Mortgage is recorded. The unpaid principal balance of advances exclusive of interest and other extensions of credit secured by the Mortgage made for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred for the protection of the mortgaged premises shall not exceed at any one time $175,000.00.

Amount Secured Hereby:   $175,000.00

THIS MORTGAGE dated March 2, 2020, is made and executed between VideoMining Corporation, whose address is 403 South Allen Street Ste 101, State College, PA  16801 (referred to below as "Grantor") and ENTERPRISE BANK, whose address is 4091 MT. ROYAL BOULEVARD, ALLISON PARK, PA 15101 (referred to below as "Lender").

GRANT OF MORTGAGE.  For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers, releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Centre County, Commonwealth of Pennsylvania:

See Ex A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as  403 South Allen Street Ste 101, State College, PA  16801.  The Real Property parcel identification number is 36-013-315-C101.

CROSS-COLLATERALIZATION.  In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or

Loan No: 6007026

**MORTGAGE**
(Continued)

Page 2

any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.  (Initial Here _____ )

**REVOLVING LINE OF CREDIT.  This Mortgage secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor unless Grantor fails to comply with all the terms of the Note.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $175,000.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any improvements from the Real Property

**MORTGAGE**
(Continued)

Loan No: 6007026

Page 3

without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and if Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees (whether incurred by Lender's internal counsel or Lender's outside counsel) at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitations, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written

**MORTGAGE**
**(Continued)**

Loan No: 6007026

Page 4

statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on

**MORGAGE**
(Continued)

Loan No: 6007026

Page 5

demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Mortgage also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.  Grantor's obligation to Lender for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.**  Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and  (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.**  The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.**  The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien.  Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.**  Grantor shall not enter into any agreement with the holder of any mortgage or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender.  Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all actual costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Mortgage or upon all or any part of the  Indebtedness secured by this Mortgage;  (2)  a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of

Loan No: 6007026

MORTGAGE
(Continued)

Page 6

Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

FURTHER ASSURANCES; ADDITIONAL AUTHORIZATIONS. The following provisions relating to further assurances and additional authorizations are a part of this Mortgage:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Additional Authorizations. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably authorizes Lender to make, execute, deliver, file, record and do all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. It is understood that nothing set forth herein shall require Lender to take any such actions.

FULL PERFORMANCE. If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

EVENTS OF DEFAULT. Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

Payment Default. Grantor fails to make any payment when due under the Indebtedness.

Default on Other Payments. Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Other Defaults. Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

Default in Favor of Third Parties. Should Grantor default under any loan, extension of credit, security agreement,

# MORGAGE
## (Continued)

purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.**   Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.**  The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness.  This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.**  The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.**  Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**Right to Cure.**  If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default:  (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.**  Lender shall have the right at its option, after giving such notices as required by applicable law, to declare the entire Indebtedness immediately due and payable.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.**  Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Loan No: 6007026**

## MORTGAGE
### (Continued)

Page 8

---

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the earnings, revenues, Rents, issues, profits and income from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness as a strict right. This right shall be without regard to, and without the necessity of proving (i) the inadequacy of the security for the repayment of the Grantor's Indebtedness; (ii) the insolvency of Grantor or any other person or entity who may be legally or equitably liable to pay money secured hereby and Grantor and each such person or entity shall be deemed to have waived such proof and to have consented to the appointment of a receiver; or (iii) the filing of a notice of default; and the Grantor consents to such appointment.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by the Lender shall not disqualify a person from serving as receiver.

**Judicial Foreclosure.**  Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Possession of the Property.**  For the purpose of procuring possession of the Property, Grantor hereby authorizes and empowers any attorney of any court of record in the Commonwealth of Pennsylvania or elsewhere, as attorney for Lender and all persons claiming under or through Lender, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Property and to appear for and confess judgment against Grantor, and against all persons claiming under or through Grantor, for the recovery by Lender of possession of the Property, without any stay of execution, for which this Mortgage, or a copy of this Mortgage verified by affidavit, shall be a sufficient warrant; and thereupon a writ of possession may be issued forthwith, without any prior writ or proceeding whatsoever.

**Nonjudicial Sale.**  If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.**  Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.**  If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either  (1) pay a reasonable rental for the use of the Property, or  (2)  vacate the Property immediately upon the demand of Lender.

**Other Remedies.**  Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.**  To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled.  In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.  Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.**  Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made.  Unless otherwise required by applicable law, reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.  Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.**  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.  Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees (whether incurred by Lender's internal counsel or Lender's outside counsel) at trial and upon any appeal.  Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.  Expenses covered by this paragraph include, without limitations, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to

Loan No: 6007026

# MORTGAGE
## (Continued)

modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage and notices pursuant to 42 Pa. C.S.A. Section 8143, et. seq., shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

Additional Authorizations. Grantor irrevocably authorizes Lender, with full power of substitution, to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender shall have the right to exercise this authorization only after Grantor's default; however, Lender may decline to exercise this authorization as Lender sees fit.

Insurance. The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

Default. Grantor's failure to perform any of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder, shall be an event of default under this Mortgage. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Grantor to perform any of the obligations imposed on Grantor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Grantor as a member of an association of unit owners to take any reasonable action within Grantor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Mortgage.

