FILED
3/19/20 7:40 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

VIDEOMINING CORPORATION,           Bankruptcy No. 20-20425-GLT

    Debtor.                                     Chapter 11

VIDEOMINING CORPORATION,           Document No.

    Movant,                                     Related to Doc. No. 60, 111

vs.

NO RESPONDENT.

## MODIFIED
## FINAL ORDER AUTHORIZING
## DEBTOR TO OBTAIN POST-PETITION FINANCING

Upon review of the Emergency Motion of Debtor for Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing (the "**Motion**") and any responses and objections thereto, and after such notice and opportunity for a hearing as the Court deemed appropriate, including the interim hearing held on March 2, 2020 and the final hearing held on March 19, 2020, it is hereby ORDERED, ADJUDGED, and DECREED that:

    1.    The Motion is GRANTED on a final basis on the terms set forth in this Order.

    2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Debtor's Chapter 11 case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    3.    Notice of the Motion, the relief requested therein and the orders scheduling the hearings and response dates were properly served on all required parties by VideoMining Corporation (the "**Debtor**").

4. All responses and objections to the entry of this Order, including the Objection of White Oak Business Capital, Inc. (Doc. 67) and its Reservation of Rights (Doc. No. 108), to the extent not withdrawn or settled, are resolved or overruled.

5. Debtor is authorized to obtain, and Enterprise Bank ("**Bank**" or "**DIP Lender**") is authorized to provide, Debtor in Possession financing in an amount not to exceed outstanding at any time, $175,000, pursuant to the terms set forth in the Motion and the commitment letter attached thereto and subject to the terms of the definitive loan documents attached to the Interim Order Authorizing Debtor to Obtain Post-Petition Financing (Doc. 77) (the "**Interim Order**") and this Order (the "**DIP Loan**"). The Debtor and the Bank were authorized to and did execute the definitive loan documents attached to the Interim Order (the "**DIP Loan Documents**") to memorialize the terms and conditions of the DIP Loan, and such authorization and action is ratified and confirmed on a final basis.

6. The Debtor may request advances, and the DIP Lender may make advances in its discretion, under the DIP Loan Documents up to 50% of ordinary course accounts receivable deemed eligible and arising after entry of the Interim Order (each an "**Advance**") on a revolving basis, not to exceed an outstanding balance of $175,000 at any time. The Advances shall be used to finance working capital needs of the Debtor and for general operating purposes consistent with and in accordance with the Interim Order, the Budget defined therein, and from the date of this Order the budget attached to this Order, and the final Order Authorizing Use of Cash Collateral through May 8, 2020 (Doc. 102) **(the "Cash Collateral Order")**, (collectively, the "**Cash Collateral Budget**"). The Debtor must timely repay the DIP Loan in monthly installments of interest with principal reduction payments in the amount of 50% of the amount paid upon collection of the eligible account upon which an Advance was made and otherwise in accordance with the DIP Loan Documents. A copy of the current Cash Collateral Budget is attached and incorporated into this Order as Exhibit A.

7. The DIP Lender is authorized to make, and the Debtor is authorized to borrow, the Advances available to the Debtor in accordance with, and in the amounts set forth in, this Order and the DIP Loan Documents from entry of the Interim Order until the Maturity Date (defined below).

8.     To the extent the Debtor requests Advances and the DIP Lender makes Advances, the DIP Lender agrees to provide a carve-out from the DIP Loan for the benefit of estate professionals retained under Sections 327 and/or 1103 of the Bankruptcy Code (the "**Retained Professionals**") and the United States Trustee for (a) U.S. Trustee fees pursuant to 28 U.S.C.§ 1930, and (b) the Retained Professionals' fees and expenses allowed under Sections 330 and 503 of the Bankruptcy Code, but only to the extent and not to exceed the amounts set forth for the respective Retained Professionals in the Cash Collateral Budget, and which in both cases (a and b) are incurred or accrued prior to the Maturity Date (the "**Carve Out**").

9.     As security for the Advances and obligations owed under the DIP Loan Documents (including accrued interest, costs, attorney's fees and other charges), the DIP Lender is granted pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, senior first priority security interests and liens, including priority over any liens acquired or perfected under Section 546(b) of the Bankruptcy Code, in and upon all accounts and accounts receivable of the Debtor, arising or created by the issuance of an invoice after the entry of the Interim Order (the "**Senior DIP Lien**"), and junior priority security interests and liens in and upon all other property of the Debtor, whether acquired pre-petition and/or post-petition, including all accounts, goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, commercial tort claims, general intangibles (including all payment intangibles), money, deposit accounts, patents, trademarks, or other intellectual property and any other contract rights or rights to the payment of money, and all other Collateral (as defined in the attached Commercial Security Agreement) (collectively, the "**Junior DIP Lien**"), together with all proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing, together with all real property and fixtures owned by Debtor. The Senior DIP Lien and the Junior DIP Lien (collectively, the "**DIP Liens**") shall be effective and perfected upon and from the date of the Interim Order and without necessity of the execution, recordation, or filings by the DIP Lender and/or the Debtor of security agreements, control agreements, pledge agreements,

