FILED
8/27/20 1:39 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                   Bankruptcy No. 20-20425-GLT

VIDEOMINING CORPORATION,                 Chapter 11

Debtor.                                  Document No. _____

                                         Related to Doc. Nos.  179

### STIPULATION AND CONSENT ORDER (1) MODIFYING AND EXTENDING ORDERS AUTHORIZING DIP FINANCING AND USE OF CASH COLLATERAL AND (2) AUTHORIZING AMENDMENT OF DIP LOAN DOCUMENTS

Upon the agreement and stipulation of Enterprise Bank ("Enterprise"), White Oak Business Capital, Inc. ("White Oak"), the Internal Revenue Service of the United States ("IRS"), and the above-captioned Debtor (collectively, the "Parties"), by and through their undersigned counsel, to the terms and conditions set forth in this Stipulation and Consent Order (this "Consent Order"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the Court finding that due notice and such opportunity for a hearing as is appropriate under the circumstances has occurred and that no further notice to any party in interest is required; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and after due deliberation and good and sufficient cause appearing therefor;

IT IS hereby STIPULATED, AGREED, and ORDERED as follows:

1.      Pursuant to the terms of the Final Order Authorizing Use of Cash Collateral Through May 8, 2020 entered by the Court on March 12, 2020 (ECF No. 102) (the "Final Cash Collateral Order") and the Modified Final Order Authorizing Debtor to Obtain Post-Petition Financing entered by the Court on March 19, 2020 (ECF No. 113) (the "Final DIP Order" and together with the Final Cash Collateral Order, the "Orders"), if the Debtor failed to enter into a

bona fide sales agreement for substantially all of its assets on or before August 21, 2020, the

Maturity Date would trigger under the Final DIP Order, which, among other consequences, would

require the Debtor to conduct an auction of its patent assets by September 30, 2020.  See Final DIP

Order at ¶ 10(g); Final Cash Collateral Order at ¶ 10.

2.      The Broker (as defined in the Final Cash Collateral Order) has represented to the

Parties that it has identified several potential purchasers for the Debtor's assets, but that entering

into a bona fide sales agreement by the August 21, 2020 deadline is not reasonably practicable

under the circumstances.

3.      The Parties have agreed to modify and extend the Orders under the terms and

conditions set forth in this Consent Order.

4.      Additionally, the Parties have agreed that the maximum financing available to the

Debtor under the DIP Loan (as defined in the Final DIP Order) should be increased from

$175,000.00 to $210,000.00.

5.      Paragraph 10 of the Final Cash Collateral Order shall be deleted and amended and

restated to read in its entirety as follows:

"Pursuant to a further Order of the Court, the Debtor shall:

(a)     have received at least one (1) initial bid (in whatever and the same

form received, e.g., letter of intent or expression of interest,

proposed purchase agreement, term sheet, etc.) containing the

Acceptable Sale Conditions on or before September 15, 2020;

(b)     have entered into a binding asset purchase agreement providing for

the Acceptable Sale Conditions on or before October 1, 2020; and

(c)     have consummated a sale meeting the Acceptable Sale Conditions

on or before November 1, 2020.

(d)     In the event the Debtor fails to comply with any of the requirements set forth in subsections (a), (b) or (c) hereinabove, the Debtor will immediately commence and conduct an auction process for its patent assets which auction shall occur on or before November 30, 2020, with a reputable broker who regularly conducts auctions of assets similar to the Debtor's patents and is acceptable to White Oak and Enterprise.

(e)     No later than August 1, 2020, the Debtor shall present to White Oak and Enterprise a description of the auction process for their review and consideration.

(f)     White Oak and Enterprise reserve their right to object to any such sale. The rights, defenses and objections of all parties are specifically preserved in full with respect to the final DIP order, the value of the Debtor's assets, the approval of a sale process and auction process, and all terms and conditions of the same including whether to provide DIP financing or agree to the relief requested in such motions, or not.

For purposes of this paragraph 10, "Acceptable Sale Conditions" is defined to mean a bona fide document from a third-party providing for the purchase of some or all of Debtor's assets, the consideration of which shall be sufficient to pay in full the claims of White Oak and Enterprise, including the claims of Enterprise in its capacity as the post-petition lender pursuant to the DIP

Orders, and any other lienholder having a lien superior to White Oak and Enterprise on the assets being sold."

6.      A new Paragraph 11 shall be added to the Final Cash Collateral Order as follows: "(11) The Debtor will provide the Parties with all initial bid documents (in whatever and the same form received, e.g., letter of intent or expression of interest, proposed purchase agreement, term sheet, etc.) within two (2) Business Days of receipt.  Once a bid is selected and the Debtor and the proposed purchaser(s) are engaged in negotiations toward a final asset purchase agreement, the Debtor will provide the Parties with the original draft of such agreement and the Debtor's first mark up and response to it. After receipt of the first mark up and response to the purchase agreement, the Debtor will provide the Parties with electronic mail status reports on the negotiations on Tuesday and Friday of each week.  The Debtor will supply the Parties with the final version of the APA at least two (2) Business Days prior to filing it with the Court."

