## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| VIDEOMINING CORPORATION, | ) | |
| | ) | Bankruptcy Case No. 20-20425 GLT |
| Debtor | ) | |
| | ) | |
| _____ | ) | |
| VIDEOMINING CORPORATION, | ) | Document No. _____ |
| | ) | Related to Document No. 250, 274 |
| Movant, | ) | |
| | ) | Hearing date and time: |
| v. | ) | April 29, 2021 at 11:00 a.m. |
| | ) | |
| ENTERPRISE BANK, WHITE OAK | ) | Responses due: |
| BUSINESS CAPITAL, INC., and THE | ) | April 29, 2021 at 9:00 a.m. |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |
| | ) | |

**OBJECTION OF WHITE OAK BUSINESS CAPITAL, INC. TO EMERGENCY
MOTION TO (1) AUTHORIZE CONTINUED USE OF CASH COLLATERAL; (2)
EXTEND MATURITY DATE OF THE DIP LOAN; AND (3) APPROVE BRIDGE LOAN**

**AND NOW,** comes White Oak Business Capital, Inc. (formerly known as Federal

National Payables, Inc., and formerly doing business as Federal National Commercial Credit)

("White Oak"), by and through its undersigned counsel and files the within *Objection Of White*

*Oak Business Capital, Inc. To Emergency Motion To (1) Authorize Continued Use Of Cash*

*Collateral; (2) Extend Maturity Date Of The Dip Loan; And (3) Approve Bridge Loan*

("Objection") and in support thereof submits the following:

1.      VideoMining Corporation ("Debtor") filed its voluntary Chapter 11 Petition on February

4, 2020 ("Petition Date").  The Debtor is continuing to operate its business and manage its affairs

as a Debtor-in-Possession.

2.      On April 27, 2021, the Debtor filed an *Emergency Motion To (1) Authorize Continued Use Of Cash Collateral; (2) Extend Maturity Date Of The Dip Loan; And (3) Approve Bridge Loan*, listed as Document No. 274 on the Court's docket ("Motion").

3.      White Oak objects to the Motion for the reasons set forth below.

## RELEVANT BACKGROUND

4.      Since the Petition Date, the Debtor and its primary secured creditors have agreed to a series of five stipulations, which generally authorized continued use of cash collateral and twice increased the maximum amount of financing available under the DIP Loan. (ECF Nos. 181, 189, 208, 235, 250.)

5.      Throughout this period, the Debtor has failed to perform as set forth in the various budgets it has submitted.  And, the Debtor has failed to consummate a sale of its assets.

6.      Some of the defaults committed after the Petition Date by the Debtor include, without limitation, failure of the Debtor to comply with the financial covenants in the Financing Orders, the Debtor submitted as billed invoices which were not authorized for issuance by the account debtor in order to give the impression it was in compliance with the budget deviation tests in the Financing Orders and a failure to comply with any of the Sale Milestones in the Financing Orders.

## OBJECTION TO PROPOSED USE OF CASH COLLATERAL

7.      The Debtor has represented to the Court in its Motion that the Debtor has 2 offers. This is an inaccurate characterization of the current situation. The Debtor has received an offer for a license from Amazon and a non-binding letter of interest from a group that has many contingencies in it, does not provide any proof that the potential buyer has the financial capabilities to fund their offer and proof they can execute on the proposed letter of interest. As

the offers currently stand, they are insufficient to pay the holder of the first lien on the assets of

the Debtor much less any of the other secured creditors who hold valid perfected security

interests in the assets that are the subject of the "sales". There is a passing mention that Mr.

Bossi, who is the financial consultant to the Debtor and was appointed by the Debtor to

spearhead the sale process will be a partial owner of the buyer.  This is the ultimate conflict of

interest by an agent acting on behalf of a Debtor, and we wish to remind the Court the Debtor

committed fraud prior to the Petition Date, and now the financial consultant, who was advising

the Debtor at the time of the fraud (Mr. Sharma has admitted on the record he was solely

responsible for such fraud), is acting as the seller's agent and will have an interest in the buyer.

This situation alone requires much closer inspection by the Court and interested parties in order

to determine if this is an arm's length transaction and should not be relied upon for any value in

evaluating the Debtor's requests in this Motion.

8.      The Debtor says it is willing to share the auction proposal but as of the date of this filing

it has not done so. One has to wonder why, in the interests of full disclosure, it wasn't sent upon

receipt by the Debtor. We cannot comment on an agreement has not been provided to White

Oak.

