**CONFIDENTIAL**                                                                                           **EXECUTION COPY**

## PATENT LICENSE AGREEMENT

This Patent License and Assignment Agreement ("**Agreement**") is entered into on this 16th day of April, 2021, (by and between VideoMining Corporation, a Delaware Corporation, with offices at 403 South Allen Street, State College, PA 16801 ("**LICENSOR**") and **Amazon Technologies, Inc.**, a Nevada corporation, with offices at 410 Terry Avenue North, Seattle, WA 98109 ("**ATI**"). Each of the above referenced entities may be referred to herein as a "**Party**" or collectively as the "**Parties**."

WHEREAS, LICENSOR owns and control certain patents and ATI desires to obtain a license to such patents as more fully set forth herein.

NOW, THEREFORE, in consideration of the promises contained in this Agreement, and for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by each Party, the Parties, on behalf themselves and their respective Affiliates, agree as follows:

**1.    DEFINITIONS**

As used in this Agreement, the following terms shall have the following meanings:

**1.1.**  "**Affiliate(s)**" means with respect to any specified entity, any other entity that is now or in the future, directly or indirectly (i.e., through one or more other Affiliates), Controlling, Controlled by or under common Control with such specified entity; where "Control" (including "Controlling" and "Controlled by") means with respect to any specified entity, the power to, directly or indirectly, control or similarly direct or cause the direction, of the management or policies of such entity whether through ownership of voting shares, by contract or otherwise. Any such entity, now or in the future, shall only be an Affiliate for so long as such Control exists.

**1.2.**  "**Amazon Products and Services**" means all (a) products, software, services, systems, materials, and technology (including any components, devices, code, data, media and any other portions thereof) and/or (b) processes, methods, procedures and other activities, used, made (including have made), sold, offered for sale, imported or otherwise transferred, disposed of, exploited, performed, or practiced by ATI or any of its Affiliates, or for or on behalf of ATI or any of its Affiliates by one or more Authorized Third Parties. Amazon Products and Services do not include Excluded Products.

**1.3.**  "**Authorized Third Party**" means any person or entity that is authorized, directly or indirectly (i.e., through one or more other Authorized Third Parties), by ATI or any of its Affiliates to exercise any legal rights or to perform any activities with respect to any Amazon Product and Service (*e.g.*, suppliers, manufacturers, distributors, resellers, customers, and end users).

**1.4.**  "**Covered Patents**" means (a) any and all Patents owned by LICENSOR and its Affiliates on the Effective Date, including, but not limited to, the Patents set forth in Exhibit A, and any and all foreign counterparts of the foregoing; (b) any and all Patents that have issued or may issue from any of the Patents in (a) of this definition; and (c) any and all extensions, reissues, reexaminations (including any amended claims issuing from any *inter partes* review or covered business method proceeding), or renewals of any of the Patents described in this definition.

**1.5.**  "**Excluded Products**" means all products, software, services, systems, materials, and technology (including any components, devices, code, data, media and any other portions thereof) that are designed by, for or on behalf of any entity other than Amazon or any of its Affiliates without substantial and material input from Amazon or any of its Affiliates and which are manufactured, reproduced, sold, leased, licensed, distributed, provided, or otherwise transferred through or by Amazon or any of its Affiliates to that entity or to that entity's customers for or on behalf of such entity for a substantial purpose of attempting to make such products, software, services, systems, materials, and technology (including any components, devices, code,

1

# EXHIBIT A

**CONFIDENTIAL**                                                                              **EXECUTION COPY**

data, media and any other portions thereof) immune under any license, release, or other rights granted in this Agreement

**1.6.** "**Patents**" means any and all classes and types of patents, utility models, invention registrations, and equivalent rights (including originals, reexaminations (including any amended claims issuing from any *inter partes* review or covered business method proceeding), reissues and extensions), and applications for any of the foregoing (including provisionals, divisionals, continuations, continuations-in-part, and foreign counterparts) in all countries of the world.

## 2. EFFECTIVE DATE

LICENSOR is currently a Debtor in a Chapter 11 Bankruptcy Case pending in the United States District Court for the Western District of Pennsylvania (the "Bankruptcy Court") at No. 20-20425-GLT (the "Bankruptcy Case"). The terms of this Agreement are expressly conditioned upon approval by the Bankruptcy Court. Upon execution, LICENSOR agrees to take the necessary steps to obtain an Order by the Bankruptcy Court approving this Agreement. The date of the Order of Court Approving this Agreement shall be the "Effective Date". In the event that this Agreement is not approved by the Bankruptcy Court, this Agreement shall terminate as provided under Section 6.2 below.

