FILED
5/12/21 3:00 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| In re: | : | Case No.: | 20-20425-GLT |
| | : | Chapter: | 11 |
| VideoMining Corporation | : | | |
| | : | | |
| | : | Date: | 5/12/2021 |
| *Debtor(s)*. | : | Time: | 11:30 |

## PROCEEDING MEMO

**MATTER:**  # 274 Con't Emergency Motion To (1) Authorize Continued Use of Cash Collateral; (2) Extend Maturity Date of the DIP Loan; and (3) Approve Bridge Loan

# 284 - Con't Status Conference

# 288 Expedited Motion to Approve Patent License Agreement
[Response due 5/11/21 by 12 p.m.]

**APPEARANCES**:
- Debtor: Ryan Cooney (Christopher Bossi - Financial Consultant; Rajeev Sharma - CEO)
- Enterprise: Thomas Maxson
- White Oak: Jeffrey Rosenthal, George Snyder (Kysha Pierre-Louis - Head of Gov't Contracting and Finance)
- Amazon: John Elovson

**NOTES:** (11:38)

Cooney: Re: the Amazon deal, this would be a fully paid up, non-exclusive license. $325,000 paid within 30 days. The license does not impact the debtor pursuing a sale of the IP assets. After a commission to the patent broker, the estate would gain $270,000 and it would go to Enterprise Bank. Amazon would be released of any infringement claims the debtor may have against it.

Court: Were there any infringement claims?

Elovson: No, but it's typical for the path to be cleared.

Cooney: I think re: value, this transaction/agreement was firmly recommended by our patent broker. Even if there are infringement claims, the debtor wouldn't have the capacity to pursue them.

Court: Even if there were claims, it's not necessarily problematic to have them released if the sale price is commensurate with the value. You're not telling me there are identified claims?

Cooney: There were no identified claims, and we discussed the issue again after the petition date and there were none identified then either. Part of the status report was on the agreement with White Oak, which wasn't reached until this morning. AGSM formed an entity to purchase the assets for $650,000 (a substantial increase) predicated on a controlled sales process and a resolution of any claims by White Oak against Mr. Sharma. The issue that we're concerned with is - because AGSM is a venture capital fund they would have to do a capital raise before closing which would take 90 days. AGSM suggests that they make a $100,000 non-refundable deposit that will go into escrow in order to get us to closing. As of this morning we have an agreement with White Oak and Enterprise, subject to a formalized agreement. We also settled the dischargeability complaint against Mr. Sharma in his personal bankruptcy case. From here, we need to figure out cash collateral and the extension of the DIP loan maturity date.

Court: What are we talking about re: cash flow during the period until closing, and how much might be needed from the DIP Loan or the backstop during this time? The postpetition claims are showing to be $83,162.84.

Cooney: Today is May 12, so the budget doesn't reflect the 12 days of May payroll. The budget doesn't reflect any utilization of the $100,000, and we're hoping we'll be able to get through without having to use any of the back stop.

Rosenthal: We're supportive of the plan at this time, subject to formalizing the agreement we have in principle.

Maxson: We approve of the broad strokes. We're taking a look at the budget and we have some concerns with the application of payments, but we like the direction the debtor is going and the increase in the offer.

Court: I think conditional approval would be sufficient to get us through to the 26th million the parties can submit an order that would get us to a closing date on approx. Aug. 11 or 13. I do not want to see any erosion in the estate from this point forward. I will provide you with a ruling on the record giving you conditional approval for the next two weeks. If you provide a two-week stipulation I would review it and then submit another stipulation that carries through the closing date.

Cooney: If your conditional approval on the record is sufficient, I think it makes sense for us to focus on the long-term stipulation as opposed to one covering the next two weeks.

Corut: Would that be satisfactory for everyone?

Everyone: Yes.

Court: The debtor's use of cash collateral is approved through May 26 along with an extension of the DIP loan maturity date to May 26.

**OUTCOME:**

1. Debtor's *Emergency Motion To (1) Authorize Continued Use of Cash Collateral; (2) Extend Maturity Date of the DIP Loan; and (3) Approve Bridge Loan* [Dkt. No. 274] is further GRANTED as provided herein. For the reasons stated on the record, the debtor is authorized to use cash collateral through May 26, 2021, in accordance with the budget submitted during the May 12, 2021 hearing at Dkt. No. 292. Further, the maturity date for the DIP loan is extended through May 26, 2021. On or before May 25, 2021 at 4 p.m., the parties are to submit a proposed form of order under a Certification of Counsel that addresses the use of cash collateral and an extension of the DIP loan, together with other terms and conditions, for the Debtor's continued operation through a projected closing date of August 13, 2021 for the sale of the Debtor's remaining assets. A continued status conference on the *Cash Collateral Motion* will be held on May 26, 2021 at 1:30 p.m., only to the extent necessary. [Text Order to Issue]

2. Court's *Continued Status Conference* [Dkt. No. 284] is CONCLUDED [Text Order to Issue]

3. Debtor's *Expedited Motion to Approve Patent License Agreement* [Dkt. No. 288] is GRANTED [HT to Issue Proposed Order at Dkt. No. 288-3]

**DATED:** 5/12/2021