IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                :        BANKR. NO. 20-20425

VIDEOMINING CORPORATION   :        CHAPTER 11

OPPOSITION OF LEAF CAPITAL FUNDING TO
DEBTOR'S MOTION TO SELL PERSONALTY AND
INTELLECTUAL PROPERTY ASSETS OF DEBTOR FREE AND CLEAR OF LIENS

LEAF Capital Funding, LLC ("LEAF"), by and through its counsel, Spector Gadon Rosen Vinci P.C., hereby files an objection to the Motion to Sell Personalty and Intellectual Property Assets if the Debtor free and clear of liens ("Sale Motion") and states as follows:

1. LEAF filed a timely Proof of Claim in this bankruptcy proceeding indicating that it had financed the purchase of certain sensors and other equipment for VideoMining Corporation ("Debtor"). *See* Exhibit "A" attached hereto, a true and correct copy of the Proof of Claim "LEAF POC").

2. Attached to the LEAF POC are the Finance Agreement, Collateral Description, Restructuring Agreement, and other documents to support this claim. Also attached is an itemization demonstrating that LEAF is owed $152,967.18.

3. Per Debtor's Sale, Debtor hopes to sell all of the assets listed therein free and clear of liens (with liens attaching to the proceeds of the sale) and then pay to two (2) other creditors, Enterprise Bank and White Oak, all of the proceeds of the sale.

4. LEAF strenuously objects to the proceeds being distributed to these two (2) creditors as it has first priority over the proceeds of the sale of the particular assets which it financed pursuant to its documents.

5. Put another way, LEAF does not specifically object to the sale per se, but objects to the proceeds attributable to the collateral which supports its financing to be distributed to Enterprise Bank and White Oak.

**WHEREFORE**, LEAF respectfully objects to the distribution of the sale proceeds as outlined in Debtor's Motion to anyone except LEAF.

Respectfully submitted,

/s/ *Jonathan J. Greystone*
Matthew R. Shinell, Esquire
Jonathan J. Greystone, Esquire
PA ID 88379, 50223
Spector Gadon Rosen Vinci P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
*Attorneys for LEAF Capital Funding, LLC*

# EXHIBIT A

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

   UPS Access Point™
   THE UPS STORE
   1735 MARKET ST
   PHILADELPHIA ,PA 19103

   UPS Access Point™
   MEDICAL TOWER PHARMACY-AP488
   255 S 17TH ST
   PHILADELPHIA ,PA 19103

   UPS Access Point™
   CVS STORE # 379
   1424 CHESTNUT ST
   PHILADELPHIA ,PA 19102

FOLD HERE

---

ANITA BOYD
2674025206
LEAF COMMERCIAL CAPITAL, INC
2005 MARKET STREET
PHILADELPHIA PA 19103

SHIP TO:
CLERK'S OFFICE
US BANKRUPTCY COURT
600 GRANT STREET
5414 U.S. STEEL TOWER
PITTSBURGH PA 15219-2701

0.0 LBS    LTR    1 OF 1

PA 152 9-30

UPS NEXT DAY AIR SAVER 1P
TRACKING #: 1Z EY4 489 13 9833 0423

BILLING: P/P

Cost Center Number: 115
Shipper Name: Anita Boyd

**Fill in this information to identify the case:**

Debtor 1: VideoMining Corporation

Debtor 2: _____
(Spouse, if filing)

United States Bankruptcy Court for the: Western District of Pennsylvania

Case number: 20-20425

---

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
LEAF Capital Funding, LLC (account #100-4070868-001)
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

LEAF, c/o Legal Department
Name

2005 Market St. 14th Floor
Number    Street

Philadelphia    PA    19103
City    State    ZIP Code

Contact phone _____

Contact email _____

Where should payments to the creditor be sent? (if different)

LEAF, c/o Legal Department
Name

2005 Market St. 14th Floor
Number    Street

Philadelphia    PA    19103
City    State    ZIP Code

Contact phone (800)819-5556

Contact email aboyd@leafnow.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**
☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on ___/___/___
                                                                       MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

---

Official Form 410    Proof of Claim    page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**
☒ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $_____152,967.18_____. Does this amount include interest or other charges?
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Finance Agreement

**9. Is all or part of the claim secured?**
☐ No
☒ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☒ Other. Describe: 215 Omi Sensor 200 Multi-modal Sensors

Basis for perfection: UCC1
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ 147,576.50
Amount of the claim that is secured: $ 147,576.50
Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ 47,596.12