**ADVANCE MONEY MORTGAGE.** (A) This Mortgage secures future advances made pursuant to the Note or Related Documents. Without limiting the foregoing, this Mortgage secures all advances made by Lender or Banks of any kind or nature described in 42 Pa. C.S.A. § 8144. (B) If Grantor sends a written notice to Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Lender to make any additional advances to or for the benefit of Grantor, such a notice shall be ineffective as to any future advances made: (1) to enable completion of the improvements on the Real Property for which the loan secured hereby was originally made; (2) to pay taxes, assessments, maintenance charges and insurance premiums; (3) for costs incurred for the protection of the Property or the lien of this Mortgage; (4) on account of expenses incurred by Lender by reason of a default of Grantor hereunder or under the Related Documents or under the Note; and (5) on account of any other costs incurred by Lender to protect and preserve the Property or the lien of this Mortgage. It is the intention of the parties hereto that any such advance made by Lender after any such notice by Grantor shall be secured by the lien of this Mortgage on the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

Amendments. This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Annual Reports. If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law

Loan No: 6007026

**MORTGAGE**
(Continued)

Page 10

provisions. This Mortgage has been accepted by Lender in the Commonwealth of Pennsylvania.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successor Interests.** The terms of this Mortgage shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here _____ )

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means VideoMining Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means VideoMining Corporation.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and

Loan No: 6007026

**MORGAGE
(Continued)**

Page 11

petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. The liens and security interests created pursuant to this Mortgage covering the Indebtedness which may be created in the future shall relate back to the date of this Mortgage. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means ENTERPRISE BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated March 2, 2020, **in the original principal amount of $175,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

VIDEOMINING CORPORATION

By: _____(Seal)
    Rajeev Sharma, President of VideoMining Corporation

---

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, ENTERPRISE BANK, herein is as follows:

4091 MT. ROYAL BOULEVARD, ALLISON PARK, PA  15101

_____
Attorney  or Agent  for Mortgagee

Loan No: 6007026

**MORTGAGE
(Continued)**

Page 12

## CORPORATE ACKNOWLEDGMENT

STATE OF _____ )

                                    ) SS

COUNTY OF _____ )

This record was acknowledged before me on _____, 20_____ by Rajeev Sharma, President of VideoMining Corporation who represent that (he, she or they) are authorized to act on behalf of VideoMining Corporation.

                                 _____

                                 Signature of Notarial Officer

                                 Notary Public in and for the State of _____

                                 My commission expires _____

LaserPro, Ver. 18.4.20.085    Copr. Finastra USA Corporation 1997, 2020.    All Rights Reserved.    - PA
C:\CFI\LPL\G03.FC  TR-3981  PR-COMMLOCV

THE SAID GRANTED PREMISES BELONGING, OR IN ANY WISE APPERTAINING AND THE
REVERSIONS AND REMAINDERS, RENTS, ISSUES AND PROFITS THEREOF, AND ALL OF
THE ESTATE, RIGHT, TITLE, INTEREST, PROPERTY, CLAIM AND DEMAND WHATSOEVER
OF IT, THE GRANTOR, AS WELL AT LAW AS IN EQUITY, OF, IN AND TO THE SAME.

Parcel ID(s): 36-013-315-C101

Parcel Identification Number:
   36-013-315-C101

RECORDATION REQUESTED BY:
   ENTERPRISE BANK, 4091 MT. ROYAL
   BOULEVARD, ALLISON PARK, PA  15101

WHEN RECORDED MAIL TO:
   ENTERPRISE BANK, 4091 MT. ROYAL
   BOULEVARD, ALLISON PARK, PA  15101

SEND TAX NOTICES TO:
   VideoMining Corporation, 403 South Allen
   Street Ste 101, State College, PA  16801

FOR RECORDER'S USE ONLY

*0115%06007026%#########%03022020*

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated March 2, 2020, is made and executed between VideoMining Corporation, whose address is 403 South Allen Street Ste 101, State College, PA 16801 (referred to below as "Grantor") and ENTERPRISE BANK, whose address is 4091 MT. ROYAL BOULEVARD, ALLISON PARK, PA  15101 (referred to below as "Lender").

ASSIGNMENT.  For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Centre County, Commonwealth of Pennsylvania:

   See Ex A, which is attached to this Assignment and made a part of this Assignment as if fully set forth herein.

The Property or its address is commonly known as  403 South Allen Street Ste 101, State College, PA  16801.  The Real Property parcel identification number is 36-013-315-C101.

CROSS-COLLATERALIZATION.  In addition to the Note, this Assignment secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable. (Initial Here  )

REVOLVING LINE OF CREDIT.  This Assignment secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor unless Grantor fails to comply with all the terms of the Note.

THIS ASSIGNMENT IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Assignment or any Related Documents, Grantor

ASSIGNMENT OF RENTS
(Continued)

Loan No: 6007026

Page 2

shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that:

Ownership. Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

Right to Assign. Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

No Prior Assignment. Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

No Further Transfer. Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS. Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

Notice to Tenants. Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

Enter the Property. Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

Maintain the Property. Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

Compliance with Laws. Lender may do any and all things to execute and comply with the laws of the Commonwealth of Pennsylvania and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

Lease the Property. Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

Employ Agents. Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

Other Acts. Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

No Requirement to Act. Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

APPLICATION OF RENTS. All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

FULL PERFORMANCE. If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 6007026                                                                    Page 3

this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

DEFAULT. Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

Payment Default. Grantor fails to make any payment when due under the Indebtedness.