financing statements, assignments, mortgages or other similar documents; provided, however, the DIP Liens are further governed by, subject to and may be enforced in accordance with the Security Agreement that is part of the DIP Loan Documents. The DIP Lender may in its discretion (but is not required to), and is authorized to, file or record this Order, any financing statement, mortgage, assignment of rents, and any other instrument deemed necessary or desirable by the DIP Lender. The Senior DIP Lien shall be subject only to the Carve Out. The Junior DIP Lien shall be junior in priority to all other liens existing as of the date of this Order as their priority may appear pursuant to law, including the liens in favor of the DIP Lender which continue to secure its prepetition loans to the Debtor and any replacement liens granted pursuant to the Cash Collateral Order. The Cross-Collateralization provision in the Commercial Security Agreement or elsewhere in the DIP Loan Documents shall apply only to Debtor's obligations under the DIP Loan Documents and this Order and any final or other Order relating to the DIP Loan.

10. **"Maturity Date"** shall mean the date on which the earliest of the following occurs:

  (a) February 28, 2021, or such later date as may be agreed upon by the Debtor and the DIP Lender;

  (b) Debtor's Bankruptcy Case is either dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

  (c) A trustee or an examiner with expanded powers is either elected or appointed in this case;

  (d) This Order is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which in the opinion of the DIP Lender materially adversely affects the rights or remedies of the DIP Lender;

  (e) Material non-compliance by the Debtor with any of the terms, provisions or covenants of this Order or the DIP Loan Documents occurs;

  (f) The Debtor uses cash collateral other than as set forth herein or in the Cash Collateral Budget;

(g) The Debtor has not entered into a bona fide sales agreement with a third party to purchase substantially all of its assets on or before August 21, 2020;

(h) A sale of substantially all of the Debtor's patents or any other sale of Debtor's assets occurs, other than a de minimis sale;

(i) The Debtor fails to comply with or perform, in any material respect, the terms and provisions of this Order or the DIP Loan Documents;

(j) Any motion or other proceeding is filed to approve a sale or other disposition of substantially all of the Debtor's assets that does not provide for full payment of the DIP Loan without the consent of the DIP Lender;

(k) The automatic stay of Section 362 is lifted, terminated, modified or annulled so as to allow a party other than the DIP Lender to proceed against any material asset of the Debtor; or

(l) The occurrence of an Event of Default under the DIP Loan Documents or this Order.

11. The DIP Lender shall not make any Advance following the Maturity Date without further order of this Court.

12. The acknowledgments, admissions, representations, stipulations and agreements regarding the Enterprise Pre-Petition Obligations and the Enterprise Pre-Petition Collateral, as defined and provided in Paragraph 16 of the Cash Collateral Order, are incorporated as if fully set forth herein, are binding on all parties in interest and are ratified and confirmed.

13. Without limiting the generality of the foregoing Paragraph 12, the Debtor does not have, and hereby forever releases, waives and discharges, any claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, and/or setoff rights, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against the DIP Lender or any of its respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, officers, agents, employees, attorneys and affiliates

and that arise out of or relate to any of the DIP Lender's pre-petition liens and loan documents or any acts, inactions, or transactions thereunder, whether at law or in equity.

14. The DIP Loan Documents are the result of an arm's length negotiation process and thus constitute fair and market-based financing. The rates, fees, and other expenses to be paid in connection with the DIP Loan Documents, including the Charges Paid in Cash as set forth in the Disbursement Request and Authorization form at the end of the DIP Loan Documents attached to the Interim Order and the DIP Lender's legal fees incurred with Dentons Cohen & Grigsby ("**DCG**") in the amount of $9,822.50 (as discounted by DCG from $12,822.50) through February 29, 2020, and such other fees and expenses as may be provided for in the Budget, are reasonable, and the Debtor is authorized to pay them.

15. The Debtor shall use proceeds from the DIP Loan to fund its operations during this Chapter 11 case and not use the DIP Loan proceeds to pay off any of the amounts owed on account of any pre-petition claims other than as permitted in the Cash Collateral Budget and approved by the Court.

16. The terms of the DIP Loan and DIP Loan Documents are fair and reasonable, reflect the exercise of the Debtor's prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

17. The Debtor is unable to obtain unsecured credit allowable under Section 364(a) and (b) and Section 503(b)(1) of the Bankruptcy Code as an administrative expense.