7.      The sixth sentence of paragraph 1 of the Final Cash Collateral Order (which currently reads: "Said authorization shall be valid through and including May 8, 2020.") is amended and restated in its entirety as follows:

> "The authorization of such variance will be valid through and including the end date of any then current Budget authorized by the Court or agreed to under the terms of this paragraph."

8.      Paragraph 10(g) of the Final DIP Order is hereby modified so that the reference to "August 21, 2020" is deleted and replaced with "October 1, 2020".

9.      The Final DIP Order is hereby modified so that all references to "$175,000" are deleted and replaced with "$210,000."

10.     The Debtor and Enterprise are hereby authorized to take such actions that are reasonably necessary to effectuate the increase in the maximum amount of the DIP Loans from

$175,000 to $210,000, including, without limitation, amending, restating, supplementing, or otherwise modifying the existing DIP Loan Documents and executing new loan documents, in substantially the form attached to this Order as Exhibit A.

11.    All references to the "DIP Loan Documents" in the Final DIP Order will be deemed to include all new loan documents executed, and all documents amended, restated, supplemented, or otherwise modified, pursuant to paragraph 10 of this Stipulation and Consent Order.  Any provision in the new or amended DIP Loan Documents which relates to the Debtor's insolvency or bankruptcy as an event of default is hereby stricken. Notwithstanding anything to the contrary in the new or amended DIP Loan Documents, the DIP Lender may not confess judgment against the Debtor upon the occurrence of an Event of Default without first seeking authority from the Court; provided, however, there is nothing in this Stipulation and Consent Order or elsewhere that restricts or limits the DIP Lender's rights or remedies against the Guarantors upon the occurrence of an Event of Default, including, without limitation, the DIP Lender's right to confess judgment jointly and severally against the Guarantors.

12.    The Parties acknowledge and agree that, in accordance with the terms of paragraphs 1 and 17 of the Final Cash Collateral Order, the Debtor has timely provided all rolling 13-week cash flow budgets for the period ending on September 21, 2020, and that the form and substance of each such budget has been agreed to by Enterprise, White Oak, and IRS.

13.    A copy of the current cash flow budget through September 21, 2020, which has been agreed to by Enterprise, White Oak, and IRS, is attached to this Order as Exhibit B.

14.    As of the entry of this Consent Order, White Oak has twice notified the Debtor and all parties-in-interest of the occurrence of alleged Events of Default under the Final Cash Collateral Order, although White Oak did not seek to exercise any of its rights or remedies under the Cash Collateral Orders (the "Default Notices").  White Oak also provided four notices to Enterprise and

all parties in interest that the Debtor has failed to comply with the terms of the Final Cash Collateral Order, but in those notices White Oak has not notified Enterprise of an Event of Default (the "Failure Notices"). White Oak filed one of the Default Notices with the Court, but it elected not to file the other Default Notice or any of the Failure Notices with the Court. In all of its notices White Oak has reserved its rights and remedies. By entering into this Consent Order White Oak is not waiving any alleged Events of Default or breaches of the terms of the Final Cash Collateral Order and continues to reserve all of its rights and remedies (as provided in paragraph 17 below).

15.     As of the entry of this Consent Order, neither White Oak nor Enterprise have terminated the Debtor's authority to use Cash Collateral under the Final Cash Collateral Order, Final DIP Order, or the DIP Loan Documents.

16.     Except as expressly modified hereby, all terms and conditions of the Orders remain in full force and effect. Capitalized terms not otherwise defined in this Stipulation and Consent order shall have the meanings ascribed to such terms in the Orders.

17.     Except as expressly provided in this Consent Order, nothing herein waives, prejudices, or otherwise affects the rights and remedies of the Parties, whether under the Bankruptcy Code, applicable non-bankruptcy law, the Orders, the DIP Loan Documents, at law or in equity, or otherwise, and all such rights and remedies are hereby reserved.

CONSENTED AND AGREED TO:                    CONSENTED AND AGREED TO:


*/s/ Ryan Cooney*                                         */s/ William E. Kelleher, Jr.*
Ryan J. Cooney                                             William E. Kelleher, Jr.
(PA ID No. 319213)                                       (PA ID No. 30747)
223 Fourth Avenue, 4th Fl.                            Thomas D. Maxson
Pittsburgh, PA 15222                                    (PA ID No. 63207)
Phone: (412) 392-0330                                 Daniel P. Branagan
Fax: (412) 392-0335                                     (PA ID No. 324607)
rcooney@lampllaw.com
                                                                   DENTONS COHEN & GRIGSBY P.C.
Dated: August 25, 2020                              625 Liberty Avenue
                                                                   Pittsburgh, PA 15222-3152

*Counsel for Debtor,*
*VIDEOMINING CORPORATION*

Phone: (412) 297-4900
Fax: (412) 209-0672
bill.kelleher@dentons.com
thomas.maxson@dentons.com
daniel.branagan@dentons.com

Dated: August 25, 2020

*Counsel for ENTERPRISE BANK*

[Signatures continue on following page]

CONSENTED AND AGREED TO:

/s/ Jill L. Locnikar_____
Jill L. Locnikar
Assistant U.S. Attorney
Civil Division
Joseph F. Weis, Jr. United States Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7429 (phone)
(412) 644-6995 (fax)
jill.locnikar@usdoj.gov

Dated: August 25, 2020

*Counsel for INTERNAL REVENUE SERVICE
OF THE UNITED STATES*

CONSENTED AND AGREED TO:

/s/ Jeffrey M. Rosenthal_____
Jeffrey M. Rosenthal
MANDELBAUM SALSBURG P.C.
3 Becker Farm Road
Roseland, NJ 07068

George T. Snyder
PA ID No. 53525
Stonecipher Law Firm
125 1st Avenue
Pittsburgh, PA 15222
(412) 391-8510 (phone)
(412) 391-8522 (fax)
gsnyder@stonecipherlaw.com

Dated: August 25, 2020

*Counsel for WHITE OAK BUSINESS
CAPITAL, INC.*

SO ORDERED:

Dated: ___August 27_____ ___, 2020

_____
Gregory L. Taddonio
United States Bankruptcy Judge

# EXHIBIT A

## ADDITIONAL DIP LOAN DOCUMENTS

*0960%06007026%251853162%08242020*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $210,000.00 | 08-24-2020 | | 6007026 | RCC4 | 251853162 | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
EVAN HAYWARD
4091 Mount Royal Boulevard
Allison Park, PA 15101

**Principal Amount: $210,000.00** **Date of Agreement: August 24, 2020**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Existing Indebtedness is represented by the following: the Promissory Note between VideoMining Corporation and Enterprise Bank in the original amount of $175,000.00 dated March 4, 2020.

**DESCRIPTION OF COLLATERAL.** The Collateral is as follows: All collatera, including the mortgages granted by the Guarantors and the DIP Liens as defined in and granted pursuant to and in accordance with paragraph 9 of the Modified Final Order Authorizing Debtor to Obtain Post-Petition Financing entered by the Bankruptcy Court on March 19, 2020 (the "Final DIP Order"), shall remain in full force and effect with the same priority, perfection and protections provided in the Final DIP Order, and shall continue to secure the obligations under the DIP Loan Documents as amended by this Change in Terms Agreement and the Related Documents, and shal be ratified and confirmed by Borrower executing this Agreement.

.

**DESCRIPTION OF CHANGE IN TERMS.** The Borrower and Lender have agreed that they will increase the line of credit amount from $175,000.00 to $210,000.00. Borrower may redraw on the DIP Line of Credit up to 50% of eligible A/R upon Enterprise Bank's positive confirmation of the A/R from VideoMining's customer(s).

**PROMISE TO PAY.** VideoMining Corporation ("Borrower") promises to pay to ENTERPRISE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ten Thousand & 00/100 Dollars ($210,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.000% per annum based on a year of 360 days. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in accordance with the following payment schedule:

> The DIP Line of Credit will be paid in monthly installments of interest with principal reduction payments in the amount of 50% paid upon collection of the eligible A/R upon which the advance(s) was made. The DIP Line of Credit shall mature upon the earlier of (i) March 4, 2021 (ii) the sale of all or a substantial part of the Borrower's patent portfolio or any other sale of the Borrower's assets under section 363 of the Bankruptcy Code (11 U.S.C. §363); or (iii) the confirmation of a Chapter 11 plan of reorganization or liquidation in the Bankruptcy Case.

Unless otherwise agreed or required by applicable law, payments will be applied to the Lender's discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ENTERPRISE BANK, EVAN HAYWARD, 4091 Mount Royal Boulevard, Allison Park, PA 15101.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased by 4.000 percentage points. If judgment is entered in connection with this Agreement, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

> **Payment Default.** Borrower fails to make any payment when due under the Indebtedness.
>
> **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.
>
> **Default in Favor of Third Parties.** Any guarantor or Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Borrower's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.
>
> **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes

## CHANGE IN TERMS AGREEMENT
### (Continued)

false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else, including internal legal counsel, to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. All such attorneys' fees and expenses will become part of the amounts due and owing under this Note and, at Lender's option will (A) become payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the remaining term of the Note or (2) be treated as a balloon payment which will be due and payable at the Note's maturity. The attorneys' fees and expenses shall bear interest at the Note rate from the date of expenditure until paid.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. (Initial Here _____ )

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Commonwealth of Pennsylvania.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $10.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Rajeev Sharma, President of VideoMining Corporation; Christopher Bossi, CFO of VideoMining Corporation. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**COMPENSATING BALANCES.** Borrower shall maintain at Enterprise Bank Borrower's Debtor in Possession Account authorized by that certain Order Authorizing Debtor to Use Existing Bank Accounts dated February 10, 2020 entered in the Bankruptcy Case through March 12, 2020 or any other order of the court ("Cash Collateral Order") entered in the Bankruptcy Case. If Borrower fails to timely make any interest or principal payment due, Bank may recoup the payment by debiting the deposit account.

**ADMIN EXPENSE CLAIM.** All amounts advanced pursuant to this Note shall be entitled to an administrative expense claim with priority over any and all administrative expenses of any kind specified in 503(b) or 507(b) of the Bankruptcy code.