9.      This is not a motion for approval a sale under Section 363 of the Bankruptcy Code, so we

are not sure of the relevance of the recitation of the license and the letter of interest other than to

inform the Court of 2 potential transactions. But as to the license agreement and the letter of

interest we have the following concerns White Oak has:

      a.   Amazon has an approval right over assignments by the Debtor. Should not

           those be pre-approved for the sale(s) that might take place at the same time, so

           Amazon have any leverage at the time of the closing.

b. ASMG will not close for 45 days after the court approval, who is going to fund the Debtor for the additional time needed for the time to finalize these proposed sales, provide notice and motion to the interested parties, provide the Court with proof that the marketing was properly carried out or remarket the assets once the motion is made and then for the 45-day period to closing. White Oak must question whether these sales are achievable for the Debtor as well as the buyer/licensee.

c. The Debtor is required to terminate all employees prior to the closing. Will the Debtor have any employee termination costs for vacation pay, etc. that will be additional administrative claims at the time of the closing.

d. There is an adjustment for Unearned Revenue, that is not clearly defined and what is the potential impact on the net proceeds to the secured creditors.

e. There is a requirement that the Debtor has to pay all operating expenses on a pro-rata basis. Unless these are priority administrative claims they should not be permitted to prim the secured creditors.

10.    With regard to the "Bridge Loan", we have a number of issues and questions on this proposal:

a. In addition to our concerns that Mr. Bossi is an owner of the potential buyer, we have even more questions and concerns that Mr. Bossi, the owner of the proposed Bridge Loan lender, is willing to make such a risky loan with no interest and minimal collateral. Mr. Bossi is the Debtor's pre-petition and post-petition financial consultant, who was appointed under Section 327 of the Bankruptcy Code. We have to question how a Section 327 professional make

a loan to a Debtor and remain disinterested. Mr. Bossi seems to be wearing almost every hat a person can wear in a bankruptcy and keeps asking for more from the Court.

b.   White Oak does not have enough detail on the Budget that was submitted, but has to ask, how much of the $72,000 Bridge Loan will be paid back to the Bridge Loan lender for fees it is owed as the Section 327 professional.

c.   While it is titled as a DIP Loan, the Debtor is not seeking approval under Section 363 of the Bankruptcy Code, so the Debtor should not be permitted to incur this indebtedness and further encumber its assets without the requisite formalities being followed. The Debtor has no equity in any assets to provide the proposed Bridge Loan lender with adequate protections, yet the Debtor is requesting permission to grant a lien on its accounts receivable, which already has 4 secured lenders holding millions of dollars of liens on those accounts, so the Debtor is asking the Court to grant a priming administrative claim on assets with no equity cushion. The Debtor is trying to ignore the requirements under Sections 363 and 364 of the Bankruptcy Code.

d.   The Debtor is requesting permission to grant the Bridge Lender an administrative claim under Section 503(b) of the Bankruptcy Code. We read Section 503(b) as granting administrative claims for payments of goods and services rendered to the Debtor, not for loans to pay such expenses. If the request under Section 503(b) is not granted, then the request under Section 507 should also fail.

e.  The Debtor is asking the Court to approve a loan secured by an asset of Mr. Sharma that is pledged to Enterprise Bank. White Oak fails to understand how Mr. Sharma, who is in a Chapter 7 proceeding can agree to this additional lien on his assets when he is not a party to this Motion. In addition, subject to White Oak's non-dischargeability claims looming over Mr. Sharma, those funds may be subject to White Oak's claims and should not be used a second time to fund more operating losses of the Debtor.

f.  Mr. and Mrs. Sharma, who supposedly have no assets are being asked to guaranty the Bridge Loan. What does the Bridge Loan lender know that the Trustee in their personal bankruptcies and all the other creditors don't know, that the Bridge Loan lender wants a guaranty.  In the interest of full transparency, the Bridge Loan lender and the Sharmas should give a full accounting of their reasons and what assets of value the Sharmas have that the Bridge Loan lender is requiring the guaranties.

11.  Once again we have a very aggressive Budget presented as proof the Debtor will be able to fund its operations for the period. The Debtor has routinely failed to meet the Budget and as a result the Debtor has had to continue to increase its post-petition borrowings to fund its operating losses. We have to question for whose benefit is this Debtor being kept alive. We have to assume that in order to get to a sale, the Debtor will need even more borrowings and who will be provided the next loan and what collateral will they be asking for.

12.  For the reasons set forth above, White Oak has no faith in the Debtor's ability to perform.

WHEREFORE, for the reasons set forth above, White Oak respectfully requests that this Court enter an Order denying the Debtor's request for the Bridge Loan and the granting of an administrative claim to the Bridge Loan lender and providing such other and further relief as the Court deems to be just and proper.

Dated:  April 29, 2021                              **STONECIPHER LAW FIRM**

*/s/ George T. Snyder*
George T. Snyder, Esq.
PA ID No. 53525
125 First Avenue
Pittsburgh, PA 15222
Ph. (412) 391-8510
gsnyder@stonecipherlaw.com

and

**MANDELBAUM SALSBURG, P.C.**

/s/ Jeffrey M. Rosenthal
Jeffrey M. Rosenthal, Esq.
NJ Atty. No. 4160933
3 Becker Farm Road
Roseland, NY  07068
JRosenthal@lawfirm.ms
(Pro Hac Vice Admission granted)

Counsel to White Oak Business Capital, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that I served the captioned pleading on the parties at the address specified below or on the attached list on <u>April 29, 2021</u>.