## 3. PAYMENT

**3.1. Payment Terms.** Subject to receipt of Licensor's wire instructions prior to the Effective Date as provided below, within thirty (30) days after the Effective Date, ATI or one of its Affiliates shall pay a total of Three Hundred and Twenty five thousand US Dollars (US$325,000.00) ("**Payment**"). The Payment will be made by wire transfer in U.S. dollars and in immediately available funds. Licensor will provide wire instructions within (5) days of full execution of this Agreement. Other than the Payment, neither ATI nor any of its Affiliates shall be responsible for the payment of any amounts under this Agreement.

**3.2. Taxes.** Each Party shall be responsible for any duties, taxes, and levies to which it is subject as a result of any payment pursuant to this Agreement by any jurisdiction.

## 4. GRANT OF RIGHTS, COVENANTS AND ASSIGNMENT

**4.1. License.** Upon receipt of the Payment, LICENSOR, on behalf of itself, its Affiliates, and their respective legal successors and assigns, hereby grants to ATI a perpetual, worldwide, irrevocable, non-exclusive, fully paid-up, non-assignable (except as set forth in Section 7.1), non-terminable, royalty-free, non-sublicensable (except as set forth in this Section 4.1 and 7.1) right and license under the Covered Patents during the Term to directly, or indirectly through its Authorized Third Parties: (a) make (including "have made") use, sell, offer for sale, import, and otherwise transfer, exploit, dispose of, practice or perform any and all Amazon Products and Services; (b) practice or perform (including "have practiced" and "have performed") any and all process, methods and procedures and/or to use (including "have used") or otherwise exploit any and all products, software, services, systems, materials, and technology (including any components, devices, code, data, media and any other portions thereof) in connection with the exercise of the rights under (a) above. The foregoing license to ATI includes the right for ATI to grant and authorize sublicenses within the same scope set forth above to its Affiliates, and any such sublicense granted hereunder shall be deemed effective (i) regardless of whether any written agreement exists between ATI and any such Affiliate with respect thereto and (ii) on or before the date such entity became an Affiliate of ATI, but no earlier than the Effective Date hereof.

CONFIDENTIAL  EXECUTION COPY

**4.2. Acknowledgements.** If pursuant to a license or other authorization granted by ATI or any of its Affiliates to an Authorized Third Party, copies are made of all or part of software which is an Amazon Products and Services, whether such copies are made in the United States or abroad, such copies will be treated for purposes of this Agreement as if they had been made and transferred directly by ATI or its Affiliates. LICENSOR, on behalf of itself, its Affiliates, and their respective legal successors and assigns, agrees that, regardless of the existence of or state of the law regarding patent exhaustion in any country or region, but subject to the terms of this Agreement, the exercise of the licenses in this Section 4 and grant of the releases under Section 5 below shall fully exhaust all rights and remedies under the Covered Patents with respect to the Amazon Products and Services subject thereto on a worldwide basis, even where the first lease, license, sale, or other disposition or performance of any such Amazon Products and Services occurred in a country or region different than country or region covered by a particular Covered Patent.

**4.3. Covenant.** Upon receipt of the Payment, LICENSOR, on behalf of itself, its Affiliates, and their respective legal successors and assigns, hereby covenants not to initiate, prepare, support (including joining as party), or otherwise provide financing, advisory, or other services, intended for or directed towards the initiation or support of, any monetization, assertion, litigation or other efforts or enforcement proceedings under the Covered Patents against ATI, its Affiliates and their respective Authorized Third Parties (collectively, "**Covered Parties**") with respect to any Amazon Product or Service or any activities related thereto to the extent covered by the licenses, other covenants and releases hereunder ("**General Covenant**"). Each Covered Party shall be entitled to specific performance of the General Covenant.