Annual Interest Rate (when case was filed) 7.48 %
☒ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____

**11. Is this claim subject to a right of setoff?**
☒ No
☐ Yes. Identify the property: _____

| | | |
|---|---|---|
| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. Check one: | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☒ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  07/09/2020
                  MM / DD / YYYY

*/s/ Anita J. Boyd*
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Anita | J. | Boyd |
| | First name | Middle name | Last name |
| Title | Paralegal | | |
| Company | LEAF Capital Funding, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 2005 Market Street, 14th Floor | | |
| | Number       Street | | |
| | Philadelphia | PA | 19103 |
| | City | State | ZIP Code |
| Contact phone | 267-402-5243 | Email aboyd@leafnow.com | |

Official Form 410                                       Proof of Claim                                       page 3

**⌀LEAF**
Capital Funding, LLC.

Account # 100-4070868-001

**Lessee: VideoMining Corporation**

**As of 02/04/2020, LEAF was owed the following:**

| | |
|---|---:|
| Past due payments 13 @ $ 3,661.24 | $47,596.12 |
| Payments discounted @ 3% per the contract 28.32 | $99,980.38 |
| Late charge: | $5,365.68 |
| Collection calls: | $25.00 |
| **Total due:** | **$152,967.18** |

# ⌀LEAF

## FINANCE AGREEMENT

**LENDER** LEAF Capital Funding, LLC
1720A Crete Street, Moberly, MO 65270

**BORROWER:** VideoMining Corporation
403 South Allen St, State College, PA 16801

**DATE:** June 09, 2017

**PRINCIPAL AMOUNT**¹: $149,425.00
Borrower authorizes Lender to fund the Principal Amount directly to vendors and/or other parties in satisfaction of invoices and/or amounts payable by Borrower.

**BASE TERM:** 60 MONTHS

**PERIODIC PAYMENTS:** Payments are: _X_ Monthly ___ Quarterly ___ Annual
Periodic Payments are monthly unless otherwise specified.
  60  PAYMENTS @  $3,096.13

**AMOUNT DUE AT TIME OF SIGNING THIS AGREEMENT:**
(a) Total Advance Payment(s): 0 = $0.00**
(b) A Security Deposit in the amount of: $0.00;
(c) A Documentation Fee in the amount of: $0.00.
Please provide payment in the amount of (a)+(b)+(c)=$0.00 when Borrower executes and returns this Agreement.
**If more than one month's payment is required as an Advance Payment, the additional amount will be applied on the commencement date to Periodic Payments in inverse order, starting with the last Periodic Payment.

**1. COMMENCEMENT, DUE DATES, COLLATERAL.** (a) This Agreement shall become binding on Borrower upon its execution and on Lender upon its execution. The term of this Agreement shall commence on the date Lender first disburses all or a portion of the Principal Amount (the "Commencement Date") and the Base Term shall commence on the date specified by Lender in the month following the Commencement Date (the "Base Term Commencement Date") and shall continue until all obligations of the Borrower hereunder have been fully performed. The first Periodic Payment shall be due thirty (30) days after the Base Term Commencement Date, or as otherwise invoiced by Lender (the "First Due Date"), with the remaining Periodic Payments due on the same day of each subsequent payment period until paid in full. Lender may charge Borrower a portion of one Periodic Payment for the period from the Commencement Date until the Base Term Commencement Date (the "Interim Payment"). The Interim Payment shall be due and payable as invoiced by Lender.

(b) To secure the prompt repayment of (i) the Periodic Payments, Interim Payment and all other amounts due hereunder (the "Payments"), and (ii) all other obligations of Borrower to Lender, whether now existing or hereafter arising (collectively, the "Indebtedness"), Borrower hereby grants to Lender a first priority security interest in the assets described in Exhibit A attached hereto, whether now owned or hereafter acquired, together with all accessories, accessions, attachments thereto, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral"). Borrower covenants to keep the Collateral free and clear of all liens and encumbrances, except for Lender's security interest therein. Borrower authorizes Lender to insert and/or correct serial numbers and any other relevant information which identifies the Collateral. Borrower authorizes Lender to file UCC financing statements. Lender may from time to time require a site inspection to verify the condition and/or existence of the Collateral and Borrower shall reimburse Lender's reasonable costs as invoiced.