Other Defaults. Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

Default on Other Payments. Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Default in Favor of Third Parties. Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Assignment or any of the Related Documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Defective Collateralization. This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Insolvency. The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Property Damage or Loss. The Property is lost, stolen, substantially damaged, sold, or borrowed against.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

Adverse Change. A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

RIGHTS AND REMEDIES ON DEFAULT. Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 6007026                                                                    Page 4

by law:

**Accelerate Indebtedness.** Subject to applicable law, Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** This Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Assignment has been accepted by Lender in the Commonwealth of Pennsylvania.

**Merger.** There shall be no merger of the interest or estate created by this Assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

Loan No: 6007026

**ASSIGNMENT OF RENTS**
**(Continued)**

Page 5

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Exercise of Authorization and Powers.** The various authorizations and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender. It is understood and agreed that any exercise of this authorization by Lender shall be on behalf of Lender and not on behalf of Grantor. Lender is not an agent or fiduciary of Grantor. However, in exercising the authorization granted hereby, Lender shall exercise reasonable caution and prudence and Lender shall keep full and accurate record of all actions, receipts and disbursements.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successor Interests.** The terms of this Assignment shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waive Jury.** All parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here _____ )

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means VideoMining Corporation.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means VideoMining Corporation.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 6007026                                                                    Page 6

payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment. The liens and security interests created pursuant to this Assignment covering the Indebtedness which may be created in the future shall relate back to the date of this Assignment. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Assignment.

Lender. The word "Lender" means ENTERPRISE BANK, its successors and assigns.

Note. The word "Note" means the promissory note dated March 2, 2020, in the original principal amount of $175,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON MARCH 2, 2020.

THIS ASSIGNMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS ASSIGNMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:


VIDEOMINING CORPORATION

By: _____ (Seal)
    Rajeev Sharma, President of VideoMining Corporation


## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, ENTERPRISE BANK, herein is as follows:
4091 MT. ROYAL BOULEVARD, ALLISON PARK, PA  15101


                                                    _____
                                                    Attorney  or Agent  for Mortgagee

Loan No: 6007026

# ASSIGNMENT OF RENTS
## (Continued)

Page 7

## CORPORATE ACKNOWLEDGMENT

STATE OF _____  )
                                      ) SS
COUNTY OF _____  )

This record was acknowledged before me on _____, 20_____ by Rajeev Sharma,
President of VideoMining Corporation who represent that (he, she or they) are authorized to act on behalf of
VideoMining Corporation.

Signature of Notarial Officer _____

Notary Public in and for the State of _____

My commission expires _____

LaserPro, Ver. 18.4.20.085   Copr. Finastra USA Corporation 1997, 2020.   All Rights Reserved.   - PA
C:\CFI\LPL\G14.FC  TR-3981  PR-COMMLOCV

THE SAID GRANTED PREMISES BELONGING, OR IN ANY WISE APPERTAINING AND THE
REVERSIONS AND REMAINDERS, RENTS, ISSUES AND PROFITS THEREOF, AND ALL OF
THE ESTATE, RIGHT, TITLE, INTEREST, PROPERTY, CLAIM AND DEMAND WHATSOEVER
OF IT, THE GRANTOR, AS WELL AT LAW AS IN EQUITY, OF, IN AND TO THE SAME.

Parcel ID(s): 36-013-315-C101

*0035%06007026%251853182%03022020*

# AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "* * * *" has been omitted due to text length limitations.

**Grantor:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**INSURANCE REQUIREMENTS.** Grantor, VideoMining Corporation ("Grantor"), understands that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to Grantor by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

**Collateral:** All Inventory and Equipment.
**Type:** All risks, including fire, theft and liability.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
**Deductibles:** $1,000.00.
**Latest Delivery Date:** By 10 days before the loan closing date.

**Collateral:** 403 South Allen Street Ste 101, State College, PA 16801.
**Type:** Fire and extended coverage.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
**Deductibles:** $1,000.00.
**Latest Delivery Date:** By 10 days before the loan closing date.

**INSURANCE COMPANY.** Grantor may obtain insurance from any insurance company Grantor may choose that is reasonably acceptable to Lender. Grantor understands that credit may not be denied solely because insurance was not purchased through Lender.

**FLOOD INSURANCE.** Flood Insurance for the Collateral securing this loan is described as follows:

Real Estate at 403 South Allen Street Ste 101, State College, PA 16801.
Should the Collateral at any time be deemed to be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program or from private insurers.

**INSURANCE MAILING ADDRESS.** All documents and other materials relating to insurance for this loan should be mailed, delivered or directed to the following address:

ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**FAILURE TO PROVIDE INSURANCE.** Grantor agrees to deliver to Lender, on the latest delivery date stated above, proof of the required insurance as provided above, with an effective date of March 2, 2020, or earlier. Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. GRANTOR ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL; HOWEVER, GRANTOR'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, Grantor authorizes Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

## AGREEMENT TO PROVIDE INSURANCE
### (Continued)

Loan No: 6007026                                                                Page 2

---

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 2, 2020.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

VIDEOMINING CORPORATION

By: _____(Seal)
    Rajeev   Sharma,   President   of   VideoMining
    Corporation

ATTEST:

_____          ( Corporate Seal )
Secretary or Assistant Secretary

---

**FOR LENDER USE ONLY**
**INSURANCE VERIFICATION**

DATE: _____          PHONE _____

AGENT'S NAME: _____
AGENCY:  The Hartman Agency
ADDRESS: _____
INSURANCE COMPANY:  Cincinnati Insurance Company
POLICY NUMBER:
EFFECTIVE DATES: _____