18. The DIP Loan and DIP Loan Documents have been negotiated in good faith between the Debtor and the DIP Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the DIP Loan, the DIP Loan Documents and/or this Order, including, without limitation, all loans made to the Debtor pursuant to the DIP Loan, the DIP Loan Documents, the Interim Order and/or this Order (together with any other obligation arising under this Order, the DIP Loan, the Interim Order, and/or the DIP Loan Documents, collectively the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lender in good faith as that term is used in Section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and shall be entitled to

the full protection of Section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

19.     The Debtor has requested entry of this Order pursuant to Bankruptcy Rules 4001(b) and 4001(c) and, absent the relief sought by this Order, the Debtor's estate will be immediately and irreparably harmed. Accordingly, the granting of this Order and authorizing the Debtor to borrow under the DIP Loan and DIP Loan Documents as set forth in this Order is in the best interest of the Debtor's estate and its creditors.

20.     The Debtor is authorized and directed to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of this Order, security agreements, mortgages, and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Loan Documents, including, without limitation, the payment to the DIP Lender of the reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the commitment letter or the DIP Loan Documents.

21.     Pursuant to Section 364(c)(1) of the Bankruptcy Code, this Court grants the DIP Lender a super priority administrative claim (senior to any other administrative claims) in an amount equal to the amounts now or in the future due under the DIP Loan Documents (the "**Post-Petition Advance Superpriority Administrative Claim**"). The Post-Petition Superpriority Administrative Claim shall be subordinate to only the Carve Out.

22.     The Senior DIP Lien shall not be: (a) subject or subordinate to: (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under Section 551 of the Bankruptcy Code; and/or (ii) any lien arising after the petition date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtor, or (b) subordinated to or made *pari passu* with any other lien or security interest granted under Section 364 of the Bankruptcy Code or otherwise.

23. In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling," any surcharge or claim under Section 506(c) of the Bankruptcy Code, or any similar doctrine or claim with respect to the collateral securing the DIP Loan.

24. No rights, claims, liens, or the like of the DIP Lender with respect to the protections provided to the DIP Lender under this Order can be modified in any plan of reorganization or liquidation or any subsequent financing without the prior written consent of the DIP Lender.

25. Nothing in this Order shall affect the DIP Lender's claims against third parties, including the guarantors of the DIP Lender's prepetition loans and the guarantors of the DIP Loan.

26. The Debtor and any successor or assign of the Debtor, including any subsequently appointed Chapter 7 or Chapter 11 trustee, are bound by the terms of this Order and any subsequent order of this Court relating to the DIP Loan.

27. The DIP Lender reserves the right to assign all of its rights, claims and obligations under the DIP Loan Documents.

28. In addition to any term or condition set forth in the DIP Loan Documents, the obligation to make any Advance shall be subject to the satisfaction of the following conditions:

    (a) The Maturity Date has not occurred;

    (b) The representations and warranties of the Debtor to the DIP Lender shall be true and correct in all material respects as of the date of each Advance;

    (c) The outstanding aggregate amount of all Advances and other amounts owed under the DIP Loan Documents do not exceed the lesser of (i) 50% of all of the ordinary course accounts against which the DIP Lender has agreed to make an Advance plus interest and other charges due under the DIP Loan Documents ,and (ii) $175,000;

    (d) This Order in a form and substance satisfactory to the DIP Lender shall have been entered by the Court and be in full force and effect and the Debtor shall be in compliance with all the terms thereof;

(e) Receipt by the DIP Lender of a certificate executed by a duly authorized officer of Debtor requesting an Advance that states the proposed Advance is consistent with the terms of Debtor's Cash Collateral Budget and to the best of the Debtor's knowledge no Event of Default has occurred except as specified in such certificate, together with such other information as may be required under the DIP Loan Documents or reasonably requested by the DIP Lender ("**Certificate**"); and

(f) The Debtor shall have reimbursed the DIP Lender for all actual and reasonable out-of-pocket expenses, including, without limitation, the DIP Lender's account confirmation fees and attorneys' fees and expenses relating to the DIP Loan or under the DIP Loan Documents and which are contained in the Debtor's Cash Collateral Budget; provided, however, if the Debtor fails or refuses to properly account for any such fees and expenses in the Cash Collateral Budget, this Order is without prejudice to the DIP Lender's right to request approval and direction for payment from the Court.