## CHANGE IN TERMS AGREEMENT
### (Continued)

**Loan No: 6007026**

**A/R CONFIRMATION.** Borrower shall provide a copy of each invoice requested to be advanced upon, along with a copy of corresponding purchase order/contract and customer contact information for confirmation of the subject account(s) receivable by VideoMining's customer; Borrower also shall pay the Bank a $100 accounts receivable confirmation fee per invoice advanced upon.

**EMPLOYEE RETENTION.** Bank's obligation to make any advance under the DIP Line of Credit is contingent upon Borrower continuing to retain Christopher Bossi for financial management of Borrower.

**LINE OF CREDIT ADVANCE FORMULA.** Borrower shall be permitted to draw on the DIP Line of Credit up to 50% of eligible accounts receivable arising after the entry on March 4, 2020 of the Interim Order Authorizing Debtor To Obtain Post-Petition Financing in the Borrower's Chapter 11 bankruptcy case filed in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") at Case Number: 20-20425 (hereinafter the "Bankruptcy Case") not to exceed an outstanding balance at any time of $210,000. Borrower may redraw on the DIP Line of Credit up to 50% of eligible A/R upon Enterprise Bank's positive confirmation of the A/R from VideoMining's customer(s).

**DEFINED TERMS.** Capitalize terms used in this agreement but not otherwise defined in this agreement shall have the meaning ascribed to them in the Related Documents.

**SUCCESSOR INTERESTS.** The terms of this Agreement shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: ENTERPRISE BANK 4091 MT. ROYAL BOULEVARD ALLISON PARK, PA 15101.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. If any portion of this Agreement is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Agreement.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS AGREEMENT AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS AGREEMENT AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THE INDEBTEDNESS, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS AGREEMENT OR A COPY OF THIS AGREEMENT VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS AGREEMENT TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS AGREEMENT. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**VIDEOMINING CORPORATION**

By: _____ (Seal)
    Rajeev   Sharma,   President   of   VideoMining
    Corporation

**ATTEST:**

_____
Secretary or Assistant Secretary

**( Corporate Seal )**

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 6007026                                                                        Page 4

LENDER:

ENTERPRISE BANK

X_____
   Authorized Signer

LaserPro, Ver. 18.4.20.068  Copr. Finastra USA Corporation 1997, 2020  All Rights Reserved.  - PA  C:\CFI\LPL\D20C.FC  TR-3981  PR-COMMLOCV

## DISCLOSURE FOR CONFESSION OF JUDGEMENT

| Principal $210,000.00 | Loan Date 8-14-2020 | Maturity | Loan # 6007026 | Call RCC4 | Collateral | Account 251853162 | Officer EH | Initials |
|---|---|---|---|---|---|---|---|---|

References in the shaded area are for the Lender's use only and do not

Borrower:  VideoMining Corporation
403 South Allen St., Suite 101
State College, PA 16801

Lender:  ENTERPRISE BANK
4091 MOUNT ROYAL BOULEVARD
ALLISON PARK, PA 15101

## DISCLOSURE FOR CONFESSION OF JUDGMENT TO CHANGE IN TERMS AGREEMENT

THE UNDERSIGNED IS EXECUTING ON BEHALF OF DECLARANT, THIS_____DAY OF_____, 2020, A CHANGE IN TERMS AGREEMENT FOR $210,000.00 OBLIGATING DECLARANT TO REPAY THAT AMOUNT.

A. THE UNDERSIGNED UNDERSTANDS THAT THE ORIGINAL NOTE AND THE CHANGE IN TERMS AGREEMENT CONTAIN A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST DECLARANT IN COURT, AFTER A DEFAULT ON THE ORIGINAL NOTE OR CHANGE IN TERMS AGREEMENT WITHOUT ADVANCE NOTICE TO DECLARANT AND WITHOUT OFFERING DECLARANT AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE ORIGINAL NOTE AND CHANGE IN TERMS AGREEMENT, BEING FULLY AWARE OF DECLARANT'S RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST DECLARANT UNDER THE NOTE OR CHANGE IN TERMS AGREEMENT, THE UNDERSIGNED, ON BEHALF OF THE DECLARANT, IS KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND THE UNDERSIGNED EXPRESSLY AGREES AND CONSENTS TO LENDER'S ENTERING JUDGMENT AGAINST DECLARANT BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.

B. THE UNDERSIGNED FURTHER UNDERSTANDS THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST DECLARANT WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE AND CHANGE IN TERMS AGREEMENT ALSO CONTAIN LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING DECLARANT'S PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE NOTE AND CHANGE IN TERMS AGREEMENT, BEING FULLY AWARE OF DECLARANT'S RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, THE UNDERSIGNED, ON BEHALF OF THE DECLARANT, IS KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND THE UNDERSIGNED EXPRESSLY AGREES AND CONSENTS TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING DECLARANT ANY ADVANCE NOTICE.

C. AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, THE UNDERSIGNED REPRESENTS THAT:

INITIALS

_____  1. DECLARANT WAS REPRESENTED BY DECLARANT'S OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE CHANGE IN TERMS AGREEMENT.