The types of service made on the parties (first class mail, electronic notification, hand delivery, or another type of service) was: <u>Electronic Mail</u>.

If more than one method of service was employed, this certificate of service groups the parties by the type of service.  For example: the full name, email address, and where applicable the full name of the person or entity represented, for each party served by electronic transmission is listed under the hearing "Service by NEF," and the full name and complete postal address for each party served by mail, is listed under the heading "Service by First Class Mail."

**<u>Service By Electronic Mail</u>**

Office of the U.S. Trustee
970 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222
Norma.L.hildenbrand@usdoj.gov

Robert O Lampl
223 4th Avenue, 4th Fl.
Pittsburgh, PA 15222
rlampl@lapllaw.com

Ryan J. Cooney
223 4th Avenue, 4th Fl.
Pittsburgh, PA 15222
rcooney@lapllaw.com

Enterprise Bank
c/o William E. Kelleher
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222
Bill.kelleher@dentons.com

Thomas Maxson
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222
Thomas.maxson@dentons.com

On Deck Capital
c/o Federated Law Group, PLLC
887 Donald Ross Rd.
Juno Beach, FL 33408
bankruptcy@ondeck.com

Broadway Advance Funding
39 Broadway, Suite 930
New York, NY 10006
josh@broadwayadvance.com

Green Note Capital Partners, Inc.
c/o Berkovitch and Bouskila, P.C.
80 Broad Street, Suite 3303
New York, NY 10004
alice@bblawpllc.com

Hewlett-Packard Financial Services Company
200 Connell Drive, Suite 5000
Berkeley Heights, NJ 07922
Diane.morgan@hope.com

Atul Jain
10421 Lawyers Road
Vienna, PA 22181
Atul.Jain@teoco.com

Ben Franklin Technology Partner
200 Innovation Blvd., Suite 150
State College, PA 16803
stevebrawley@cnp.benfranklin.org

Beneficial Equipment Finance Co.
c/o Saldutti Law Group
800 Kings Highway N., Suite 300
Cherry Hill, NJ
rmcdowell@sigcollect.com

Clark Hill PLC
Attn: Accounts Receivable
P.O. Box 3760 Pittsburgh, PA 15230
jrodney@clarkhill.com

Dell Financial Services Payment Processing Center
P.O. Box 5292
Carol Stream, IL 60197-5292

Charles.Simpson@dell.com

Ascentium Capital LLC 23970 HWY 59 N
Kingwood, TX 77339
jerrynoon@ascentiumcapital.com

EnsembleIQ
29475 Network Place
Chicago, IL 60673-1294
matienza@ensembleiq.com

Georgia Pacific Consumer Products, LP
133 Peachtree Street, N.E.
Atlanta, GA 30303-1847
Rechelle.Papa@gapac.com

Internal Revenue Service
Centralized Insolvency Operation
Philadelphia, PA 19101-7346
Jill.locnikar@usdoj.gov

PA Department of Revenue Bankruptcy Division
P.O. Box 280946
Harrisburg, PA 17128-0908
akovalchick@attorneygeneral.gov

Michael Zeller
3806 Ruette San Raphael
San Diego, CA 92130
zeller.michael@gmail.com

Research Now
c/o Survey Sampling International, LLC
6 Research Drive
Shelton, CT 06484
ckalitta@researchnow.com

Sanjay Mehta
44649 Parkmeadow Drive
Fremont, CA 94539
mehta4s@sbcglobal.net

Sanjay Mital
2237 Rutherford Lane
Fremont, CA 94539
Smittal53@gmail.com

Select Funding/Financial Pacific
3455 S. 344trh Way, STE 300
Auburn, WA 98001
finpac@finpac.com

Steven M. Lavalle
Lipporannantie 9A 37
90500 Oulu Finland
Steven.LaValle@oulu.fi

US Bank Equipment Finance
A Division of US Bank National Assoc.
P.O. Box 790448
Saint Louis, MO 63179-0448
Jenna.puetz@usbank.com

Umesh Sharma 44913 Cougar Circle
Fremont, CA 95124
Umeshsharma108@gmail.com

Wessel & Company
215 Main Street
Johnstown, PA 15901
cweir@weselcpa.com

Owen Lipnick
777 Terrace Avenue, Suite 508
Hasbrouk Heights, NJ 07064
ol@seidmanllc.com

**EXECUTED ON:**  April 29, 2021          STONECIPHER LAW FIRM

By:   ***/s/George T. Snyder***
George T. Snyder, Esquire
PA ID No. 53525
125 First Avenue
Pittsburgh, PA  15222
(412) 391-8510
gsnyder@stonecipherlaw.com

Counsel to White Oak Business Capital, Inc