**4.4. Reserved Rights.** Other than the license, releases and covenants expressly provided herein, no other rights or immunities are granted, nor implied, and are expressly reserved by LICENSOR and its Affiliates

## 5.    RELEASES

**5.1. Infringement Release.** Upon receipt of the Payment, LICENSOR, on behalf of itself, its Affiliates, and their respective directors, officers, employees, legal successors and assigns, hereby irrevocably and unconditionally release, acquit, hold harmless, and forever discharge the Covered Parties from any and all claims, causes of action, demands, liability, losses, damages, legal fees, costs and any other claims of compensation or liability whatsoever, known or unknown, suspected or unsuspected, in law or equity that LICENSOR or any of its Affiliates or their respective legal successors and assigns, ever had, now has, or hereafter may have or acquire against such Covered Parties for any infringement of the Covered Patents occurring prior to the Effective Date to the extent such infringement would not have arisen had this Agreement *mutatis mutandis* been in force at the time such infringement occurred.

**5.2. Unknown Claims.** The releases in this Section 5 extend to claims that the releasing entities do not know or suspect to exist in their favor, which if known by them, would have materially affected their decision to enter into the applicable release. The Parties, on behalf of themselves, their Affiliates, and their respective legal successors and assigns, hereby acknowledge and expressly waive the provisions of section 1542 of the California Civil Code (and all similar provisions in other jurisdictions), which provides:

> "**A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor or released party**"

## 6.    TERM AND TERMINATION

**6.1. Term.** The term of this Agreement shall commence upon the Effective Date and, unless earlier terminated as provided below, shall continue until the expiration of the last-to-expire of the Covered Patents (the "**Term**").

**CONFIDENTIAL**                                                                                                    **EXECUTION COPY**

**6.2.    Termination.** This Agreement shall automatically and immediately terminate upon failure of the Bankruptcy Court to approve this Agreement as provided under Section 2 above. LICENSOR may terminate this Agreement if ATI fails to remit any portion of the Payment when due under Section 3.1, and fails to cure such breach within fifteen (15) days of the date of ATI's receipt of the LICENSOR's Notice thereof. Except for any such non-payment, the LICENSOR shall have no right to terminate this Agreement or any of the licenses, releases, covenants and other rights granted under this Agreement. Upon termination of this Agreement based on the failure of the Bankruptcy Court to approve this Agreement, neither Party shall have any further obligations with respect to this Agreement, other than as provided in Section 6.3 below. Termination of this Agreement based on the failure to remit the Payment will be retroactively effective as of the Effective Date hereof and no Party shall have any further obligations with respect to this Agreement, other than as provided in Section 6.3 below.

**6.3. Survival.** Upon termination of this Agreement pursuant to Section 6.2 above, the following Sections shall survive: 6.3 (Survival) 9 (Confidentiality), 10 (Notices) and 11 (General Provisions). Upon expiration of Term as provided under Section 6.1 above, the following Sections shall survive: 1 (Definitions), 3.2 (Taxes), 4 (Grant of Rights, Covenants and Assignments), 5 (Releases), 6.3 (Survival), 8 (Representations), 9 (Confidentiality), 10 (Notices) and 11 (General Provisions).

## 7.    ASSIGNMENT AND TRANSFER

**7.1. Limitations on Assignment.** Except as expressly permitted in this Section 7, neither Party may assign this Agreement, in whole or in part, absent the other Party's prior written consent, such consent not to be unreasonably withheld or delayed Notwithstanding the foregoing, ATI may assign or otherwise transfer, sublicense or extend its rights under this Agreement, in whole or in part, without LICENSOR's prior written consent, to any Affiliate or as part of a sale of, transfer of, spin-off of or other transaction involving one or more businesses or assets related to Amazon Products and Services covered by the Covered Patents ("**Business Transfer**"), provided that any licenses, releases, covenants and other rights under this Agreement transferred, sublicensed, or extended in connection with any Business Transfer shall apply solely to those Amazon Products and Services included in such Business Transfer and any all updates, upgrades or successor versions thereto and will not extend to any other products or services or activities conducted by the acquirer or any of its Affiliates prior to, on or after the effective date of the Business Transfer even if the same type of products or services or activities as those included in the Business Transfer.

**7.2. Permitted Transfer by LICENSOR.** Notwithstanding Section 7.1, LICENSOR and its Affiliates shall be permitted to transfer or assign any Covered Patents or any of its rights to the Covered Patents ("**Transfer**") without ATI's prior written consent, provided that any such Transfer (and all subsequent Transfers) shall be made subject to all applicable licenses, releases, covenants and other rights and obligations under this Agreement.

**7.3. Unpermitted Assignment/Transfer Void.** Any attempted Transfer, assignment, or grant in contravention of Section 7.1 shall be null and void. This Agreement shall be binding upon, inure to the benefit of and be enforceable by and against the relevant entity to whom this Agreement, or any Patent subject to a Transfer, or any rights hereunder, are assigned, transferred or otherwise conveyed in accordance with the terms of this Section 7.