**2. PAYMENTS.** Borrower's obligation to pay the Payments shall be absolute and unconditional and is not subject to any termination, cancelation, abatement, set-off, defense or counterclaim for any reason whatsoever. Borrower may not elect to prepay or otherwise terminate this Agreement without the prior written consent of Lender. If Borrower is more than one person or entity, all of Borrower's obligations hereunder shall be joint and several. All Payments shall be made to Lender as Lender may direct in writing without notice or demand therefor. Until all Indebtedness shall have been paid in full, the security interest in the Collateral granted hereby shall remain in full force and effect. Whenever any Payment is not made by Borrower within three (3) days of when due, Borrower agrees to pay to Lender an amount equal to ten percent (10%) of such delayed Payment, but only to the extent permitted by law. Except as specifically provided herein, Borrower may not prepay any portion of this Agreement. Nothing herein shall authorize or permit the payment of interest by Borrower where the same would be prohibited by any applicable law. In any such event, this Agreement shall automatically be deemed amended to reduce interest charges to an amount equal to the maximum permitted by law. Unless specifically financed hereunder and included in the Principal Amount, Payments do not include taxes allocable to the Products, as defined in Section 8. Borrower shall file and pay when due any and all taxes and government fees, charges, penalties and interest related to the Products this Agreement and the Payments and shall immediately reimburse Lender for all such amounts paid by Lender on behalf of Borrower. Each check by phone payment made by Borrower to Lender shall be subject to a fee of $25.00 and any check returned without payment shall be subject to a $35.00 charge. Borrower agrees to pay Lender a documentation fee equal to the amount specified above, or if not so specified, the greater of either $250.00 or 0.5% of the total of the Principal Amount, which amount shall be invoiced and payable along with the first Payment hereunder. If Borrower requests administrative services from Lender, Borrower shall pay Lender's then applicable fee, if any, for such services.

**3. ASSIGNMENT.** BORROWER MAY NOT ASSIGN THIS AGREEMENT OR THE RIGHTS AND/OR OBLIGATIONS HEREUNDER, NOR SHALL THE BORROWER LEASE OR LEND THE COLLATERAL OR SUBMIT IT TO BE USED BY ANYONE OTHER THAN BORROWER'S EMPLOYEES WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. Lender may at any time assign all or part of any interest in this Agreement and moneys to become due to Lender hereunder and the Collateral. In such an event, all of Lender's rights, powers and privileges contained herein so assigned shall inure to the benefit of and may be exercised by or on behalf of such assignee, but the assignee shall not be liable for or be required to perform any of Lender's obligations to Borrower. The right of the assignee to the payment of assigned Payments and performance of all Borrower's obligations and the right to exercise any and all of Lender's rights hereunder shall not be subject to any defense, counterclaim or set-off which the Borrower may have or assert against the Lender, and the Borrower hereby agrees that it will not assert any such defenses, set-offs, counterclaims and claims against the assignee.

**4. DEFAULT REMEDIES.** A default hereunder shall occur if Borrower or any guarantor: (i) does not pay Lender any amount within ten (10) days of its due date, (ii) breaches any terms of this Agreement or any guaranty, (iii) shall commence or be subject to any action for relief under any existing or future law of any jurisdiction, relating to bankruptcy, insolvency, reorganization or relief of debtors; (iv) suffer a material adverse change to its financial condition or operations; or (v) defaults with respect to any other indebtedness to Lender or an affiliate of Lender for borrowed money, lease installment sale or any guaranty obligation. Upon the occurrence of any default, Lender may exercise any one or more of the following remedies: (a) declare the Termination Amount, as defined in Section 5 hereof, to be immediately due and payable without notice or demand, (b) charge Borrower interest on all moneys due Lender at the rate of 1.5% per month or the maximum rate permitted by law, whichever is less, from the date of default until paid in full, (c) require Borrower to assemble all Collateral at Borrower's expense and Lender may take possession of any or all items of Collateral, without demand or notice, wherever same may be located, and (d) without liability to Borrower, cause all data and other information stored on hard drives and other media storage devices to be securely overwritten and destroyed beyond recovery (such process being referred to as "Data Erasure"). Borrower hereby waives any and all damages occasioned by such retaking. Lender may, at its option, use, ship, store or repair such Collateral and shall sell, lease or otherwise dispose of any such Collateral. In the event Lender disposes of the Collateral, Lender shall give Borrower credit for any sums received by Lender from the sale of the Collateral after deduction of the expenses of sale. Borrower shall also be liable for and shall pay to Lender (i) all expenses incurred by Lender in connection with the enforcement of any of Lender's remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Collateral, and (ii) Lender's reasonable attorney's fees and expenses. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy hereunder or at law. No failure or delay on the part of the Lender to exercise any right or remedy shall operate as a waiver thereof.