COMMENTS: _____

---

**FOR LENDER USE ONLY**
**INSURANCE VERIFICATION**

DATE: _____          PHONE _____

AGENT'S NAME: _____
AGENCY:  Frost & Conn, Inc.
ADDRESS: _____
INSURANCE COMPANY:  Travelers Insurance Company
POLICY NUMBER:
EFFECTIVE DATES: _____

COMMENTS: _____

---

LaserPro, Ver. 18.4.20.069  Copr. Finance USA Corporation 1997, 2020.  All Rights Reserved.  - PA  C:\CFI\LPL\I10.FC  TR-3531  PR-COMMLOCV

*0825%06007026%251853162%03022020*

## NOTICE OF INSURANCE REQUIREMENTS

| Principal | Loan Date 03-02-2020 | Maturity | Loan No 6007026 | Call / Coll RCC4 | Account | Officer EH | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Grantor:  VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

Lender:  ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

TO:   Frost & Conn, Inc.
ATTN: Insurance Agent

DATE: March 2, 2020

RE:  Policy Number(s):

Insurance Companies/Company: Travelers Insurance Company

Dear Insurance Agent:

Grantor, VideoMining Corporation ("Grantor") is obtaining a loan from ENTERPRISE BANK. Please send appropriate evidence of insurance to ENTERPRISE BANK, together with the requested endorsements, on the following property, which Grantor is giving as security for the loan.

Collateral:  403 South Allen Street Ste 101, State College, PA 16801.
Type: Fire and extended coverage.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
Deductibles: $1,000.00.
Latest Delivery Date: By 10 days before the loan closing date.

GRANTOR:

VIDEOMINING CORPORATION

By: _____(Seal)
Rajeev Sharma, President of VideoMining Corporation

ATTEST:

_____
Secretary or Assistant Secretary

( Corporate Seal )

RETURN TO:

ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

LaserPro, Ver. 18.4.20.048  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - PA  C:\CFI\LPL\G18.FC
TR-3581 PR-COMMADEV

Parcel Identification Number:
24-422-045

RECORDATION REQUESTED BY:
ENTERPRISE BANK, 4091 MT. ROYAL
BOULEVARD, ALLISON PARK, PA  15101

WHEN RECORDED MAIL TO:
ENTERPRISE BANK, 4091 MT. ROYAL
BOULEVARD, ALLISON PARK, PA  15101

SEND TAX NOTICES TO:
Rajeev Sharma and Vishnu Priya Sharma,
2391 Shagbark Court, State College, PA
16803

FOR RECORDER'S USE ONLY



*0746%06007026%#########%03022020*

## OPEN - END MORTGAGE AND SECURITY AGREEMENT

*(This instrument is an open-end mortgage and secures future advances pursuant to 42 Pa. C.S.
§§ 8143 and 8144, Act No. 126 of 1990)*

MAXIMUM LIEN.  This Mortgage shall secure unpaid loan advances made after this Mortgage is
recorded. The unpaid principal balance of advances exclusive of interest and other extensions of
credit secured by the Mortgage made for the payment of taxes, assessments, maintenance
charges, insurance premiums and costs incurred for the protection of the mortgaged premises
shall not exceed at any one time $175,000.00.

Amount Secured Hereby:   $175,000.00

THIS MORTGAGE dated March 2, 2020, is made and executed between Rajeev Sharma and
Vishnu Priya Sharma, whose address is 2391 Shagbark Court, State College, PA  16793
(referred to below as "Grantor") and ENTERPRISE BANK, whose address is 4091 MT. ROYAL
BOULEVARD, ALLISON PARK, PA  15101 (referred to below as "Lender").

GRANT OF MORTGAGE.  For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers,
releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described
real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all
streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements,
hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and
remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with
ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without
limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Centre
County, Commonwealth of Pennsylvania:

See Ex A, which is attached to this Mortgage and made a part of this Mortgage as if fully
set forth herein.

The Real Property or its address is commonly known as  2391 Shagbark Court, State College,
PA  16802.  The Real Property parcel identification number is 24-422-045.

CROSS-COLLATERALIZATION.  In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus

## MORTGAGE
### (Continued)

interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable. If the Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of Grantor to Lender, then this Mortgage shall not secure additional loans or obligations unless and until such notice is given. (Initial Here ▓▓▓▓▓▓▓▓▓ )

**REVOLVING LINE OF CREDIT.** This Mortgage secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Borrower unless Borrower fails to comply with all the terms of the Note.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower and Grantor shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

    **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    **Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims

---

against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

Compliance with Governmental Requirements. Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

Right to Contest. Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and if Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees (whether incurred by Lender's internal counsel or Lender's outside counsel) at trial and upon any

**MORTGAGE**
(Continued)

Loan No: 6007026

Page 4

appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitations, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in

Loan No: 6007026

## MORGAGE
(Continued)

Page 5

the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default. Grantor's obligation to Lender for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

Existing Lien. The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

No Modification. Grantor shall not enter into any agreement with the holder of any mortgage or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all actual costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

MORTGAGE
(Continued)

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ADDITIONAL AUTHORIZATIONS.** The following provisions relating to further assurances and additional authorizations are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Additional Authorizations.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably authorizes Lender to make, execute, deliver, file, record and do all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. It is understood that nothing set forth herein shall require Lender to take any such actions.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

Loan No: 6007026

## MORTGAGE
### (Continued)

Page 7

---

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or Grantor's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any Indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving such notices as required by