29. In addition to the provisions of the DIP Loan Documents, the occurrence of any of the following shall constitute an "Event of Default" for the purpose of this Order; provided, however, the Cure Provisions in the Promissory Note in the DIP Loan Documents shall be applicable to the following:

(a) The Debtor's Chapter 11 case shall be dismissed or converted to a Chapter 7 case;

(b) Any Chapter 11 plan is confirmed without the DIP Lender's consent;

(c) Any other superpriority administrative claim or post-petition lien equal or superior in priority to the Post-Petition Advance Superpriority Administrative Claim or the Senior DIP Lien granted to the DIP Lender pursuant to the Interim Order or this Order is entered or granted;

(d) This Order shall be amended, reversed, stayed, vacated or otherwise modified in a way which in the reasonable opinion of the DIP Lender

        materially and adversely affects the rights of the DIP Lender and which is not acceptable to the DIP Lender;

    (e)    Any breach by the Debtor of the Interim Order, this Order, the DIP Loan Documents, the Cash Collateral Order, or any future order regarding the use of cash collateral;

    (f)    The occurrence of an Event of Default under the DIP Loan Documents after the date this Order is entered;

    (g)    Any representation or warranty made or deemed made by the Debtor in the Interim Order, this Order or the DIP Loan Documents is incorrect in any material respect on the date as of which such representation or warranty was made or deemed made;

    (h)    The Debtor fails to observe or perform any covenant, condition or agreement contained in the Interim Order, this Order or the DIP Loan Documents; or

    (i)    Any party in interest files an objection to any release or waiver contained or incorporated into this Order, including but not limited to, Paragraphs 12 and 13 of this Order, within the time frame set forth in Paragraph 37 of this Order and said objection is granted by the Court.

A copy of any notice provided by the DIP Lender to the Debtor under the Cure Provisions in the Promissory Note shall be contemporaneously provided to counsel for White Oak, i.e., Attorneys Rosenthal and Snyder, via email or other expeditious delivery.

In addition to the DIP Lender's other rights and remedies upon the occurrence of an Event of Default, whether arising under the Interim Order, this Order, the DIP Loan Documents, or otherwise, the DIP Lender shall have no obligation to make any Advance or other DIP Loan from and after an Event of Default.

All provisions in the DIP Loan Documents which relate to the Debtor's insolvency or bankruptcy as an event of default are hereby stricken. Notwithstanding anything to the contrary

in the DIP Loan Documents, the DIP Lender may not confess judgment against the Debtor upon the occurrence of an Event of Default without first seeking authority from the Court; provided, however, there is nothing in this Order or elsewhere that restricts or limits the DIP Lender's rights or remedies against the Guarantors upon the occurrence of an Event of Default, including, without limitation, the DIP Lender's right to confess judgment jointly and severally against the Guarantors.

30. The DIP Liens, and all the rights and remedies of the DIP Lender granted by the Interim Order, this Order and the DIP Loan Documents shall survive, and shall not be modified, impaired, or discharged by (a) the entry of an order converting the Chapter 11 case of the Debtor to Chapter 7, dismissing this Chapter 11 case or by any other act or omission, or (b) the entry of an order confirming a plan of reorganization or liquidation in the Debtor's Chapter 11 case. The Post-Petition Advance Superpriority Administrative Claims and all the rights and remedies of the DIP Lender granted by the Interim Order, this Order and the DIP Loan Documents shall continue in full force and effect until the obligations owed on the Advances and under the DIP Loan Documents are indefeasibly paid in full.

31. In addition to the Debtor complying with the insurance requirements set forth in the DIP Loan Documents, pursuant to the Interim Order, this Order, the DIP Lender shall be, and shall be deemed to be without any further action or notice, named as an additional insured on each insurance policy maintained by the Debtor which in any way relates to the property subject to the DIP Liens.

32. In the event of any inconsistency between the provisions of this Order and the DIP Loan Documents, the provisions of this Order shall govern.

33. The provisions of the DIP Loan Documents and this Order, including all findings herein, shall be binding upon all parties in interest in this case, including the Debtor and its successors and assigns, including any subsequently appointed or elected trustee, examiner or other fiduciary appointed for the Debtor or the estate of the Debtor, and shall inure to the benefit of the DIP Lender and the Debtor and each of their respective successors and assigns; provided however, that the DIP Lender shall have no obligation to extend any financing or credit to any trustee or similar responsible person appointed or elected in the Debtor's Chapter 11 case or any subsequently converted case.

34. The Court confirms its prior finding and conclusion that it was necessary to avoid immediate and irreparable harm for the Debtor to obtain and request Advances up to the Interim Cap (as defined in the Interim Order) pending a final hearing on the Motion, and all Advances made by the DIP Lender prior to the date of this Order are approved, ratified and confirmed.

35. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

36. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

37. Notwithstanding any provision in this Order to the contrary, and in accordance with W.PA.LBR.4001-2(b)(1)(B), any releases or waivers contained within this Order, including but not limited to, Paragraphs 12 and 13 of this Order, shall become binding against the estate after July 10, 2020, excluding only those parties who timely file an appropriate challenge or objection on or before that date (and subject to the final disposition of such challenge or objection).

38. The Debtor shall serve on all parties in interest a copy of this Order, and file proof of service.

39. The hearing scheduled for March 19, 2020 is CANCELLED due to the submission of this Consent Order by the relevant parties.

Dated: 3/19/20

cm: Robert Lampl, Esq.

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT

- 13 -