_____  2. A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE CHANGE IN TERMS AGREEMENT TO DECLARANT'S ATTENTION.

D. I/WE FURTHER CERTIFY THAT EACH OF OUR ANNUAL INCOMES EXCEED $10,000.00, THAT THE INDEBTEDNESS WHICH IS THE SUBJECT OF THIS AGREEMENT IS AND WAS FOR A BUSINESS PURPOSE AND THAT WE RECEIVED A COPY OF THE CHANGE IN TERMS AGREEMENT, WHICH WAS FULLY COMPLETED, INCLUDING THESE DISCLOSURES, ACKNOWLEDGMENTS AND WAIVERS, AT THE TIME OF ITS EXECUTION.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

VIDEOMINING CORPORATION

By:_____(Seal)
    Rajeev Sharma, President of VideoMining Corporation

Signed, acknowledged and delivered in the presence of:

X_____
    Witness

X_____
    Witness

## Addendum to Change in Terms Agreement and Related Documents

This Change in Terms Agreement and all other Related Documents are subject to and further governed by the Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing and the Stipulation and Consent Order and the Stipulation and Consent Order (1) Modifying and Extending Orders Authorizing DIP Financing and Use of Cash Collateral and (2) Authorizing Amendment of DIP Loan Documents (collectively, the "Financing Orders") entered or to be entered by the United States Bankruptcy Court for the Western District of Pennsylvania in Borrower's chapter 11 case pending at Case No. 20-20425-GLT, and upon entry on the docket of the Court such Financing Orders shall become "Related Documents" as such term is defined and used in this Agreement, the Business Loan Agreement, the Commercial Security Agreement, the Open-End Mortgage and Security Agreements, the Modifications of Mortgage, the Assignments of Rent, the Commercial Guarantys and all other DIP Loan Documents (as defined in the Financing Orders). In the event of any inconsistency between the provisions of the Financing Orders and any of the DIP Loan Documents, the provisions of the Financing Orders shall govern.

ACKNOWLEDGED AND AGREED, this _____ day of August, 2020.

ATTEST:

BORROWER:

VIDEOMINING CORPORATION

_____
Secretary or Assistant Secretary

By:_____
    Rajeev Sharma, President

LENDER:

ENTERPRISE BANK

By:_____(Seal)
    Authorized Signer

CONSENTED TO:
GUARANTORS:

_____
Rajeev Sharma

_____
Vishnu Priya Sharma

*0220%06007026%251853162%08142020*

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | VideoMining Corporation<br>403 South Allen Street Ste 101<br>State College, PA  16801 | **Lender:** | ENTERPRISE BANK<br>EVAN HAYWARD<br>4091 Mount Royal Boulevard<br>Allison Park, PA  15101 |
| **Guarantor:** | Rajeev Sharma<br>Vishnu Priya Sharma<br>2391 Shagbark Court<br>State College, PA  16803 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.  Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred (by Lender's internal counsel or Lender's external counsel) in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.**  THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.  ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing.  Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing.  Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation.  For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due.  For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness.  This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death.  Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect.  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.  It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty.  This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:  (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower;  (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the

## COMMERCIAL GUARANTY

### (Continued)

Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

## COMMERCIAL GUARANTY
### (Continued)

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred (by Lender's internal counsel or Lender's external counsel) in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided by applicable law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** The terms of this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. (Initial Here _____ )

**Additional Waivers.** In addition to the waivers set forth in the paragraph entitled "Guarantor's Waivers", Guarantor hereby waives any and all rights or defenses based upon or arising out of any material modification to the Note or Indebtedness or security for such Note or Indebtedness as well as any rights or defenses based upon or arising out of any fact that materially increases the risk to the Guarantor.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means VideoMining Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Rajeev Sharma and Vishnu Priya Sharma, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means ENTERPRISE BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 6007026                                                                                    Page 4

agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**CONFESSION OF JUDGMENT.** GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR GUARANTOR AFTER THE AMOUNTS HEREUNDER BECOME DUE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR THE ENTIRE PRINCIPAL BALANCE OF THIS GUARANTY AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THE INDEBTEDNESS, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS GUARANTY OR A COPY OF THIS GUARANTY VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS GUARANTY TO CONFESS JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS GUARANTY. GUARANTOR HEREBY WAIVES ANY RIGHT GUARANTOR MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO GUARANTOR'S ATTENTION OR GUARANTOR HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED AUGUST 14, 2020.

WE ARE SIGNING THIS GUARANTY AS HUSBAND AND WIFE, AND WE AGREE THAT THIS JOINT ACTION WAIVES OUR RIGHTS AS TENANTS BY THE ENTIRETIES.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:


X_____(Seal)     X_____(Seal)
  Rajeev Sharma                                         Vishnu Priya Sharma

Signed, acknowledged and delivered in the presence of:

X_____
  Witness

X_____
  Witness

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____     )
                                              ) SS
COUNTY OF _____     )


This record was acknowledged before me on _____, 20_____ by Rajeev Sharma and Vishnu Priya Sharma.