## 8.    REPRESENTATIONS

**8.1. LICENSOR Representations.** LICENSOR, on behalf of itself, and its Affiliates represents and warrants that (i) all Covered Patents existing as of the Effective Date are exclusively owned, directly or indirectly, by LICENSOR and/or its Affiliates; (ii) neither LICENSOR nor any of its Affiliates have transferred, assigned or exclusively licensed any Patents, or any rights to enforce or assert any Patents, to any third party in the six (6) months prior to the Effective Date; and (iii) it has all the rights to grant the licenses, releases, covenants and other rights of the full scope set forth herein both on its own behalf and on behalf of its Affiliates, and their respective

4

**CONFIDENTIAL**                                                                                                    **EXECUTION COPY**

legal successors and assigns.

**8.2. Mutual Representations.** Each Party represents and warrants that: (a) all corporate action necessary for the authorization, execution and delivery of this Agreement by such Party and the performance of its obligations hereunder has been taken; (b) the person whose signature appears hereon warrants and guarantees that he or she has been duly authorized and has full authority to execute this Agreement on behalf of such Party; and (c) once fully executed and subject to Section 2 herein, this Agreement represents a valid and binding obligation of such Party.

**8.3. No Other Warranties.** Nothing contained in this Agreement shall be construed as: (a) a warranty or representation by any Party that any manufacture, sale, use or other disposition of any Products or Services by the other Party has been or will be free from infringement of any third party patents; (b) an agreement by any Party to bring or prosecute actions or suits against third parties for infringement, or conferring any right to the other Party to bring or prosecute actions or suits against third parties for infringement; (c) conferring any right to the other Party to use in advertising, publicity, or otherwise, any trademark, trade name or names of the other Party, or any contraction, abbreviation or simulation thereof without the prior written consent of the other Party; or (d) a representation or warranty by LICENSOR that any of the Covered Patents is valid or enforceable.

**8.4. Non-impairment.** Subject to LICENSOR's, its Affiliates' and their respective successors' and assigns' compliance with the terms of this Agreement, neither ATI nor any of its Affiliates shall, nor shall they assist any other person or entity to, do anything that would contest or in any way impair the rights of LICENSOR or its Affiliates or their respective successors or assigns in (i) any of the Covered Patents, (ii) the enforceability and/or validity of any of the Covered Patents, or (iii) any cause of action that LICENSOR may have concerning infringement of any of the Covered Patents. Neither ATI nor any of its Affiliates will be in breach of the foregoing by, and its terms will not apply to: (a) any exercise of any of the rights or licenses granted under this Agreement; (b) compliance with any orders or demands of any governmental entity or any laws; (c) any response to any claim brought against ATI or any of its Affiliates; or (d) any response to any claim for infringement of any of the Covered Patents against any person or entity where ATI or any of its Affiliates have an obligation to defend or indemnify any person or entity against such claim.

**8.5. Enforcement.** Notwithstanding any other provision of this Agreement, neither LICENSOR, nor its Affiliates, successors or assigns have any obligation to take any action with respect to the Covered Patents, enforcement of the Covered Patents, continuation of any rights in the Covered Patents; or prosecution of any patent applications that are part of the Covered Patents.

## 9.   CONFIDENTIAL INFORMATION

Each Party shall keep the existence and all terms of this Agreement confidential and will not disclose it to any third party (but may to its Affiliates and their respective employees bound by confidentiality agreements used to bind Affiliates and employee's with respect to such Party's own confidential information) without the prior written consent of the other Party. Notwithstanding the foregoing, a Party may disclose the existence and terms of this Agreement (a)(i) as required by the Bankruptcy Court in connection with the filing of this Agreement for approval in the Bankruptcy Case or (ii) as required during the course of any other litigation, arbitration or any legal proceeding and subject to a court order or protective order, provided that any production under any such order is, protected under "RESTRICTED - ATTORNEY'S EYES ONLY" or higher confidentiality designation; (b) to its directors, officers, and legal counsel; (c) to its accountants, tax advisors, auditors, banks, investors or other financing entities and their advisors; (d) to Authorized Third parties of ATI and its Affiliate as to the scope of the licenses, releases, covenants, and other rights granted that are applicable to such entity herein (without disclosure of any financial terms); (e) to a counterparty or potential transferee in connection with a prospective merger, acquisition, financing, investment or similar transaction, or a proposed license, sale, or transfer of rights to any of the Covered Patents (without disclosure of any financial terms); and (f) for purposes of disclosure in connection with Accounting Principles Generally Accepted in the United States and any other accounting principles, rules or regulations, the Securities and Exchange Act of 1934, as amended, the Securities Act of