**5. TERMINATION AMOUNT.** In the case of a required prepayment pursuant to Sections 4 or 6, Borrower shall pay Lender an amount equal to: (a) all amounts then due, including but not limited to, any due but not yet paid Periodic Payments, Interim Payment, late charges, and other amounts due as of the date of prepayment (the "Current Balance"); plus (b) the remaining Periodic Payments, discounted to the date of payment by Borrower at an annual rate equal to the lesser of three percent (3%) or the rate then available for United States Treasury obligations having an average life equal to one half of the remaining Base Term (collectively, the "Termination Amount").

**6. RISK OF LOSS; INSURANCE.** Borrower assumes and shall bear the entire risk of loss or damage to the Collateral from every cause whatsoever, whether or not insured. No such loss or damage shall relieve Borrower from any obligation under this Agreement. Until all of the Indebtedness has been paid in full, Borrower shall keep the Collateral insured against all risks of loss or damage from every cause whatsoever, in an amount not less than the Termination Amount. Lender shall be named loss payee. If Borrower does not provide proof of such insurance, Lender may secure insurance on the Collateral to cover its interests (and only its interests). If Lender obtains such insurance, Borrower will pay Lender an additional amount for the cost of such insurance and an administrative fee, the cost of which may be more than the cost to obtain Borrower's own insurance and on which Lender may make a profit.

**7. INDEMNITY.** Borrower agrees to indemnify and hold harmless Lender, and its agents, employees and assigns from and against any liability, damage or loss of any nature (including attorneys' fees) arising out of, or resulting from this Agreement and claims of any nature arising out of the selection, purchase, delivery, acceptance, rejection, use, operation, ownership, return or disposition of the Collateral, or Data Erasure.

**8. WAIVERS.** Borrower hereby acknowledges and agrees that with respect to any products being financed with the proceeds of the Principal Amount hereof ("Products"): Borrower has selected the Products and the vendor thereof; LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND, LENDER IS NOT RESPONSIBLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OR ANY INJURY TO BORROWER OR ANY THIRD PARTY OR PROPERTY CAUSED BY THE PRODUCTS. Borrower shall continue to pay and perform its obligations hereunder notwithstanding any breach by the manufacturer or supplier of the Products.

**9. MISCELLANEOUS.** Security Deposit may be applied by Lender at its discretion to cure any default hereunder. Upon satisfaction of all of the Indebtedness, Lender shall return any unapplied portion of the Security Deposit without interest. This Agreement contains the entire agreement between the parties hereto relating to the subject matter hereof. No agreements or understandings shall be binding on the parties hereto unless set forth in writing and signed by the parties. Time is of the essence in this Agreement. Any provision of this Agreement held unenforceable in any jurisdiction shall be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement. This Agreement shall be binding when accepted by Lender and shall be governed by the laws of Pennsylvania. Borrower hereby consents to and agrees that personal jurisdiction over Borrower and subject matter jurisdiction over the Collateral shall be with the state and federal courts located in Philadelphia, Pennsylvania. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION BROUGHT IN CONNECTION WITH THIS AGREEMENT. A photocopy, printed electronic image or facsimile of this Agreement and/or any related document that includes copies of the signatures of the parties hereto shall be legally admissible and shall be treated as an original document and proof of the agreement between the parties.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.

**BORROWER:** VideoMining Corporation
BY: _[signature]_
PRINT NAME: Rajeev Sharma
TITLE: CEO
E-MAIL ADDRESS: rsharma@VideoMining.com
TAX ID NUMBER: 25-105-3162

**LEAF CAPITAL FUNDING, LLC**
BY: _[signature]_
PRINT NAME: John Anderson
TITLE: Operations Manager    6/12/2017

Page 1 of 2

F101 1-10-2017 App=407086

# EXHIBIT A
# TO
# FINANCE AGREEMENT

## Collateral Description

| QNT | Equipment Description | New/Used | Make | Model | Serial Number |
|---|---|---|---|---|---|
| | **Location:** 403 South Allen Street #2, State College, PA 16801 | | | | |
| 215 | OmniSensr 200 Multi-modal Sensor | New | OmniSensor | | |

The Collateral includes, but is not limited to the foregoing.