Loan No: 6007026

Page 8

applicable law, to declare the entire Indebtedness immediately due and payable.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the earnings, revenues, Rents, issues, profits and income from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness as a strict right. This right shall be without regard to, and without the necessity of proving (i) the inadequacy of the security for the repayment of the Grantor's Indebtedness; (ii) the insolvency of Grantor or any other person or entity who may be legally or equitably liable to pay money secured hereby and Grantor and each such person or entity shall be deemed to have waived such proof and to have consented to the appointment of a receiver; or (iii) the filing of a notice of default; and the Grantor consents to such appointment. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by the Lender shall not disqualify a person from serving as receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Possession of the Property.** For the purpose of procuring possession of the Property, Grantor hereby authorizes and empowers any attorney of any court of record in the Commonwealth of Pennsylvania or elsewhere, as attorney for Lender and all persons claiming under or through Lender, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Property and to appear for and confess judgment against Grantor, and against all persons claiming under or through Grantor, for the recovery by Lender of possession of the Property, without any stay of execution, for which this Mortgage, or a copy of this Mortgage verified by affidavit, shall be a sufficient warrant; and thereupon a writ of possession may be issued forthwith, without any prior writ or proceeding whatsoever.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Unless otherwise required by applicable law, reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing

Loan No: 6007026

## MORGAGE
### (Continued)

Page 9

under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees (whether incurred by Lender's internal counsel or Lender's outside counsel) at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitations, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

NOTICES. Unless otherwise provided by applicable law, any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage and notices pursuant to 42 Pa. C.S.A. Section 8143, et. seq., shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

ADVANCE MONEY MORTGAGE. (A) This Mortgage secures future advances made pursuant to the Note or Related Documents. Without limiting the foregoing, this Mortgage secures all advances made by Lender or Banks of any kind or nature described in 42 Pa. C.S.A. § 8144. (B) If Grantor sends a written notice to Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Lender to make any additional advances to or for the benefit of Grantor, such a notice shall be ineffective as to any future advances made: (1) to enable completion of the improvements on the Real Property for which the loan secured hereby was originally made; (2) to pay taxes, assessments, maintenance charges and insurance premiums; (3) for costs incurred for the protection of the Property or the lien of this Mortgage; (4) on account of expenses incurred by Lender by reason of a default of Borrower or Grantor hereunder or under the Related Documents or under the Note; and (5) on account of any other costs incurred by Lender to protect and preserve the Property or the lien of this Mortgage. It is the intention of the parties hereto that any such advance made by Lender after any such notice by Grantor shall be secured by the lien of this Mortgage on the Property.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the Commonwealth of Pennsylvania.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right

Loan No: 6007026

## MORTGAGE
## (Continued)

Page 10

shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Severability. If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

Merger. There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Successor Interests. The terms of this Mortgage shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

Time is of the Essence. Time is of the essence in the performance of this Mortgage.

Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here ▨▨▨▨▨▨ ▨▨▨▨▨▨ )

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means VideoMining Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Default. The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

Grantor. The word "Grantor" means Rajeev Sharma and Vishnu Priya Sharma.

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real

Loan No: 6007026

## MORGAGE
(Continued)

Page 11

---

Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. The liens and security interests created pursuant to this Mortgage covering the Indebtedness which may be created in the future shall relate back to the date of this Mortgage. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means ENTERPRISE BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated March 2, 2020, in the original principal amount of $175,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X_____ (Seal)
Rajeev Sharma

X_____ (Seal)
Vishnu Priya Sharma

---

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, ENTERPRISE BANK, herein is as follows:

4091 MT. ROYAL BOULEVARD, ALLISON PARK, PA  15101

_____
Attorney  or Agent  for Mortgagee

Loan No: 6007026

**MORGAGE
(Continued)**

Page 12

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____

COUNTY OF _____

)
) SS
)

This record was acknowledged before me on _____, 20_____ by Rajeev Sharma and Vishnu Priya Sharma.

_____
Signature of Notarial Officer

Notary Public in and for the State of _____

My commission expires _____

LaserPro,  Ver.  18.4.20.085    Copr.  Finastra  USA  Corporation  1997,  2020.    All  Rights  Reserved.    - PA
C:\CFI\LPL\G03.FC  TR-3981  PR-COMMLOCV