_____
Signature of Notarial Officer

Notary Public in and for the State of _____

My commission expires _____

# DISCLOSURE FOR CONFESSION OF JUDGMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $210,000.00 | 08-14-2020 | | 6007026 | RCC4 | 251853162 | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
EVAN HAYWARD
4091 Mount Royal Boulevard
Allison Park, PA 15101

**Declarant:** Rajeev Sharma
2391 Shagbark Court
State College, PA 16803

## DISCLOSURE FOR CONFESSION OF JUDGMENT

I AM EXECUTING, THIS ________ DAY OF ________________________, 20____, A GUARANTY FOR AN UNLIMITED AMOUNT.

A. I UNDERSTAND THAT THE GUARANTY CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST ME IN COURT, AFTER A DEFAULT ON THE GUARANTY, WITHOUT ADVANCE NOTICE TO ME AND WITHOUT OFFERING ME AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE GUARANTY, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST ME UNDER THE GUARANTY, I AM KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S ENTERING JUDGMENT AGAINST ME BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.
INITIALS: ____________

B. I FURTHER UNDERSTAND THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST ME WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE GUARANTY ALSO CONTAINS LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING MY PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE GUARANTY, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, I AM KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING ME ANY ADVANCE NOTICE.
INITIALS: ____________

C. AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, I REPRESENT THAT:

INITIALS

_______ 1. I WAS REPRESENTED BY MY OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE GUARANTY.

_______ 2. A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE GUARANTY TO MY ATTENTION.

E. I CERTIFY THAT MY ANNUAL INCOME EXCEEDS $10,000; THAT THE BLANKS IN THIS DISCLOSURE WERE FILLED IN WHEN I INITIALED AND SIGNED IT; AND THAT I RECEIVED A COPY AT THE TIME OF SIGNING.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

X______________________________________________(Seal)
Rajeev Sharma

Signed, acknowledged and delivered in the presence of:

X______________________________________________
Witness

X______________________________________________
Witness

# DISCLOSURE FOR CONFESSION OF JUDGMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $210,000.00 | 08-14-2020 | | 6007026 | RCC4 | 251853162 | EH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** VideoMining Corporation
403 South Allen Street Ste 101
State College, PA 16801

**Lender:** ENTERPRISE BANK
EVAN HAYWARD
4091 Mount Royal Boulevard
Allison Park, PA 15101

**Declarant:** Vishnu Priya Sharma
2391 Shagbark Court
State College, PA 16803

## DISCLOSURE FOR CONFESSION OF JUDGMENT

I AM EXECUTING, THIS ________ DAY OF ________________________, 20____, A GUARANTY FOR AN UNLIMITED AMOUNT.

A. I UNDERSTAND THAT THE GUARANTY CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST ME IN COURT, AFTER A DEFAULT ON THE GUARANTY, WITHOUT ADVANCE NOTICE TO ME AND WITHOUT OFFERING ME AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE GUARANTY, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST ME UNDER THE GUARANTY, I AM KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S ENTERING JUDGMENT AGAINST ME BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.
INITIALS: ____________

B. I FURTHER UNDERSTAND THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST ME WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE GUARANTY ALSO CONTAINS LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING MY PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE GUARANTY, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, I AM KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING ME ANY ADVANCE NOTICE.
INITIALS: ____________

C. AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, I REPRESENT THAT:

INITIALS

_______ 1. I WAS REPRESENTED BY MY OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE GUARANTY.

_______ 2. A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE GUARANTY TO MY ATTENTION.

E. I CERTIFY THAT MY ANNUAL INCOME EXCEEDS $10,000; THAT THE BLANKS IN THIS DISCLOSURE WERE FILLED IN WHEN I INITIALED AND SIGNED IT; AND THAT I RECEIVED A COPY AT THE TIME OF SIGNING.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

X________________________________________(Seal)
Vishnu Priya Sharma

Signed, acknowledged and delivered in the presence of:

X________________________________________
Witness

X________________________________________
Witness

Parcel Identification Number:
36-013-315-C101

RECORDATION REQUESTED BY:
ENTERPRISE BANK, EVAN HAYWARD,
4091 Mount Royal Boulevard, Allison Park,
PA  15101

WHEN RECORDED MAIL TO:
ENTERPRISE BANK, EVAN HAYWARD,
4091 Mount Royal Boulevard, Allison Park,
PA  15101

SEND TAX NOTICES TO:
VideoMining Corporation, 403 South Allen
Street Ste 101, State College, PA  16801

FOR RECORDER'S USE ONLY

## MODIFICATION OF MORTGAGE



*0740%06007026%#########%08142020*

THIS MODIFICATION OF MORTGAGE dated August 14, 2020, is made and executed between VideoMining Corporation, whose address is 403 South Allen Street Ste 101, State College, PA 16801 (referred to below as "Grantor") and ENTERPRISE BANK, whose address is 4091 Mount Royal Boulevard, Allison Park, PA  15101 (referred to below as "Lender").

MORTGAGE. Lender and Grantor have entered into a Mortgage dated March 4, 2020 (the "Mortgage") which has been recorded in Centre County, Commonwealth of Pennsylvania, as follows:

Recorded on March 26, 2020 in Centre County Recorder of Deeds office, Instrument number R 02248-0070.