5

**CONFIDENTIAL**                                                              **EXECUTION COPY**

1933, as amended, and any other reports or filings, reports, or disclosures that may be required under applicable laws or regulations; (g) to any insurers or actual or potential indemnitors or indemnitees (without disclosure of any financial terms); and (h) in connection with the enforcement of this Agreement or any rights hereunder provided that any production under any such order is, to the extent available, protected under "RESTRICTED - ATTORNEY'S EYES ONLY" or higher confidentiality designation. Each Party agrees not to make any public statement that is inconsistent with the terms of this Agreement. Any disclosures under (b), (c), (d), (e) and (g) will be made under a suitable confidentiality agreement whose terms are at least as protective as those set forth in this Section 9. For any disclosures under (f), the disclosing Party shall, no less than ten (10) business days prior to any disclosure, have outside counsel reasonably acceptable to the non-disclosing Party provide the non-disclosing Party a written statement detailing why it believes such Party is required to disclose this Agreement (which disclosure shall be subject to advance review and comment by the non-disclosing Party, which comment shall not be unreasonably withheld or delayed). For any disclosures under (b), (c), (d), (e) and (g) to any third party ("**Third Party Recipient**"), the disclosing Party shall include the following in its confidentiality agreement: (i) such information shall be shared solely with employees of the Third Party Recipient, on a need-to-know basis solely for the limited purpose for which it was disclosed and shall be immediately returned or destroyed upon completion of such limited purpose, (ii) such information shall remain confidential information unless and until such information becomes public, other than as a result of the breach of Section 9 by a Party or any of its Affiliates (or their employees) or by any Third Party Recipient of its confidentiality obligations, and (iii) such Third Party Recipient receiving disclosure of information shall have no right to further disclose such information except to the extent required by a court order which has been precipitated by a third party request (*i.e.*, a request other than by the disclosing Party or any of its Affiliates or by an Affiliate of the Third Party Recipient) or otherwise by regulation or law, provided that such Third Party Recipient's disclosure with respect thereto shall be subject to the same disclosure requirements of a disclosing Party as set forth in Section 9(a), (f) or (h), as the case may be.

## 10.    NOTICES AND OTHER COMMUNICATIONS

Any notice or other communication pursuant to this Agreement shall be made by registered mail (return receipt requested), Federal Express, UPS or DHL (or other nationally recognized courier) and will be effective upon delivery to the listed address ("**Notice**") below, except for Notices sent by registered mail which will be effective upon the earlier of (1) actual receipt thereof by the designated recipient (*i.e.*, the "Attn:" recipient), if any, following delivery to the listed address below or (2) five (5) days after delivery to the listed address below. Such notice or communication shall be mailed to the addresses below, or to such other address as ATI or LICENSOR shall provide by notice given in accordance herewith. If an e-mail address has been provided, the sending Party shall also send a courtesy copy of such notice or other communication to such e-mail address.

If to ATI or any of its Affiliates:

Amazon.com, Inc.
Attn: General Counsel
P.O. Box 81226
Seattle, WA 98108-1226
Fax: (206) 266-7010
Email: contracts-legal@amazon.com

With a copy to:

Amazon.com, Inc.
Attn: VP, Litigation
2021 7th Avenue
Seattle, WA 98121
Email: contracts-legal@amazon.com

6

**CONFIDENTIAL**                                                                                    **EXECUTION COPY**

<u>If to LICENSOR or any of its Affiliates:</u>

VideoMining Corporation
Attn: Christopher Bossi
403 S Allen Street
State College, PA 16801
Email: cbossi@videomining.com

## 11.   GENERAL PROVISIONS

**11.1.   Choice of Law.** The laws of Pennsylvania, exclusive of conflict of law provisions, shall apply in any dispute arising with respect to this Agreement. The exclusive venue for any such disputes shall be the state and federal courts having jurisdiction in Allegheny County, Pennsylvania, USA and the Parties, on behalf of their Affiliates, legal successors and assigns agreed to submit to the exclusive jurisdiction of such courts. Notwithstanding anything to the contrary, the exclusive law/venue/jurisdiction provisions of this Section 11.1 shall not apply to, and shall not restrict or limit, any action, suit or proceeding brought by any Party before the United States Patent and Trademark Office (USPTO) or any other similar governmental body (e.g., the European Patent Office (EPO), Japanese Patent Office (JPO)) regarding the validity, enforceability, grant or allowance of any Patent.