Borrower: VideoMining Corporation

✓ BY: _[signature]_
✓ PRINT NAME: Rajeev Sharma
✓ TITLE: CEO
✓ DATE: 6/9/2017

LEAF Capital Funding, LLC

BY: _[signature]_
PRINT NAME: ____
TITLE: ____
DATE: 6/12/2017

# RESTRUCTURE AGREEMENT

### 100-4070868-001

This Restructure Agreement (this "Restructure Agreement") dated as of August 22, 2018 is executed by VideoMining Corporation ("Debtor") whose principal office (or residence) address is 403 South Allen St, State College, PA 16801 and LEAF Capital Funding, LLC ("Secured Party") whose address is 2005 Market Street, 14th Floor, Philadelphia, PA 19103 and is consented to by each guarantor whose signature appears on the signature page hereto (each, a "Guarantor").

WHEREAS, all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, including all indebtedness, obligations and liabilities arising out of or relating to (1) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations, for the account of and for the benefit of Debtor, (2) notes, security agreements, obligation agreements, rental agreements, installment sales contracts, equipment finance agreements, guaranties, and any other present or future obligation between Debtor and Secured Party, and (3) expenses, charges, commissions, fees, and interest owing by Debtor to Secured Party, and all extensions, restructures, renewals and modifications of any of the foregoing shall be collectively referred to herein as the "Obligations;"

WHEREAS, Debtor and Secured Party are party to an agreement entered into prior to the date hereof (the "Original Agreement") whereby Debtor has certain Obligations to Secured Party (or its predecessor in interest) and each guarantor has guaranteed the Obligations to Secured Party (or its predecessor in interest) pursuant to a guaranty (each, a "Guaranty"); and

WHEREAS, Debtor has either failed to meet, or has concerns that it may fail to meet, some or all of its Obligations pursuant to the Original Agreement; and thus Secured Party has agreed to enter into this Restructure Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, and intending to be legally bound, the parties hereby agree as follows:

Debtor hereby acknowledges that Debtor's Obligations to Secured Party under the Original Agreement are non-cancelable, absolute, unconditional, and not subject to abatement, reduction, set-off or defense of any kind. Debtor and each Guarantor hereby ratify and confirm the validity and enforceability of the original terms of the Original Agreement and all agreements relating thereto and each Guaranty.

Debtor is currently not in compliance with the terms of the Original Agreement and Secured Party is entitled to exercise any and all rights and remedies thereunder and/or at law. Notwithstanding the foregoing, in consideration of, and in reliance upon, Debtor's agreement with the terms of this Restructure Agreement, and the payment by Debtor of $300.00 as a non-refundable and fully earned restructuring fee, Secured Party is willing to forebear in the exercise of its rights and remedies, but does not waive any such rights and remedies. Any breach of the terms of this Restructure Agreement or the terms of the Original Agreement shall constitute a default, and Secured Party reserves its right to require strict compliance with the terms hereof and thereof

To secure the payment and performance of the Obligations, Debtor does hereby confirm any security interests previously granted to Secured Party pursuant to the Original Agreement and further assign, transfer, pledge and grant to Secured Party a security interest/lien in and upon all property listed on any Schedule to the Original Agreement as well as any additional collateral set forth on Schedule A hereto, and in all goods, inventory, equipment, accounts, accounts receivables, chattel paper, documents, intellectual property, investment property, deposit accounts, fixtures, general intangibles, and any other property, wherever located, now or hereafter acquired or belonging to Debtor or in which Debtor has any interest, and in all the proceeds, insurance proceeds, substitutions, replacement parts, additions and the accessions of and to all of the foregoing (collectively, the "Collateral"). Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney in fact to sign, and deliver all such assignments, certificates, titles, financing statements and all other documents necessary to perfect, protect, continue and enforce the Secured Party's interest in the Collateral and to file the necessary financing statements to record that interest in the appropriate locations.

In consideration of the foregoing Debtor and Secured Party hereby agree, (and Guarantor consents) to modify the Obligations as follows: as of the date hereof, there shall be Forty Seven (47) monthly payments (plus any and all applicable taxes) payable as follows: Six (6) monthly payments of One thousand Two Hundred and 00/100 Dollars ($1,200.00) followed by Forty One (41) monthly payments of Three Thousand Six Hundred Sixty One and 24/100 Dollars ($3,661.24). Debtor must comply with all of its Obligations. In addition to the first monthly payment and concurrent with the signing of this Restructure Agreement, the Debtor agrees to make the payment of $1,238.44 for late payment fees incurred to date. The term of the Original Agreement will remain the same provided no Event of Default has occurred and remains uncured at such time.