## EXHIBIT "A"

## LEGAL DESCRIPTION

ALL THAT CERTAIN TRACT OF LAND SITUATED IN FERGUSON TOWNSHIP, CENTRE COUNTY, PENNSYLVANIA, BEING A LOT KNOWN AS LOT #45 AS SHOWN ON THE CHESTNUT RIDGE RESIDENTIAL DEVELOPMENT FINAL SUBDIVISION PLAN, SECTION 1A, DATED APRIL 29, 1987 BY UNI-TEC, INC., STATE COLLEGE, PENNSYLVANIA, AND RECORDED IN CENTRE COUNTY PLAT BOOK 37, PAGE 66, BEING BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LYING IN A NORTHERLY R/W OF SHAGBARK COURT (50' R/W) AND BEING AN EASTERLY CORNER OF LOT #44, THENCE ALONG LOT #44, NORTH 34 DEGREES 03' 38" WEST, 114.16 FEET TO AN IRON PIN BEING A NORTHERLY CORNER OF LOT #44 AND BEING A SOUTHERLY CORNER OF SECTION 1B, THENCE ALONG SECTION 1B, NORTH 13 DEGREES 25' 21" EAST, 178.94 FEET TO AN IRON PIN LYING IN AN EASTERLY LINE OF SECTION 1B AND BEING A WESTERLY CORNER OF SECTION 2 AND BEING A NORTHERLY CORNER OF LOT #46, THENCE ALONG LOT #46, SOUTH 30 DEGREES 41' 19" EAST, 230.17 FEET TO AN IRON PIN BEING A SOUTHERLY CORNER OF LOT #46 AND LYING IN A NORTHERLY R/W OF SHAGBARK COURT CUL-DE-SAC (50' RADIUS), THENCE ALONG SAID R/W ALONG A CURVE TO THE LEFT, HAVING A CHORD BEARING OF SOUTH 33 DEGREES 28' 54" WEST, A CHORD DISTANCE OF 43.57 FEET, A RADIUS OF 50.00 FEET, AND AN ARC DISTANCE OF 45.08 FEET TO AN IRON PIN LYING IN SAID R/W OF SHAGBARK COURT CUL-DE-SAC AND LYING IN A NORTHERLY R/W OF SHAGBARK COURT, THENCE ALONG SAID R/W ALONG A CURVE TO THE LEFT, HAVING A CHORD BEARING OF SOUTH 64 DEGREES 11' 39" WEST, A CHORD DISTANCE OF 78.90 FEET, A RADIUS OF 1015.00 FEET AND AN ARC DISTANCE OF 78.92 FEET TO AN IRON PIN, BEING THE PLACE OF BEGINNING; CONTAINING 0.500 ACRE.

FOR INFORMATIONAL PURPOSES ONLY, MORE COMMONLY AS 2391 SHAGBARK COURT, STATE COLLEGE PA 16803

Parcel ID(s): 24-422-045

*0035%06007026%251853162%03022020*

# AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**Grantor:** Rajeev Sharma
Vishnu Priya Sharma
2391 Shagbark Court
State College, PA 16803

**INSURANCE REQUIREMENTS.** Grantor, Rajeev Sharma and Vishnu Priya Sharma ("Grantor"), understands that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to VideoMining Corporation ("Borrower") by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

Collateral: 2391 Shagbark Court, State College, PA 16802.
Type: Fire and extended coverage.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
Deductibles: $2,000.00.
Latest Delivery Date: By 10 days before the loan closing date.

**INSURANCE COMPANY.** Grantor may obtain insurance from any insurance company Grantor may choose that is reasonably acceptable to Lender. Grantor understands that credit may not be denied solely because insurance was not purchased through Lender.

**FLOOD INSURANCE.** Flood Insurance for the Collateral securing this loan is described as follows:

Real Estate at 2391 Shagbark Court, State College, PA 16802.
Should the Collateral at any time be deemed to be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program or from private insurers.

**INSURANCE MAILING ADDRESS.** All documents and other materials relating to insurance for this loan should be mailed, delivered or directed to the following address:

ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**FAILURE TO PROVIDE INSURANCE.** Grantor agrees to deliver to Lender, on the latest delivery date stated above, evidence of the required insurance as provided above, with an effective date of March 2, 2020, or earlier. Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. GRANTOR ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL; HOWEVER, GRANTOR'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, Grantor authorizes Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

## AGREEMENT TO PROVIDE INSURANCE
### (Continued)

Loan No: 6007026                                                                    Page 2

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 2, 2020.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X_____(Seal)          X_____(Seal)
  Rajeev Sharma                                    Vishnu Priya Sharma

Signed, acknowledged and delivered in the presence of:

X_____
  Witness

X_____
  Witness

---

FOR LENDER USE ONLY
INSURANCE VERIFICATION

DATE: _____                PHONE _____
_____

AGENT'S NAME: _____
AGENCY: _____
ADDRESS: _____
INSURANCE COMPANY: Esurance Insurance Company
POLICY NUMBER
EFFECTIVE DATES: _____
_____
COMMENTS: _____
_____
_____

*0825%06007026%251853162%03022020*

# NOTICE OF INSURANCE REQUIREMENTS

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Grantor:** Rajeev Sharma
Vishnu Priya Sharma
2391 Shagbark Court
State College, PA 16803

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

TO: ATTN: Insurance Agent

DATE: March 2, 2020

RE: Policy Number(s):

Insurance Companies/Company: Esurance Insurance Company

Dear Insurance Agent:

VideoMining Corporation ("Borrower"), is obtaining a loan from ENTERPRISE BANK. Please send appropriate evidence of insurance to ENTERPRISE BANK, together with the requested endorsements, on the following property, which Grantor, Rajeev Sharma and Vishnu Priya Sharma ("Grantor") is giving as security for the loan.

**Collateral:** 2391 Shagbark Court, State College, PA 16802.
Type: Fire and extended coverage.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
Deductibles: $2,000.00.
Latest Delivery Date: By 10 days before the loan closing date.