REAL PROPERTY DESCRIPTION. The Mortgage covers the following described real property located in Centre County, Commonwealth of Pennsylvania:

See Ex A, which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as  403 South Allen Street Ste 101, State College, PA  16801. The Real Property parcel identification number is 36-013-315-C101.

MODIFICATION. Lender and Grantor hereby modify the Mortgage as follows:

Secured amount increased from $175,000 to $210,000.

CONTINUING VALIDITY.  Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms.  Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications.  Nothing in this Modification shall constitute a satisfaction or novation of the promissory note or other credit agreement secured by the Mortgage (the "Note").  It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification.  If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

## MODIFICATION OF MORTGAGE
### (Continued)

Loan No: 6007026                                                                    Page 2

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS.  THIS MODIFICATION OF MORTGAGE IS DATED AUGUST 14, 2020.

THIS MODIFICATION IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MODIFICATION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:


VIDEOMINING CORPORATION


By:_____(Seal)
    Rajeev Sharma, President of VideoMining Corporation

LENDER:


ENTERPRISE BANK


X_____(Seal)
    Authorized Signer

---

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, ENTERPRISE BANK, herein is as follows:

EVAN HAYWARD, 4091 Mount Royal Boulevard, Allison Park, PA  15101


_____
Attorney  or Agent  for Mortgagee

## MODIFICATION OF MORTGAGE
## (Continued)

Loan No: 6007026

Page 3

## CORPORATE ACKNOWLEDGMENT

STATE OF _____    )
                                            ) SS
COUNTY OF _____      )

This record was acknowledged before me on _____, 20_____ by Rajeev Sharma,
President of VideoMining Corporation who represent that (he, she or they) are authorized to act on behalf of
VideoMining Corporation.

_____
Signature of Notarial Officer

Notary Public in and for the State of _____

My commission expires _____

## LENDER ACKNOWLEDGMENT

STATE OF _____    )
                                            ) SS
COUNTY OF _____      )

This record was acknowledged before me on _____, 20_____ by _____
_____, _____ of ENTERPRISE BANK who represent that (he, she or
they) are authorized to act on behalf of ENTERPRISE BANK.

_____
Signature of Notarial Officer

Notary Public in and for the State of _____

My commission expires _____

Parcel Identification Number:
24-422-045

RECORDATION REQUESTED BY:
ENTERPRISE BANK, EVAN HAYWARD,
4091 Mount Royal Boulevard, Allison Park,
PA 15101

WHEN RECORDED MAIL TO:
ENTERPRISE BANK, EVAN HAYWARD,
4091 Mount Royal Boulevard, Allison Park,
PA 15101

SEND TAX NOTICES TO:
Rajeev Sharma and Vishnu Priya Sharma,
2391 Shagbark Court, State College, PA
16803

FOR RECORDER'S USE ONLY

# MODIFICATION OF MORTGAGE



*0740%06007026%#########%08142020*

THIS MODIFICATION OF MORTGAGE dated August 14, 2020, is made and executed between Rajeev Sharma and Vishnu Priya Sharma, whose address is 2391 Shagbark Court, State College, PA 16803 (referred to below as "Grantor") and ENTERPRISE BANK, whose address is 4091 Mount Royal Boulevard, Allison Park, PA 15101 (referred to below as "Lender").

MORTGAGE. Lender and Grantor have entered into a Mortgage dated March 4, 2020 (the "Mortgage") which has been recorded in Centre County, Commonwealth of Pennsylvania, as follows:

Recorded on March 26, 2020 in Centre County Recorder of Deeds office, Instrument number R 02248-0068.

REAL PROPERTY DESCRIPTION. The Mortgage covers the following described real property located in Centre County, Commonwealth of Pennsylvania:

See Ex A, which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as 2391 Shagbark Court, State College, PA 16802. The Real Property parcel identification number is 24-422-045.

MODIFICATION. Lender and Grantor hereby modify the Mortgage as follows:

Secured amount increased from $175,000 to $210,000.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction or novation of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

## MODIFICATION OF MORTGAGE

Loan No: 6007026                    (Continued)                    Page 2

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND
GRANTOR AGREES TO ITS TERMS.  THIS MODIFICATION OF MORTGAGE IS DATED AUGUST 14, 2020.

THIS MODIFICATION IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MODIFICATION IS AND SHALL
CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X_____(Seal)
  Rajeev Sharma

X_____(Seal)
  Vishnu Priya Sharma

LENDER:

ENTERPRISE BANK

X_____(Seal)
  Authorized Signer

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, ENTERPRISE BANK, herein is as follows:

EVAN HAYWARD, 4091 Mount Royal Boulevard, Allison Park, PA  15101

_____
Attorney  or Agent  for Mortgagee

Loan No: 6007026

## MODIFICATION OF MORTGAGE
## (Continued)

Page 3

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____

      )
      ) SS

COUNTY OF _____

      )

This record was acknowledged before me on _____, 20_____ by Rajeev Sharma
and Vishnu Priya Sharma.