**11.2.   Partial Invalidity.** If any provision of this Agreement shall be found or is held to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable and the Parties shall negotiate, in good faith, a substitute, valid and enforceable provision which most nearly effects the Parties' intent in entering into this Agreement.

**11.3.   Modification.** No alteration, amendment, waiver, cancellation or any other change in any term or condition of this Agreement shall be valid or binding on any Party unless the same shall have been mutually assented to in writing by all Parties.

**11.4.   Independent Legal Advice.** The Parties acknowledge that they have been advised or had the opportunity to be advised by their own independently selected counsel and other advisors in connection with this Agreement and enter into this Agreement solely on the basis of that advice and on the basis of their own independent investigation of all of the facts, laws and circumstances material to this Agreement or any provisions thereof, and not in any manner or to any degree based upon any statement or omission by any other Party and/or its counsel.

**11.5.   Construction.** Each Party has cooperated in the drafting and preparation of this Agreement. Hence, this Agreement shall not be construed against any Party on the basis of that Party being the drafter. The headings are for the convenience of the Parties and are not to be used in construing the meaning of any provision of this Agreement.

**11.6.   Entire Agreement.** This Agreement, including the Exhibits, constitutes and contains the final, complete and exclusive Agreement and understanding among the Parties. This Agreement supersedes and replaces all prior negotiations and all Agreements, proposed or otherwise, whether written or oral, concerning the subject matter hereof. This is a fully integrated document.

**11.7.   Fees and Costs.** Each Party shall bear their own costs and attorney fees incurred in connection with the Actions, including the negotiation and consummation of this Agreement. Should any future legal proceeding or action arise related to the enforcement of any of the covenants or representations and warranties in this Agreement, the prevailing Party shall be entitled to an award, in addition to damages, if any, of reasonable attorney's fees, costs and expenses relating to such dispute.

Case 20-20425-GLT    Doc 288-1    Filed 05/06/21    Entered 05/06/21 14:25:54    Desc
Exhibit A    Page 8 of 11

**CONFIDENTIAL**                                                                   **EXECUTION COPY**

**11.8. Headings.** The headings contained herein have been inserted for convenience only and shall not be considered or referred to in resolving questions of interpretation or construction.

**11.9. Execution in Separate Counterparts.** Each Party will execute and promptly deliver to the other Party a full copy of this Agreement bearing original wet signatures. Notwithstanding the foregoing, the Parties acknowledge that this Agreement may be executed by the Parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, and all of which shall together constitute one and the same instrument

**11.10. Construction of Terms.** Unless the context otherwise requires: (a) words using the singular or plural number also include the plural or singular number, respectively; (b) the terms "hereof", "herein", "hereby" and similar words refer to this entire Agreement; (c) references to Sections shall be to all subparts of such Sections; (d) the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or"; (e) the term "including" or "includes" means "including without limitation" or "includes without limitation"; (f) reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof.

BY EXECUTING THIS AGREEMENT, EACH OF THE PARTIES ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT AND UNDERSTANDS ITS TERMS AND PROVISIONS. This Agreement shall become effective as of Effective Date when it has been executed by all Parties. For convenience, this Agreement may be executed by signatures transmitted by pdf or other electronic means.

**VIDEOMINING CORPORATION**               **AMAZON TECHNOLOGIES, INC.**

By: _Rajeev Sharma_ (DocuSigned)           By: _Scott Hayden_ (DocuSigned)