Debtor and each Guarantor hereby releases and forever discharges Secured Party and its employees, agents, representatives, consultants, attorneys, fiduciaries, servants, officers, directors, partners, predecessors, successors and assigns, subsidiary corporations, parent corporations, affiliates and related corporate divisions (all of the foregoing hereinafter called the "Released Parties"), from any and all actions and causes of action, judgments, executions, suits, debts, claims, demands, liabilities, obligations, damages and expenses of any and every character, known or unknown, direct and/or indirect, at law or in equity, or whatsoever kind or nature, whether heretofore or hereafter arising, for or because of any matter or things done, omitted or suffered to be done by any of the Released Parties prior to and including the date of execution hereof, and in any way directly or indirectly arising out of or in any way connected to the Original Agreement, this Restructure Agreement and/or the Obligations.

This Restructure Agreement supplements and amends the Obligations only to the extent and in the manner set forth, and in all other respects, the Obligations will remain in full force and effect. Time is of the essence in the performance of all of Debtor's Obligations and strict compliance with the terms of this Restructure Agreement is required. This Restructure Agreement shall be binding upon and be for the benefit of the parties hereto and their permitted successors and assigns. A facsimile or e-mail version of this Restructure Agreement containing the signature of a party shall be deemed binding upon such party and this Restructure Agreement may be executed in any number of counterparts, which when taken as a whole, shall be binding upon each party executing any such counterpart.

IN WITNESS WHEREOF, the parties have caused this Restructure Agreement to be executed by their duly authorized representative as of the date first above written.

Debtor: VideoMining Corporation

By: _Sharma_

Name: RAJEEV SHARMA

Its: CEO

Guarantor: Rajeev Sharma

Signature: _Sharma_

LEAF Capital Funding, LLC

By: _JG Beard_

Name: John Beard

Its: SVP - RISK

2



**IMPORTER • SALES SHOWROOM (100,000 Sq. Ft.) • SERVICE CENTER**
CALL: 614-464-4376    sales@industrialmachinery.com    Columbus, Ohio 43209
FAX: 614-464-0129    SINCE 1936    500 N. Stanwood Rd

# INVOICE

No.: **14526**
DATE: 6/12/17
Purchase Order No.:

**TERMS:**

**Check with Order**

**REMIT TO:** 500 N. Stanwood Rd.
Columbus, OH  43209

**SOLD TO:**

Video Mining Corporation
403 S. Allen Street, Suite 101
State College, PA 16801

**SHIP TO:**

Video Mining Corporation
403 S. Allen Street, Suite 101
State College, PA 16801

| QTY | DESCRIPTION | PRICE |
|---|---|---|
| 215 | Amnisenr v1.2 Assembly w/Video, Wifi & Bluetooth @ ............ | |

**NOTE:** Title to Equipment does not "Transfer" Until Invoice is Paid "In Full"
There is a $ 50.00 Return Check Fee
Office & Warehouse: 500 N. Stanwood Rd • Columbus, Ohio 43209

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)  20875 - LEAF Commercial

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

59278672

DEDE

File with: Secretary of State, DE

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 20173855936
File Date : 12-Jun-2017

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: VIDEOMINING CORPORATION

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 403 South Allen Street, Suite 2 | State College | PA | 16801 | USA |

2. DEBTOR'S NAME: (blank)

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):

3a. ORGANIZATION'S NAME: LEAF CAPITAL FUNDING, LLC AND/OR ITS ASSIGNS

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2005 Market Street, 14th Floor | Philadelphia | PA | 19103 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The following items of equipment:

[215 OmniSensr 200 multi-modal Sensors]

In addition, the collateral also shall include all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins).

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust ☐ being administered by a Decedent's Personal Representative

6a. ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
6b. ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
59278672    407086

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## CERTIFICATE OF SERVICE

I, Jonathan J. Greystone, Esquire, hereby certify that I caused a true and correct copy of the foregoing Opposition of Leaf Capital Funding to Debtor's Motion to Sell Personalty and Intellectual Property Assets of Debtor Free and Clear of Liens to be served this 28th day of June, 2021, by e-filing with the Court.

/s/ Jonathan J. Greystone
Jonathan J. Greystone