GRANTOR:

X_______________________(Seal)
Rajeev Sharma

X_______________________(Seal)
Vishnu Priya Sharma

Signed, acknowledged and delivered in the presence of:

X_______________________
Witness

X_______________________
Witness

RETURN TO:

ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

LaserPro, Ver. 19.4.20.085 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - PA C:\CFI\LPL\I11.FC TR-3981 PR-COMM4DCV

*0220%06007026%251853162%03022020*

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | VideoMining Corporation<br>403 South Allen Street Ste 101<br>State College, PA 16801 | **Lender:** | ENTERPRISE BANK<br>4091 MT. ROYAL BOULEVARD<br>ALLISON PARK, PA 15101 |
| **Guarantor:** | Rajeev Sharma<br>Vishnu Priya Sharma<br>2391 Shagbark Court<br>State College, PA 16803 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred (by Lender's internal counsel or Lender's external counsel) in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) Prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of

## COMMERCIAL GUARANTY
(Continued)

Loan No: 6007026

this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

GUARANTOR'S REPRESENTATIONS AND WARRANTIES.  Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition.  Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S WAIVERS.  Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.  If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

RIGHT OF SETOFF.  To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in those accounts to pay what Guarantor owes under the terms of this Guaranty.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.  Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.  In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness.  Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness.  If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender.  Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS.  The following miscellaneous provisions are a part of this Guaranty:

Amendments.  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 6007026

Page 3

to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred (by Lender's internal counsel or Lender's external counsel) in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided by applicable law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** The terms of this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. (Initial Here _____ )

**Additional Waivers.** In addition to the waivers set forth in the paragraph entitled "Guarantor's Waivers", Guarantor hereby waives any and all rights or defenses based upon or arising out of any material modification to the Note or Indebtedness or security for such Note or Indebtedness as well as any rights or defenses based upon or arising out of any fact that materially increases the risk to the Guarantor.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means VideoMining Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Rajeev Sharma and Vishnu Priya Sharma, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means ENTERPRISE BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments,

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 6007026                                                                             Page 4

agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

CONFESSION OF JUDGMENT.    GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR GUARANTOR AFTER THE AMOUNTS HEREUNDER BECOME DUE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR THE ENTIRE PRINCIPAL BALANCE OF THIS GUARANTY AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THE INDEBTEDNESS, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS GUARANTY OR A COPY OF THIS GUARANTY VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS GUARANTY TO CONFESS JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS GUARANTY. GUARANTOR HEREBY WAIVES ANY RIGHT GUARANTOR MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO GUARANTOR'S ATTENTION OR GUARANTOR HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MARCH 2, 2020.

WE ARE SIGNING THIS GUARANTY AS HUSBAND AND WIFE, AND WE AGREE THAT THIS JOINT ACTION WAIVES OUR RIGHTS AS TENANTS BY THE ENTIRETIES.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:

X_____(Seal)      X_____(Seal)
  Rajeev Sharma                                  Vishnu Priya Sharma

Signed, acknowledged and delivered in the presence of:

X_____
  Witness

X_____
  Witness

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____      )
                                                   ) SS
COUNTY OF _____    )

This record was acknowledged before me on _____, 20_____ by Rajeev Sharma and Vishnu Priya Sharma.

                                         _____
                                         Signature of Notarial Officer

                                         Notary Public in and for the State of _____

                                         My commission expires _____

# DISCLOSURE FOR CONFESSION OF JUDGMENT

| Principal $175,000.00 | Loan Date 03-02-2020 | Maturity | Loan No 6007026 | Call / Coll RCC4 | Account | Officer EH | Initials |
|---|---|---|---|---|---|---|---|
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing " * * * * * " has been omitted due to text length limitations. | | | | | | | |

Declarant:  VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

Lender:  ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

## DISCLOSURE FOR CONFESSION OF JUDGMENT

THE UNDERSIGNED IS EXECUTING ON BEHALF OF DECLARANT, THIS _____ DAY OF _____, 20 ____, A PROMISSORY NOTE FOR $175,000.00 OBLIGATING DECLARANT TO REPAY THAT AMOUNT.

A. THE UNDERSIGNED UNDERSTANDS THAT THE NOTE CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST DECLARANT IN COURT, AFTER A DEFAULT ON THE NOTE, WITHOUT ADVANCE NOTICE TO DECLARANT AND WITHOUT OFFERING DECLARANT AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE NOTE, BEING FULLY AWARE OF DECLARANT'S RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST DECLARANT UNDER THE NOTE, THE UNDERSIGNED, ON BEHALF OF THE DECLARANT, IS KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND THE UNDERSIGNED EXPRESSLY AGREES AND CONSENTS TO LENDER'S ENTERING JUDGMENT AGAINST DECLARANT BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.
INITIALS:

B. THE UNDERSIGNED FURTHER UNDERSTANDS THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST DECLARANT WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE ALSO CONTAINS LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING DECLARANT'S PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE NOTE, BEING FULLY AWARE OF DECLARANT'S RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, THE UNDERSIGNED, ON BEHALF OF THE DECLARANT, IS KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND THE UNDERSIGNED EXPRESSLY AGREES AND CONSENTS TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING DECLARANT ANY ADVANCE NOTICE.
INITIALS:

C. AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, THE UNDERSIGNED REPRESENTS THAT:

INITIALS

_____  1. DECLARANT WAS REPRESENTED BY DECLARANT'S OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE NOTE.

_____  2. A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE TO DECLARANT'S ATTENTION.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

VIDEOMINING CORPORATION

By:_____(Seal)
Rajeev Sharma, President of VideoMining
Corporation

ATTEST:

_____
Secretary or Assistant Secretary

( Corporate Seal )

# DISCLOSURE FOR CONFESSION OF JUDGMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**Declarant:** Rajeev Sharma
2391 Shagbark Court
State College, PA 16803

## DISCLOSURE FOR CONFESSION OF JUDGMENT

I AM EXECUTING, THIS ________ DAY OF ________________________, 20____, A GUARANTY FOR AN UNLIMITED AMOUNT.