_____
Signature of Notarial Officer

Notary Public in and for the State of _____

My commission expires _____

## LENDER ACKNOWLEDGMENT

STATE OF _____

      )
      ) SS

COUNTY OF _____

      )

This record was acknowledged before me on _____, 20_____ by _____
_____, _____ of ENTERPRISE BANK who represent that (he, she or
they) are authorized to act on behalf of ENTERPRISE BANK.

_____
Signature of Notarial Officer

Notary Public in and for the State of _____

My commission expires _____

# EXHIBIT B

## BUDGET

**VideoMining Corporation**
Budget Forecast - 7/29/2020

| Week Ending ==> | Week 26 7-Aug | Week 27 14-Aug | Week 28 21-Aug | Week 29 28-Aug | Week 30 4-Sep | Week 31 11-Sep | Week 32 18-Sep | Week 33 25-Sep |
|---|---|---|---|---|---|---|---|---|
| **Beginning A/R** | $225,000 | $177,500 | $165,000 | $255,000 | $375,000 | $435,000 | $380,000 | $375,000 |
| Sales | $35,000 | $0 | $90,000 | $120,000 | $75,000 | $0 | $30,000 | $50,000 |
| Collections | ($82,500) | ($12,500) | $0 | $0 | ($15,000) | ($55,000) | ($35,000) | $0 |
| Discounts Taken | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Ending A/R** | $177,500 | $165,000 | $255,000 | $375,000 | $435,000 | $380,000 | $375,000 | $425,000 |
| **EXPENSES** | | | | | | | | |
| Payroll | $12,500 | $0 | $27,000 | $74,000 | $0 | $0 | $0 | $0 |
| Employee Benefits | $9,100 | $0 | $0 | $0 | $9,100 | $0 | $0 | $0 |
| Professional Services | $0 | $0 | $8,300 | $0 | $6,500 | $0 | $0 | $0 |
| Contract Services | $0 | $5,700 | $0 | $4,500 | $0 | $0 | $5,700 | $0 |
| Cost of Good Sold | $3,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $0 |
| General Operating Expenses | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 |
| Facilities Expense | $7,250 | $1,000 | $0 | $0 | $7,250 | $1,000 | $2,000 | $2,000 |
| Insurance Expense | $1,800 | $0 | $0 | $0 | $0 | $1,500 | $0 | $0 |
| Patent Maintenance / Sale Cost | $1,250 | $0 | $0 | $0 | $0 | $0 | $2,000 | $0 |
| Chapter 11 Legal Fees | $15,000 | $0 | $0 | $0 | $15,000 | $0 | $0 | $0 |
| IRS Settlement | $0 | $0 | $0 | $0 | $0 | $7,500 | $0 | $0 |
| US Trustee Costs | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| DIP Lending Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $100 |
| DIP Financing Interest | $410 | $0 | $100 | $100 | $100 | $0 | $0 | $0 |
| **TOTAL OPERATING EXPENSES** | $52,310 | $10,700 | $39,400 | $82,600 | $49,200 | $14,000 | $11,700 | $4,100 |
| **CASH REQUIREMENTS** | | | | | | | | |
| Beginning Cash | $16,531 | $5,471 | $7,271 | $31,631 | $9,031 | $3,331 | $24,331 | $45,131 |
| Collections | $82,500 | $12,500 | $0 | $0 | $15,000 | $55,000 | $35,000 | $35,000 |
| Less: Operation Expenses | ($52,310) | ($10,700) | ($39,400) | ($82,600) | ($43,200) | ($14,000) | ($11,700) | ($4,100) |
| Refunds / Cobra payment / Deposits | $0 | $0 | $1,260 | $0 | $0 | $0 | $0 | $1,260 |
| DIP Borrowing / Repayment | $0 | $0 | $62,500 | $60,000 | $22,500 | ($20,000) | ($2,500) | $22,500 |
| **Ending Balance** | $5,471 | $7,271 | $31,631 | $9,031 | $3,331 | $24,331 | $45,131 | $64,791 |
| Qualified DIP AR | $177,500 | $165,000 | $255,000 | $375,000 | $435,000 | $380,000 | $375,000 | $425,000 |
| Facility Limit | $175,000 | $210,000 | $210,000 | $210,000 | $210,000 | $210,000 | $210,000 | $210,000 |
| Borrowing Percentage | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% |
| Borrowing Avail. | $88,750 | $82,500 | $127,500 | $187,500 | $210,000 | $190,000 | $187,500 | $210,000 |
| DIP Loan Balance | $65,000 | $65,000 | $127,500 | $187,500 | $210,000 | $190,000 | $187,500 | $210,000 |
| **Net Availability** | $23,750 | $17,500 | $0 | $0 | $0 | $0 | $0 | $0 |
| **DIP LENDER LINE OF CREDIT** | | | | | | | | |
| Opening Balance | $106,250 | $65,000 | $65,000 | $127,500 | $187,500 | $210,000 | $190,000 | $187,500 |
| Net Lending | ($41,250) | $0 | $62,500 | $60,000 | $22,500 | ($20,000) | ($2,500) | $22,500 |
| **Ending Balance** | $65,000 | $65,000 | $127,500 | $187,500 | $210,000 | $190,000 | $187,500 | $210,000 |

Confidential