Name: Rajeev Sharma                        Name: Scott Hayden

Title: President                           Title: Vice President

Date: April 16, 2021                       Date: April 16, 2021

**CONFIDENTIAL**                                                                 **EXECUTION COPY**

## Exhibit A

| Publication Number | Application Number | Title | File Date |
|---|---|---|---|
| US7319779 | US11/004299 | Classification of humans into multiple age categories from digital images | 12/3/2004 |
| US7505621 | US10/972316 | Demographic classification using image components | 10/22/2004 |
| US7848548 | US11/811614 | Method and system for robust demographic classification using pose independent model from sequence of face images | 6/11/2007 |
| US7912246 | US12/011748 | Method and system for determining the age category of people based on facial images | 1/29/2008 |
| US7957565 | US12/079901 | Method and system for recognizing employees in a physical space based on automatic behavior analysis | 3/28/2008 |
| US7987111 | US11/978021 | Method and system for characterizing physical retail spaces by determining the demographic composition of people in the physical retail spaces utilizing video image analysis | 10/26/2007 |
| US8009863 | US12/215877 | Method and system for analyzing shopping behavior using multiple sensor tracking | 6/30/2008 |
| US8010402 | US12/386654 | Method for augmenting transaction data with visually extracted demographics of people using computer vision | 4/21/2009 |
| US8027521 | US12/079276 | Method and system for robust human gender recognition using facial feature localization | 3/25/2008 |
| US8098888 | US12/011650 | Method and system for automatic analysis of the trip of people in a retail space using multiple cameras | 1/28/2008 |
| US8189926 | US11/999656 | Method and system for automatically analyzing categories in a physical space based on the visual characterization of people | 12/6/2007 |
| US8254633 | US12/386656 | Method and system for finding correspondence between face camera views and behavior camera views | 4/21/2009 |
| US8295597 | US12/075089 | Method and system for segmenting people in a physical space based on automatic behavior analysis | 3/7/2008 |

CONFIDENTIAL                                                              EXECUTION COPY

| US8325982 | US12/460818 | Method and system for detecting and tracking shopping carts from videos | 7/23/2009 |
| --- | --- | --- | --- |
| US8351647 | US12/002398 | Automatic detection and aggregation of demographics and behavior of people | 12/17/2007 |
| US8379937 | US12/286233 | Method and system for robust human ethnicity recognition using image feature-based probabilistic graphical models | 9/29/2008 |
| US8412656 | US12/583080 | Method and system for building a consumer decision tree in a hierarchical decision tree structure based on in-store behavior analysis | 8/13/2009 |
| US8433612 | US12/079624 | Method and system for measuring packaging effectiveness using video-based analysis of in-store shopper response | 3/27/2008 |
| US8520906 | US12/283595 | Method and system for age estimation based on relative ages of pairwise facial images of people | 9/12/2008 |
| US8577705 | US12/317918 | Method and system for rating the role of a product category in the performance of a store area | 12/30/2008 |
| US8812344 | US12/459283 | Method and system for determining the impact of crowding on retail performance | 6/29/2009 |
| US9161084 | US13/998392 | Method and system for media audience measurement by viewership extrapolation based on site, display, and crowd characterization | 10/29/2013 |
| US9317785 | US14/257816 | Method and system for determining ethnicity category of facial images based on multi-level primary and auxiliary classifiers | 4/21/2014 |
| US9740977 | US12/455295 | Method and system for recognizing the intentions of shoppers in retail aisles based on their trajectories | 5/29/2009 |
| US9747497 | US12/386655 | Method and system for rating in-store media elements | 4/21/2009 |
| US10083358 | US15/220052 | Association of unique person to point-of-sale transaction data | 7/26/2016 |
| US10198625 | US15/081859 | Association of unique person to a mobile device using repeat face image matching | 3/26/2016 |
| US10217120 | US14/692446 | Method and system for in-store shopper behavior analysis with multi-modal sensor fusion | 4/21/2015 |

10

CONFIDENTIAL EXECUTION COPY

| US10262331 | US15/011442 | Cross-channel in-store shopper behavior analysis | 1/29/2016 |
| US10296936 | US12/283606 | Method and system for measuring effectiveness of a marketing campaign on digital signage | 9/12/2008 |
| US10354262 | US15/171873 | Brand-switching analysis using longitudinal tracking of at-shelf shopper behavior | 6/2/2016 |
| US10387896 | US15/140283 | At-shelf brand strength tracking and decision analytics | 4/27/2016 |
| US10614294 | US11/818554 | Method and system for measuring viewership of people for displayed object | 6/14/2007 |
| US10614436 | US15/247324 | Association of mobile device to retail transaction | 8/25/2016 |
| US10713670 | US14/986386 | Method and system for finding correspondence between point-of-sale data and customer behavior data | 12/31/2015 |
| US10963893 | US15/051629 | Personalized decision tree based on in-store behavior analysis | 2/23/2016 |