A. I UNDERSTAND THAT THE GUARANTY CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST ME IN COURT, AFTER A DEFAULT ON THE GUARANTY, WITHOUT ADVANCE NOTICE TO ME AND WITHOUT OFFERING ME AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE GUARANTY, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST ME UNDER THE GUARANTY, I AM KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S ENTERING JUDGMENT AGAINST ME BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.
INITIALS: ________

B. I FURTHER UNDERSTAND THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST ME WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE GUARANTY ALSO CONTAINS LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING MY PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE GUARANTY, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, I AM KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING ME ANY ADVANCE NOTICE.
INITIALS: ________

C. AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, I REPRESENT THAT:

INITIALS

________ 1. I WAS REPRESENTED BY MY OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE GUARANTY.

________ 2. A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE GUARANTY TO MY ATTENTION.

E. I CERTIFY THAT MY ANNUAL INCOME EXCEEDS $10,000; THAT THE BLANKS IN THIS DISCLOSURE WERE FILLED IN WHEN I INITIALED AND SIGNED IT; AND THAT I RECEIVED A COPY AT THE TIME OF SIGNING.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

X________________________________(Seal)
Rajeev Sharma

Signed, acknowledged and delivered in the presence of:

X________________________________
Witness

X________________________________
Witness

LaserPro, Ver. 18.4.20.055 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - PA C:\CFI\LPL\D23.FC TR-3381 PR-COMMLOCV

# DISCLOSURE FOR CONFESSION OF JUDGMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

**Declarant:** Vishnu Priya Sharma
2391 Shagbark Court
State College, PA 16803

## DISCLOSURE FOR CONFESSION OF JUDGMENT

I AM EXECUTING, THIS ________ DAY OF ________________________, 20____, A GUARANTY FOR AN UNLIMITED AMOUNT.

A. I UNDERSTAND THAT THE GUARANTY CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST ME IN COURT, AFTER A DEFAULT ON THE GUARANTY, WITHOUT ADVANCE NOTICE TO ME AND WITHOUT OFFERING ME AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE GUARANTY, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST ME UNDER THE GUARANTY, I AM KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S ENTERING JUDGMENT AGAINST ME BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.
INITIALS: ________

B. I FURTHER UNDERSTAND THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST ME WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE GUARANTY ALSO CONTAINS LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING MY PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE GUARANTY, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, I AM KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING ME ANY ADVANCE NOTICE.
INITIALS: ________

C. AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, I REPRESENT THAT:

INITIALS

________ 1. I WAS REPRESENTED BY MY OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE GUARANTY.

________ 2. A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE GUARANTY TO MY ATTENTION.

E. I CERTIFY THAT MY ANNUAL INCOME EXCEEDS $10,000; THAT THE BLANKS IN THIS DISCLOSURE WERE FILLED IN WHEN I INITIALED AND SIGNED IT; AND THAT I RECEIVED A COPY AT THE TIME OF SIGNING.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

X________________________________(Seal)
Vishnu Priya Sharma

Signed, acknowledged and delivered in the presence of:

X________________________________
Witness

X________________________________
Witness

LaserPro, Ver. [illegible] Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - PA [illegible] TR-2381 PR-COMML0CV

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $175,000.00 | 03-02-2020 | | 6007026 | RCC4 | | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
4091 MT. ROYAL BOULEVARD
ALLISON PARK, PA 15101

LOAN TYPE. This is a Fixed Rate (8.000%) Nondisclosable Revolving Line of Credit Loan to a Corporation for $175,000.00 due on February 2, 2021.

PRIMARY PURPOSE OF LOAN. The primary purpose of this loan is for (please initial):

☐ ________ Personal, Family, or Household Purposes or Personal Investment.

☒ ________ Business (Including Real Estate Investment).

REAL ESTATE DOCUMENTS. If any party to this transaction is granting a security interest in any real property to Lender and Borrower is not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, Borrower agrees to perform and comply with the Real Estate Documents just as if Borrower has signed as a direct and original party to the Real Estate Documents. This means Borrower agrees to all the representations and warranties made in the Real Estate Documents. In addition, Borrower agrees to perform and comply strictly with all the terms, obligations and covenants to be performed by either Borrower or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell Borrower about any action or inaction Lender takes in connection with the Real Estate Documents. Borrower assumes the responsibility for being and keeping informed about the property. Borrower also waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $175,000.00 as follows:

| | |
|---|---|
| Undisbursed Funds: | $175,000.00 |
| Note Principal: | $175,000.00 |

CHARGES PAID IN CASH. Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: | $0.00 |
| Other Charges Paid in Cash: | $1,642.00 |
| $1,000.00 Due Diligence Fee | |
| $20.00 Credit Report | |
| $50.00 Flood Determination | |
| $400.00 Property Report | |
| $1.00 Attroney Fees (Inside Legal Counsel) | |
| $1.00 Attorney Fees (External Legal Counsel) | |
| $168.00 UCC-1 (State) Filing | |
| $1.00 Mortgage Record Fee | |
| $1.00 Assignment of Rents and Leases | |
| Total Charges Paid in Cash: | $1,642.00 |

FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED MARCH 2, 2020.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

VIDEOMINING CORPORATION

By: ______________________________ (Seal)
Rajeev Sharma, President of VideoMining Corporation

LaserPro, Ver. 18.4.22.005 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - PA C:\CFIWIN\CFI\LPL\D20.FC TR-2381 PR-COMMLOCV