EXECUTION VERSION

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (this "**Settlement Agreement**") dated as of August /**2**, 2021, (the "**Settlement Date**") is entered into by and among **VIDEOMINING CORPORATION,** a corporation organized under the laws of the State of Delaware and a Debtor-in-Possession (the "**Company**"), **RAJEEV SHARMA,** an individual and a Chapter 7 Debtor ("**Rajeev**") and **VISHNU SHARMA,** an individual and a Chapter 7 Debtor ("**Vishnu**" and together with Rajeev, the "**Sharmas**", and the Sharmas together with the Company are individually and collectively referred to herein as the "**Debtors**") and **WHITE OAK BUSINESS CAPITAL, INC.** (formerly known as Federal National Payables, Inc., and formerly doing business as Federal National Commercial Credit) **("White Oak"),** a Delaware corporation.

### W I T N E S S E T H:

WHEREAS, the Debtors and White Oak have entered into financing arrangements pursuant to which White Oak has made loans and other financial accommodations to the Company;

WHEREAS, the Company filed for protection under Chapter 11 of the Bankruptcy Code (the "**Company Bankruptcy Case**");

WHEREAS, the Sharmas filed for protection under Chapter 7 of the Bankruptcy Code (the "**Sharmas Bankruptcy Case**");

WHEREAS, White Oak has secured claims against the Company in the Company Bankruptcy Case;

WHEREAS, White Oak has filed a complaint against Rajeev in the Sharmas Bankruptcy Case to contest the dischargeability of Rajeev's obligations to White Oak;

WHEREAS, the Company has entered into an asset purchase agreement with VMC ACQ., LLC for all of the assets of the Company, including without limitation its patents, but excluding the Company's cash and accounts receivable (the "**VMC Transaction**");

WHEREAS, the Company entered into a license agreement with Amazon Technologies, Inc. ("**Amazon**") pursuant to which the Company granted Amazon a non-exclusive license in its patents (the "**Amazon Transaction**", and collectively with the VMC Transaction, the "**Sales**"); and

WHEREAS, the Debtors have requested White Oak enter into this Settlement Agreement to resolve all disputes between the Debtors and White Oak, to have White Oak support the Sales, and agree upon payment terms for satisfaction of the Debtors' obligations to White Oak and White Oak has agreed to such request, subject to the terms of this Settlement Agreement.

NOW, THEREFORE, in consideration of the foregoing, and the respective agreements, warranties and covenants contained herein, the parties hereto agree, covenant and warrant as follows:

# EXHIBIT A

SECTION 1.   DEFINITIONS.   In addition to the terms defined hereinabove, as used herein, the following terms shall have the respective meanings given to them below:

(a)   "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Pennsylvania or such other court having jurisdiction over the Debtors.

(b)   "**Budget**" shall mean the budget of the Company annexed to this Settlement Agreement as Exhibit A and made a part hereto, together with any subsequent or amended budget(s) thereto delivered to White Oak, and acceptable to White Oak, that will evidence the Company's ability to have sufficient cash flow to operate in the ordinary course of business until the closing of the sale to VMC.

(c)   "**Condo Mortgage**" means the Open-End Mortgage dated on or about the Settlement Date executed by the Sharmas and evidencing a lien on the Condo Property.

(d)   "**Condo Property**" means the real property commonly known and designated as 403 South Allen Street, Suite 101, State College, Pennsylvania 16801.

(e)   "**Confession of Judgment**" means the Confession of Judgment executed by Rajeev and delivered to White Oak in the form annexed hereto as Exhibit B and made a part hereof.

(f)   "**DACA**" means the Deposit Account Control Agreement by and among Enterprise Bank, as the depository, Rajeev, as the customer, and White Oak, as the Secured Party, and Enterprise Bank has provided White Oak with view access to the deposit account in which the DIP Deposit is being held. The form DACA is annexed hereto as Exhibit C and made a part hereof.

(g)   "**DIP Deposit**" means One Hundred Twenty Five Thousand Dollars ($125,000) being held by Enterprise Bank as collateral for the DIP Loan extended and which will be subject to the DACA.

(h)   "**DIP Loan**" means the Debtor-in-Possession Loan extended by Enterprise Bank to the Company.

(i)   "**Enterprise Bank**" means a bank formed under the laws of the Commonwealth of Pennsylvania, having its principal offices at 4091 Mount Royal Boulevard, Allison Park, PA 15101.

(j)   "**Excess Proceeds**" means, if there is competitive bidding at the hearing on the sale to VMC, an amount equal to (a) the amount of the sale price received at the hearing on the sale to VMC in excess of Six Hundred Fifty Thousand Dollars ($650,000), less (b) any increase in the commissions due and payable as a result of the increased purchase price; provided however, if the net of (a) less (b) is less than Zero Dollars ($0), then the Excess Proceeds shall equal Zero Dollars ($0).

(k)   "**Note**" means the promissory note in the form of Exhibit D annexed hereto and made a part hereof.

(l)   "**Mortgages**" means collectively, the Residential Mortgage and the Condo

2

Mortgage the forms of which are collectively annexed hereto as Exhibit E.

(m) **"Pre-Petition Enterprise Loan"** means the obligations of the Company to Enterprise Bank that were outstanding as of the date of the filing of the Company Bankruptcy Case, plus any amounts accrued thereon in accordance with the Orders of the Bankruptcy Court.

(n) **"Properties"** means collectively, the Residential Property and the Condo Property.

(o) **"Residential Mortgage"** means the means the Open-End Mortgage dated on or about the Settlement Date executed by the Sharmas and evidencing a lien on the Condo Property.

(p) **"Residential Property"** means the real property commonly known and designated as 2391 Shagbark Court, State College, Pennsylvania 16803.

(xvi) **"Sale Order"** means a final, non-appealable order issued by the Bankruptcy Court authorizing the sale of all or substantially all of the assets of the Company to VMC upon terms and conditions acceptable to WOBC.

(q) **"Settlement Amount"** means Six Hundred Fifty Thousand Dollars ($650,000).

(r) **"Sources and Uses"** means the Debtors' good faith estimate of the sources available to the Debtors for the amounts to be used to make the payments due to WOBC under the Note.

(s) **"Termination Events"** the events described in Section 6 of this Settlement Agreement.

(t) **"VMC"** means VMC ACQ., LLC.

SECTION 2.   SETTLEMENT.

2.1   As of the Settlement Date the Debtors are indebted to White Oak in the amount of $1,290,350.00. The Debtors have agreed to pay and White Oak has agreed to accept the Settlement Amount in full satisfaction of the Debtors' obligations to White Oak.  The Settlement Amount shall be evidenced by the Note and shall be paid as follows:

(a) Simultaneous with the closing of the sale to VMC or another purchaser as a result of competitive bidding at the hearing on the sale to VMC, the Debtors shall pay White Oak Three Hundred Thousand Dollars ($300,000) plus the Excess Proceeds (the "Subsection (a) Payment Amount") by wire transfer to the wire instructions set forth on Exhibit F annexed hereto and made a part hereof;

(b) If, after the payment of the Subsection (a) Payment Amount there is still an outstanding balance due under the Note, immediately upon the full payment and satisfaction of the DIP Loan which shall occur no later than 90 days after the entry of the Sale Order, Enterprise Bank shall release the DIP Deposit, which shall be paid by Enterprise Bank to White Oak pursuant to the terms of the DACA by wire transfer to the wire instructions set forth on Exhibit D annexed

3

hereto and made a part hereof in an amount equal to the lesser of (a) the balance due under the Note after the Subsection (a) Payment Amount and (b) One Hundred Twenty Five Thousand Dollars ($125,000) (the "Subsection (b) Payment Amount"). In the event such release by Enterprise Bank is not made within such 90 day period, the Debtors shall pay White Oak an amount equal to the Subsection (b) Payment Amount. In the event the amount of the DIP Deposit released by Enterprise Bank and paid to White Oak is less than the Subsection (b) Payment Amount, Rajeev shall simultaneously pay White Oak an amount equal to the difference between the Subsection (b) Payment Amount and the amount paid by Enterprise Bank to White Oak by wire transfer to the wire instructions set forth on Exhibit F annexed hereto and made a part hereof;

(c)    If, after the payment of the Subsection (a) Payment Amount and if, after the payment of the Subsection (b) Payment Amount there is still an outstanding balance due under the Note, commencing on the 1st day of the month following the closing of the sale to VMC or another purchaser as a result of competitive bidding at the hearing on the sale to VMC, and on the first day of each of the next 59 months thereafter (the "**Payment Period**") Rajeev shall pay to White Oak monthly payments each in an amount equal to Three Thousand Seven Hundred Fifty Dollars ($3,750). Any Excess Proceeds paid to White Oak that were not applied to the Subsection (b) Payment Amount and any additional payments made by Rajeev during the Payment Period shall be first applied to the last month of the Payment Period and next to the 2nd to last month of the Payment period and so forth, such that the effect of any additional payments shall be to reduce the length of the Payment Period.

2.2    To secure the payment of all obligations and liabilities of Debtors to White Oak under the Note and this Settlement Agreement:

(a)    The Debtors hereby grant to White Oak a security interest in all deposits and accounts maintained by the Debtors with Enterprise Bank that secure the DIP Loan, in an amount not less than One Hundred Twenty Five Thousand Dollars ($125,000) and White Oak shall be granted control over the DIP Deposit, subject to the lien of Enterprise Bank to secure the DIP Loan, as set forth in the DACA.

(b)    The Sharmas shall grant White Oak liens on the Properties in the Settlement Amount as evidenced by the Mortgages, which liens shall be reduced by any payments made pursuant to Sections 2.1(a), (b) and (c). Within 15 business days of the full payment and satisfaction of the DIP Loan and the Pre-Petition Enterprise Loan, all mortgages held by Enterprise Bank on the Properties shall be discharged of record.

(c)    Rajeev shall execute and deliver the Confession of Judgment, which White Oak shall be permitted to file upon the occurrence of a Termination Event and subject to the Cure Period.

2.3    Upon the occurrence of a Termination Event, the obligations of Rajeev pursuant to the Note and the Confession of Judgment and the obligations of Vishnu pursuant to the Mortgages shall automatically increase, without any action or notice, to an amount equal to One Million Dollars ($1,000,000) minus the amount of any payments received by White Oak from the Debtors from the Settlement Date until the date of such Termination Event and the amount of the Confession of Judgement shall be for such amount. Additionally, White Oak shall be granted an

4

allowed secured claim against VideoMining and Rajeev consistent with its loan documents and the priority scheme in the Bankruptcy Code in the amount of $1,000,000 minus any payments received by White Oak from the Debtors from the Settlement Date until the date of such Termination Event.

## SECTION 3.  REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE DEBTORS.

The Debtors represent, warrant and covenant with and to White Oak as follows (which representations, warranties and covenants are continuing and shall survive the execution and delivery hereof):

3.1  Authorization, Execution and Delivery.  This Settlement Agreement has been duly authorized, executed and delivered by all necessary action on the part of the Debtors, including without limitation, the entry of an order of the Bankruptcy Court authorizing the Debtors to execute and deliver this Settlement Agreement, and the agreements and obligations of the Debtors contained herein constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with their respective terms.

3.2  Accuracy of Existing Representations and Warranties.  All of the representations and warranties made herein by the Debtors, are true and correct in all material respects on and as of the date hereof as if made on the date hereof, except to the extent any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct in all material respects as of such date.

## SECTION 4.  TERMINATION EVENTS.

Each of the following shall constitute a "**Termination Event**" under this Settlement Agreement and subject to the Cure Period:

4.1  Any representation or warranty made by the Debtors herein shall prove to have been inaccurate in any material respect on or as of the date made;

4.2  The Debtors fail to comply with the covenants, conditions and agreements contained in this Settlement Agreement;

4.3  The commencement of any action or proceeding against White Oak by the Debtors or any entity controlled by or under common control with the Debtors;

4.4  The failure of the Company to have adequate cash flow to operate in the ordinary course until closing of the sale to VMC or another purchaser as a result of competitive bidding at the hearing on the sale to VMC;

4.5  The failure of the Sharmas to keep the Properties free of all liens, mortgages or other encumbrances of any kind or amount until the Settlement Amount has been paid in full; and

4.6  The failure of the Debtors to make any payments required under this Settlement Agreement or the Note.

5

4.7   Cure Period.  In the event of the occurrence of a Termination Event, the Debtors shall have 5 business days to cure from the receipt of a written notice detailing the Termination Event prior to White Oak exercising its rights and remedies under this Settlement Agreement, the Note, the Mortgages and the Confession of Judgment (the "**Cure Period**"). Each such communication shall be in writing and shall be deemed to have been validly served, given or delivered (a) upon the earlier of actual receipt and three (3) days after deposit in the United States Mail, registered or certified mail, return receipt requested, with proper postage prepaid, (b) upon transmission, when sent by electronic mail to rsharma@videomining.com, with a courtesy copy to rcooney@lampllaw.com, (c) one (1) Business Day after deposit with a reputable overnight courier with all charges prepaid or (d) when hand-delivered, all of which shall be addressed to the party to be notified and sent to the address or electronic mail address indicated herein.  Failure or delay in delivering copies of any such communication to anyone other than Rajeev shall in no way adversely affect the effectiveness of such communication.

SECTION 5.        Additional Agreements.

The Debtors agree as follows:

5.1   Payment of the DIP Deposit.  Pursuant to this Settlement Agreement and the DACA, Rajeev hereby grants to White Oak a lien on the DIP Deposit held by Enterprise Bank and grants White Oak control over the deposit account that the DIP Deposit is held in pursuant to the DACA, subject only to the rights of Enterprise Bank in the DIP Deposit as collateral for the DIP Loan. In consideration of White Oak entering into this Settlement Agreement, the Debtors acknowledge upon the repayment in full of the DIP Loan to Enterprise Bank, White Oak shall be entitled to immediately exercise its rights under the DACA over the DIP Deposit and the funds in such account shall be applied by White Oak to the Settlement Amount.

5.2   Sale of the Properties.  In the event the Sharmas sell, transfer or encumber the Properties in any way, they agree to pay to White Oak all proceeds up to the then remaining balance of the Settlement Amount, after the payment of normal and reasonable costs of the transaction and any liens and encumbrances having a priority over the Mortgages.

5.3   Reporting Requirements. The Sharmas agree to provide White Oak for so long as amounts are due and payable to White Oak pursuant to this Settlement Agreement and the Note:

(a)   Proof of Employment – on the first day of the second calendar month following the entry of the Sale Order and continuing on the first day of each calendar quarter thereafter until the Settlement Amount is paid in full, Rajeev shall provide White Oak with a copy of the remittance advice for his compensation from VMC. Upon any material change in Rajeev's employment or compensation, Rajeev shall immediately notify White Oak of said change;

(b)   Financial Statements – on the Closing Date and on each anniversary thereof until the Settlement Amount is paid in full, the Sharmas shall provide a personal financial statement to White Oak; and

(c)   Tax Returns – until the Settlement Amount is paid in full, within ten (10) days of filing, the Sharmas shall provide White Oak with a copy of their federal tax returns as filed with

6

the Internal Revenue Service.

White Oak agrees as follows:

5.4     Discontinuance of Adversary Proceeding.   Within 5 business days after this Settlement Agreement becomes effective, White Oak shall take all reasonable steps to discontinue the Adversary Proceeding with prejudice currently pending in the Western District of Pennsylvania at Adversary Proc. No. 21-02042-GLT.

SECTION 6.     RELEASE AND OTHER MATTERS.

6.1   White Oak Release.

(a)   In consideration of the agreements of White Oak contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Debtors, on behalf of themselves and their respective heirs, successors, assigns and other legal representatives, hereby absolutely, unconditionally and irrevocably release, remise and forever discharge White Oak, its successors and assigns, and their respective present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (White Oak and all such other parties being hereinafter referred to collectively as the "**White Oak Releasees**" and individually as a "**White Oak Releasee**"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "**Claim**" and collectively, "**Claims**") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which the Debtors or their respective successors, assigns or other legal representatives, may now or hereafter own, hold, have or claim to have against the White Oak Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the day and date of this Settlement Agreement.

(b)   The Debtors understand, acknowledge and agree that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(c)   The Debtors agree that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the release set forth above.

6.2   **Debtors' Release**.

(a)   Upon the timely payment in full of the Settlement Amount, White Oak, on behalf of itself and its successors, assigns and other legal representatives, absolutely, unconditionally and irrevocably releases, remises and forever discharges the Debtors and their respective executors, administrators, heirs, successors and assigns, present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (the Debtors and all such other parties being hereinafter referred to collectively as

the "**Debtors Releasees**" and individually as a "**Debtors Releasee**"), of and from all Claims of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which White Oak or its successors, assigns or other legal representatives, may now or hereafter own, hold, have or claim to have against the Debtor Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the day and date the Settlement Amount is paid in full; provided, however, that the foregoing release shall not extend to a Claim arising from a breach of this Settlement Agreement or the Note by the Debtors. This release shall not be effective until timely full payment and satisfaction of the Settlement Amount in accordance with the terms of this Settlement Agreement and the Note, and in the event of an occurrence of a Termination Event this Section 6.2 shall be null and void *ab initio*, subject to Section 2.3 of this Settlement Agreement.

(b)   White Oak understands, acknowledges and agrees that once the Settlement Amount has been paid in full in a timely manner the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(c)   White Oak agrees that no fact, event, circumstance, evidence or transaction which could now be asserted, or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the release set forth above.

(d)   Upon the payment in full of all amounts due by the Debtors under this Settlement Agreement and the Note and performance of all of the obligations of the Debtors under this Settlement Agreement and the Note in a timely manner, White Oak agrees to effectuate the release of the Mortgages and the DACA.

(e)   The Debtors, on behalf of themselves and their respective heirs, successors, assigns and other legal representatives, hereby absolutely, unconditionally and irrevocably covenant and agree with each White Oak Releasee that the Debtors will not sue (at law, in equity, in any regulatory proceeding or otherwise) any White Oak Releasee on the basis of any Claim released, remised and discharged pursuant to Section 6.1 above. If Debtors violate the foregoing covenant, the Debtors agree to pay, in addition to such other damages as any White Oak Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any White Oak Releasee as a result of such violation.

(f)   In the event that any of the Debtors file another petition under the United States Bankruptcy Code, reopen the Bankruptcy Cases or file under any other similar federal or state law, the Debtors unconditionally and irrevocably agree that White Oak shall be entitled, and the Debtors hereby unconditionally and irrevocably consent, to relief from the automatic stay or any other statutory restraint so as to allow White Oak to exercise its rights under this Settlement Agreement, the Note, the Mortgages, the Confession of Judgment and under applicable law. In such event, the Debtors each hereby agrees that they shall not in any manner oppose or otherwise delay any motion filed by White Oak for relief from the automatic stay or any other statutory restraint.

6.3   Reserved.

8

6.4 <u>CONDITIONS TO EFFECTIVENESS</u>.   The effectiveness of this Settlement Agreement shall be subject to the receipt by White Oak of the following:

(a)   an original (or electronic copy) of this Settlement Agreement, duly authorized, executed and delivered by the Debtors;

(b)   an original of the Note, duly authorized, executed and delivered by the Debtors;

(c)   an original (or electronic copy) of the DACA, duly authorized, executed and delivered by Rajeev and Enterprise Bank;

(d)   an original of the Mortgages duly authorized, executed, notarized and delivered by the Sharmas in recordable form;

(e)   an original of the Confession of Judgment duly authorized, executed, notarized and delivered by Rajeev in recordable form;

(f)   a filed copy of the Sale Order approved by the Bankruptcy Court, in form and substance acceptable to White Oak;

(g)   an order of the Bankruptcy Court, in form and substance acceptable to White Oak, authorizing the Company to enter into this Settlement Agreement;

(h)   an order of the Bankruptcy Court, in form and substance acceptable to White Oak, authorizing the Sharmas to enter into this Settlement Agreement, the Note, the DACA, the Mortgages and the Confession of Judgment, and a consent order that grants White Oak an exception to Rajeev's discharge, which modifies the discharge in  accordance with the terms of this Settlement Agreement;

(i)   a copy of the Budget in form and substance acceptable to White Oak;

(j)   a copy of the Sources and Uses in form and substance acceptable to White Oak;

(k)   proof, in form and substance acceptable to White Oak, that the license to Amazon Technologies, Inc. has been consummated and Enterprise Bank has received the net proceeds of not less than Two Hundred Seventy Thousand Dollars ($270,000) and such funds have been applied to reduce the obligations of the Company to Enterprise Bank; and

(l)   such other documents or information reasonably required by White Oak to implement the terms of this Settlement Agreement, the Note, the Mortgages and the Confession of Judgment.

## SECTION 7.   PROVISIONS OF GENERAL APPLICATION

7.1   <u>Binding Agreement: No Third Party Beneficiaries</u>. This Settlement Agreement shall be binding upon and inure to the benefit of White Oak and the Debtors and their respective heirs, successors and assigns.  This Settlement Agreement is solely for the benefit of White Oak, the

9

Debtors and their respective heirs, successors and assigns, and no other person or entity shall have any right, benefit, priority or interest under, or because of the existence of, this Settlement Agreement.

7.2   Further Assurances.  The parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Settlement Agreement.

7.3   Governing Law.  The validity, interpretation and enforcement of this Settlement Agreement whether in contract, tort, equity or otherwise, shall be governed by the internal laws of the Commonwealth of Pennsylvania but excluding any principles of conflicts of law or other rule of law that would cause the application of the law of any jurisdiction other than the laws of the Commonwealth of Pennsylvania.

7.4   **Waiver of Jury Trial.  To the fullest extent permitted by applicable law, The Debtors each hereby irrevocably waives any right to trial by jury of any claim, demand, action or cause of action arising under this Settlement Agreement or in any way connected with or related or incidental to the dealings of the parties hereto in respect of this Settlement Agreement or the transactions contemplated hereby, in each instance whether now existing or hereafter arising and whether in contract, tort, equity or otherwise.**

7.5   Counterparts.  This Settlement Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Settlement Agreement by electronic mail or other method of electronic transmission shall have the same force and effect as the delivery of an original executed counterpart of this Settlement Agreement.  In making proof of this Settlement Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties thereto.

SECTION 8.      **CONFESSION OF JUDGMENT**

**RAJEEV SHARMA HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR HIM, FOR HIS OBLIGATIONS TO WHITE OAK BUSINESS CAPITAL, INC. FOR THE PRINCIPAL SUM OF NOT LESS THAN SIX HUNDRED FIFTY THOUSAND DOLLARS ($650,000), OR UPON THE OCCURRENCE OF A TERMINATION EVENT AN AMOUNT EQUAL TO ONE MILLION DOLLARS ($1,000,000) MINUS ANY PAYMENTS MADE UNDER THIS SETTLEMENT AGREEMENT, ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY FOR FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING PROPERTY OF RAJEEV SHARMA, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT; AND FOR SO DOING, THE WITHIN CONFESSION OF JUDGMENT OR A COPY OF THE WITHIN CONFESSION OF JUDGMENT VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THE WITHIN CONFESSION OF JUDGMENT TO CONFESS JUDGMENT AGAINST RAJEEV**

4810-7786-0074, v. 6

A COPY OF THE WITHIN CONFESSION OF JUDGMENT VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THE WITHIN CONFESSION OF JUDGMENT TO CONFESS JUDGMENT AGAINST RAJEEV SHARMA SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THE CONFESSION OF JUDGMENT AND THIS SETTLEMENT AGREEMENT. RAJEEV SHARMA HEREBY WAIVES ANY RIGHT RAJEEV SHARMA MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT OR EXECUTION THEREOF.

RAJEEV SHARMA STATES THAT EITHER A REPRESENTATIVE OF WHITE OAK BUSINESS CAPITAL, INC. SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO RAJEEV SHARMA'S ATTENTION OR RAJEEV SHARMA HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL OF HIS CHOICE.

Rajeev Sharma
Initials                          _RS_____

[REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

4810-7786-0074, v. 6

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be duly executed and delivered by their authorized officers as of the day and year first above written.

White Oak Business Capital, Inc.

By: _____
Name: JOE SILIPIGNI
Title:   Senior Vice President

**Videomining Corporation**

By: _____
         Name: RAJEEV SHARMA
         Title:   President

_____
**Rajeev Sharma**

_____
**Vishnu Sharma**

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be duly executed and delivered by their authorized officers as of the day and year first above written.

**White Oak Business Capital, Inc.**

By: _____
Name:
Title:

**Videomining Corporation**

By: _____
Name: RAJEEV SHARMA
Title:   President

_____
**Rajeev Sharma**

_____
**Vishnu Sharma**

## EXHIBIT A

### BUDGET

See attached

**VideoMining Corporation**
**Budget to Closing - 7/23/2021 to 10/4/2021**
**Closing Date: October 4, 2021**

| Week Ending ==> | Week 75 7/16/2021 | Week 76 7/23/2021 | Week 77 7/30/2021 | Week 78 8/6/2021 | Week 79 8/13/2021 | Week 80 8/20/2021 | Week 81 8/27/2021 | Week 82 9/3/2021 | Week 83 9/10/2021 | Week 84 9/17/2021 | Week 85 9/24/2021 | Week 86 10/1/2021 | Closing 10/4/2021 | Post Closing |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning A/R | $260,690 | $259,000 | $259,000 | $294,000 | $186,000 | $201,000 | $226,500 | $226,500 | $346,500 | $346,500 | $396,500 | $511,500 | $391,500 | $391,500 |
| Sales | $0 | $259,000 | $359,000 | $294,000 | $186,000 | $201,000 | $226,500 | $226,500 | $346,500 | $346,500 | $396,500 | $511,500 | $391,500 | $391,500 |
| Collections | ($51,690) | $0 | ($55,000) | ($105,300) | ($123,500) | $25,500 | $0 | $0 | $0 | $0 | $115,000 | ($120,000) | $0 | $0 |
| Discounts Taken | $0 | $0 | $0 | ($52,700) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($591,500) |
| **Ending A/R** | $259,000 | $259,000 | $294,000 | $186,000 | $201,000 | $226,500 | $226,500 | $346,500 | $346,500 | $396,500 | $511,500 | $391,500 | $391,500 | $0 |
| **EXPENSES** | | | | | | | | | | | | | | |
| Payroll | $15,684 | $400 | $38,000 | $55,000 | $9,000 | $11,000 | $44,000 | $59,000 | $0 | $7,000 | $0 | $35,000 | $5,000 | $20,500 |
| Employee Benefits | $380 | $0 | $0 | $0 | $7,000 | $0 | $0 | $8,000 | $0 | $0 | $0 | $0 | $0 | $0 |
| Professional Services | $8,350 | $0 | $18,200 | $7,800 | $8,000 | $0 | $0 | $8,000 | $0 | $0 | $0 | $0 | $0 | $8,000 |
| Contract Services | $7,050 | $450 | $0 | $0 | $11,700 | $0 | $3,200 | $12,100 | $0 | $450 | $0 | $3,200 | $0 | $12,100 |
| Cost of Good Sold | $5,728 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,000 | $1,000 | $0 |
| General Operating Expenses | $6,587 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,000 | $1,000 | $0 |
| Facilities Expense | $8,637 | $0 | $0 | $0 | $7,600 | $0 | $0 | $7,600 | $0 | $0 | $0 | $0 | $0 | $0 |
| Insurance Expense | $0 | $0 | $0 | $0 | $1,800 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Patent Maintenance | $0 | $0 | $0 | $0 | $0 | $2,200 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Chapter 11 Legal Fees | $7,500 | $0 | $7,500 | $0 | $7,500 | $0 | $7,500 | $0 | $0 | $7,500 | $0 | $7,500 | $0 | $7,500 |
| IRS Settlement | $0 | $0 | $0 | $7,500 | $7,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| US Trustee Costs | $7,500 | $0 | $4,875 | $0 | $0 | $5,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $4,875 |
| DIP Lending Fees | $0 | $0 | $0 | $0 | $0 | $5,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| DIP Financing Interest | $9,823 | $0 | $0 | $0 | $0 | $0 | $0 | $1,500 | $0 | $0 | $0 | $0 | $1,500 | $3,000 |
| Wind Down Costs | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $20,000 |
| **TOTAL OPERATING EXPENSES** | $69,839 | $3,850 | $73,075 | $23,300 | $63,100 | $21,200 | $57,700 | $49,200 | $3,000 | $17,550 | $3,000 | $47,700 | $8,500 | $75,375 |
| **CASH REQUIREMENTS** | | | | | | | | | | | | | | |
| Beginning Cash | $18,718 | $8,569 | $4,719 | $4,144 | $144 | $60,544 | -$39,344 | $22,144 | $22,944 | $19,944 | $26,994 | $23,994 | $29,794 | $21,294 |
| Collections | $51,690 | $0 | $55,000 | $105,300 | $123,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $391,500 |
| Less: Operation Expenses | ($69,839) | ($3,850) | ($73,075) | ($23,300) | ($63,100) | ($21,200) | ($557,700) | ($49,200) | ($3,000) | ($517,950) | ($3,000) | ($547,700) | ($58,500) | ($575,975) |
| Refunds / Cobra payment / Deposits | $0 | $0 | $0 | $0 | $0 | ($521,200) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| AGSM Deposit: Draw / Repay | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($100,000) | $0 | $0 |
| DIP Borrowing / Repayment | $55,000 | $0 | $17,500 | ($86,000) | $0 | $0 | $540,500 | $50,000 | $0 | $25,000 | $0 | $539,500 | ($614,250) | ($335,000) |
| **Ending Balance** | $8,569 | $4,719 | $4,144 | $144 | $60,544 | $39,344 | $22,144 | $22,944 | $19,944 | $26,994 | $23,994 | $29,794 | $21,294 | $1,819 |
| Qualified DIP AR | $259,000 | $294,000 | $294,000 | $186,000 | $201,000 | $226,500 | $226,500 | $346,500 | $346,500 | $396,500 | $511,500 | $391,500 | $391,500 | $0 |
| Facility Limit | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 | $335,000 |
| Borrowing Avail. | $254,500 | $272,000 | $272,000 | $186,000 | $201,000 | $226,500 | $226,500 | $298,250 | $276,500 | $276,500 | $320,750 | $320,750 | $320,750 | $0 |
| DIP Loan Balance | $254,500 | $272,000 | $272,000 | $186,000 | $186,000 | $226,500 | $276,500 | $276,500 | $276,500 | $301,500 | $301,500 | $335,000 | $335,000 | $0 |
| **Net Availability** | $0 | $0 | $0 | $0 | $15,000 | $40,500 | $0 | $21,750 | $21,750 | $21,750 | $33,500 | $33,500 | ($14,250) | $0 |
| **DIP LENDER LINE OF CREDIT** | | | | | | | | | | | | | | |
| Opening Balance | $196,500 | $254,500 | $254,500 | $272,000 | $186,000 | $186,000 | $186,000 | $226,500 | $276,500 | $276,500 | $301,500 | $301,500 | $335,000 | $335,000 |
| Net Lending | $58,000 | $0 | $17,500 | ($86,000) | $0 | $0 | $40,500 | $50,000 | $0 | $25,000 | $0 | $33,500 | $0 | ($335,000) |
| **Ending Balance** | $254,500 | $254,500 | $272,000 | $186,000 | $186,000 | $186,000 | $226,500 | $276,500 | $276,500 | $301,500 | $301,500 | $335,000 | $335,000 | $0 |
| **AGSM DEPOSIT** | | | | | | | | | | | | | | |
| Opening Balance | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $0 | $0 |
| Net Lending | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($100,000) | $0 | $0 |
| **Ending Balance** | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $0 | $0 | $0 |

Confidential

## EXHIBIT B

### CONFESSION OF JUDGMENT

See Attached

EXECUTION VERSION

## DISCLOSURE FOR CONFESSION OF JUDGMENT

TO:            WHITE OAK BUSINESS CAPITAL, INC.

THE UNDERSIGNED IS EXECUTING AS DEBTOR, THIS _12th_ DAY OF ___August___, 2021 THE SETTLEMENT AGREEMENT (THE "SETTLEMENT  AGREEMENT") BY AND AMONG THE DEBTOR AND WHITE OAK BUSINESS CAPITAL, INC., IN THE ORIGINAL PRINCIPAL AMOUNT OF SIX HUNDRED FIFTY THOUSAND DOLLARS ($650,000) OR UPON THE OCCURRENCE OF A TERMINATION EVENT, AS SUCH TERM IS DEFINED IN THE SETTLEMENT AGREEMENT, AN AMOUNT EQUAL TO ONE MILLION DOLLARS ($1,000,000) OBLIGATING DEBTOR TO REPAY THE AMOUNT AS STATED THEREIN.

A.      THE UNDERSIGNED UNDERSTANDS THAT THE SETTLEMENT AGREEMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT WHITE OAK BUSINESS CAPITAL, INC. TO ENTER JUDGMENT AGAINST DEBTOR IN COURT, UPON THE OCCURRENCE OF A TERMINATION EVENT, WITHOUT ADVANCE NOTICE TO DEBTOR AND WITHOUT OFFERING DEBTOR AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT.  IN EXECUTING THE SETTLEMENT AGREEMENT, BEING FULLY AWARE OF DEBTOR'S RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT WHITE OAK BUSINESS CAPITAL, INC. MAY ASSERT AGAINST DEBTOR UNDER THE SETTLEMENT AGREEMENT, THE UNDERSIGNED, ON BEHALF OF THE DEBTOR, IS KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND THE UNDERSIGNED EXPRESSLY AGREES AND CONSENTS TO WHITE OAK BUSINESS CAPITAL, INC. ENTERING JUDGMENT AGAINST DEBTOR BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION IN THE SETTLEMENT AGREEMENT.

**Debtor's
Initials**            _RS_

THE UNDERSIGNED FURTHER UNDERSTANDS THAT IN ADDITION TO GIVING WHITE OAK BUSINESS CAPITAL, INC. THE RIGHT TO ENTER JUDGMENT AGAINST DEBTOR WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE SETTLEMENT AGREEMENT ALSO CONTAINS LANGUAGE THAT WOULD PERMIT WHITE OAK BUSINESS CAPITAL, INC., AFTER ENTRY OF JUDGMENT, AGAINST DEBTOR WITHOUT EITHER NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING DEBTOR'S PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT.  IN EXECUTING THE SETTLEMENT AGREEMENT, BEING FULLY AWARE OF DEBTOR'S RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION OF THE JUDGMENT, THE UNDERSIGNED, ON BEHALF OF DEBTOR, IS KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND THE UNDERSIGNED EXPRESSLY AGREES AND CONSENTS TO WHITE OAK BUSINESS CAPITAL, INC.'S IMMEDIATELY EXECUTING ON THE JUDGMENT, IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING DEBTOR ANY ADVANCE NOTICE.

**Debtor's
Initials**            _RS_

B.      THE UNDERSIGNED HEREBY CERTIFIES: (I) THAT HE/SHE HAS AN ANNUAL INCOME IN EXCESS OF $10,000.00; (II) THAT THIS LOAN IS BEING MADE FOR A BUSINESS PURPOSE AND IS NOT A CONSUMER LOAN; (III) THAT THE UNDERSIGNED, IF IT IS AN INDIVIDUAL, IS NOT CURRENTLY IN THE MILITARY SERVICE OF THE UNITED STATES; (IV) THAT ALL REFERENCES TO THE "UNDERSIGNED" ABOVE REFER TO ALL PERSONS AND ENTITIES SIGNING BELOW; AND (V) THAT THE UNDERSIGNED RECEIVED A COPY HEREOF AT THE TIME OF SIGNING.

**Debtor's
Initials**            _RS_

1

EXECUTION VERSION

C.      AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, THE UNDERSIGNED REPRESENTS THAT:

_RS_  1.      DEBTOR WAS REPRESENTED BY DEBTOR'S OWN INDEPENDENT COUNSEL IN CONNECTION WITH THE SETTLEMENT AGREEMENT.

_RS_  2.      A REPRESENTATIVE OF WHITE OAK BUSINESS CAPITAL, INC. SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE SETTLEMENT AGREEMENT TO DEBTOR'S ATTENTION.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DEBTOR:

**Rajeev Sharma**

**EXHIBIT C**

**DACA**

See Attached

## DEPOSIT ACCOUNT CONTROL AGREEMENT

THIS DEPOSIT ACCOUNT CONTROL AGREEMENT ("Agreement") is made and entered into as of this 12th day of ____August____, 2021, among Enterprise Bank ("Bank"), Rajeev Sharma and Vishnu Sharma ("Guarantors"), and White Oak Business Capital, Inc., ("White Oak").

WHEREAS, the Guarantors have established a deposit account at the Bank bearing account number ___ - _____ ("Deposit Account"), which secures repayment of Loan Number 6007026 made by the Bank to VideoMining Corporation in the principal amount of $335,000.00 ("Loan").

WHEREAS, the Deposit Account has a balance of $125,000.00.

WHEREAS, simultaneous with the execution of this Agreement, the Guarantors and White Oak are entering into a Promissory Note in the amount of $650,000.00 ("Promissory Note").

WHEREAS the Guarantors desire to grant White Oak a security interest in the Deposit Account to secure their obligations to White Oak under the Promissory Note.

WHEREAS, the Guarantors have agreed to release the balance of the Deposit Account to White Oak following the repayment of the Loan in the event that there exists a balance under the Promissory Note at the time the Loan is repaid in full.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto agree as follows:

1.      Security Interest.  To secure Guarantors' indebtedness, obligations and liabilities to White Oak under the Promissory Note, Guarantors hereby grant to White Oak, for its own benefit, a present and continuing security interest in the Deposit Account and Bank acknowledges that this Agreement constitutes notice of White Oak's security interest in the Deposit Account and does hereby consent thereto.  Nothing herein shall be construed to grant White Oak a lien superior to Bank's lien in the Deposit Account for the purposes of securing the Loan and no other obligations of the Guarantors to Enterprise.

2.      Control of Pledged Accounts.  In order to give White Oak control over the Deposit Account, as control is defined in the Uniform Commercial Code, following the repayment of the Loan and up the amount then due under the Promissory Note, Bank hereby agrees upon repayment in full of the Loan to transfer the balance of the Deposit Account to White Oak without any further notice or demand by White Oak.  Notwithstanding the control granted to White Oak pursuant to this Agreement, White Oak shall not exercise any control over the Deposit Account until the Loan is paid in full.  Repayment in full of the Loan shall mean payment of all outstanding principal, accrued interest, late charges if any, satisfaction fees and attorney's fees and expenses incurred in connection with the Loan as of the date of payment.

3.      Certain Representations, Warranties and Covenants.

(a)     Each party hereto represents and warrants to the other parties hereto that such party has all requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and that such execution, delivery and performance shall not constitute or cause a breach of any material contract to which such party is bound.

(b)     Each party hereto represents and warrants to the other parties hereto that this Agreement is legally valid and binding on such party, enforceable against such party in accordance with its terms, except as limited by bankruptcy or other comparable laws affecting creditors' rights generally, and except as limited by the availability of equitable remedies.

(c)     Bank hereby represents and warrants to White Oak that except for the Bank's lien as perfected by possession of the Deposit Account and this Agreement, Bank has not entered into any agreement with any person or entity pursuant to which Bank is obligated to comply with instructions as to the disposition of funds from the Deposit Account. Bank hereby covenants and agrees that Bank shall not, without the prior written consent of White Oak, enter into any agreement with any other person or entity pursuant to which Bank is obligated to comply with instructions as to the disposition of funds from the Deposit Account.

4.      Court Approval.  The parties agree that this Agreement shall not be effective until it is approved by the United States Bankruptcy Court for the Western District of Pennsylvania in Case Nos. 20-20425-GLT and 20-22860-GLT as an Exhibit to a Settlement Agreement entered into between White Oak and the Guarantors.

5.      Statements and Other Information.  Guarantors hereby authorize and Bank hereby agrees to provide both Guarantors and White Oak with copies of the regular monthly bank statements associated with the Deposit Account.

6.      Fees.  Guarantors agree to pay on demand all usual and customary service charges, transfer fees and account maintenance fees (collectively, "Fees") of Bank in connection with the Deposit Account.  In the event Guarantors fail to timely make a payment to Bank of any Fees, Bank may thereafter exercise its right of set-off against the Deposit Account for such amounts.

7.      Exculpation of Bank; Indemnification by Company.  Guarantors and White Oak agree that Bank shall have no liability to either of them for any loss or damage that either or both may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement or any transaction or service contemplated by the provisions hereof, unless occasioned by the gross negligence or willful misconduct of Bank.   Without limitation of the preceding sentence, Guarantors agree that Bank shall have no liability to Guarantors for any wrongful dishonor in connection with the transfer of any funds in the Deposit Account by Bank to White Oak as authorized by Section 2. In no event shall Bank be liable for losses or delays resulting from computer malfunction, interruption of communication facilities, labor difficulties or other causes beyond Bank's reasonable control or for indirect, special or consequential damages.  Guarantors agree to indemnify Bank and hold it harmless from and against any and all claims, other than those ultimately determined to be founded on gross negligence or willful misconduct of Bank, and from and against any damages, penalties, judgments, liabilities, losses or expenses (including reasonable

2

attorney's fees and disbursements) incurred as a result of the assertion of any claim, by any person or entity, arising out of, or otherwise related to, any transaction conducted or service provided by Bank through the use of the Deposit Account at Bank pursuant to the procedures provided for or contemplated by this Agreement.

8.      Termination. This Agreement may be terminated by Guarantors only upon delivery to Bank of a written notification thereof jointly executed by Guarantors and White Oak. This Agreement may be terminated by White Oak at any time, with or without cause, upon its delivery of written notice thereof to Guarantors and Bank. All rights of Bank under Sections 6 and 7 shall survive any termination of this Agreement.

9.      Notices. All notices, requests or other communications given to Guarantors, White Oak or Bank shall be given in writing (including by facsimile) at the address specified below:

| | |
|---|---|
| White Oak: | c/o Jeffrey M. Rosenthal, Esquire<br>Mandelbaum Salsburg P.C.<br>3 Becker Farm Road, Suite 105,<br>Roseland, NJ 07068<br>Email: JRosenthal@lawfirm.ms |
| Bank: | Name: Enterprise Bank<br>Address: 4091 Mount Royal Boulevard<br>Allison Park, PA 15101<br>Attention: Joseph A. Fidler, Esquire<br>Email: JFidler@Enterprisebankpgh.com |
| Guarantors: | c/o Ryan J. Cooney<br>223 Fourth Ave, 4th Floor<br>Pittsburgh, PA 15222<br>Email: rcooney@lampllaw.com |

Any party may change its address for notices hereunder by notice to each other party hereunder given in accordance with this Section 9. Each notice, request or other communication shall be effective (a) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section 9 and confirmation of receipt is made by the appropriate party, (b) if given by overnight courier, on the business day after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (c) if given by any other means, when delivered at the address specified in this Section 9.

10.     Miscellaneous.

        (a)     This Agreement shall be deemed to supersede any conflicting terms of any agreement between Bank and Guarantors regarding the Deposit Account.

3

(b)      This Agreement may be amended only by a written instrument executed by White Oak, Bank, and Guarantors acting by their respective duly authorized representatives.

(c)      This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, but neither Guarantors nor Bank shall be entitled to assign or delegate any of its rights or duties hereunder without first obtaining the express prior written consent of White Oak.

(d)      This Agreement may be executed in any number of several counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(e)      **THIS AGREEMENT, IN ACCORDANCE WITH THE LAW OF THE COMMONWEALTH OF PENNSYLVANIA, SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA WITHOUT REGARD TO ANY CONFLICTS OF LAWS PRINCIPLES THEREOF THAT WOULD CALL FOR THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION.**

[Signature page follows.]

4831-0989-6435, v. 2

*(Signature page to Deposit Account Control Agreement)*

IN WITNESS WHEREOF, each of the parties has executed and delivered this Deposit Account Control Agreement as of the day and year first above set forth.

BANK:

ENTERPRISE BANK

By _Aura Cura_

Name: _Lori A. Cestra_

Title _EVP / COO_

(*Signature page to Deposit Account Control Agreement*)

**GUARANTORS:**

**RAJEEV SHARMA**

_____

**VISHNU SHARMA**

_____

WHITE OAK:

WHITE OAK

By: _____

Name: Joe Silpigni
Title: Senior Vice President

## EXHIBIT D

### PROMISSORY NOTE

See attached

EXECUTION VERSION

## PROMISSORY NOTE

$650,000

   **FOR VALUE RECEIVED, VIDEOMINING CORPORATION,** a corporation organized under the laws of the State of Delaware and a Debtor-in-Possession (the "**Company**"), **RAJEEV SHARMA,** an individual and a Chapter 7 Debtor ("**Rajeev**") and **VISHNU SHARMA,** an individual and a Chapter 7 Debtor ("**Vishnu**" and together with Rajeev, the "**Sharmas**", and the Sharmas together with the Company are individually and collectively referred to herein as the "**Debtors**"), hereby unconditionally promise to pay to the order of **WHITE OAK BUSINESS CAPITAL, INC.** (formerly known as Federal National Payables, Inc., and formerly doing business as Federal National Commercial Credit) ("**White Oak**"), a Delaware corporation, at the offices of White Oak at 7315 Wisconsin Avenue, Suite 600W, Bethesda, Maryland 20814, or at such other place as White Oak or any holder hereof may from time to time designate, the principal sum of not less than Six Hundred Fifty Thousand Dollars ($650,000), in lawful money of the United States of America and in immediately available funds, without interest. Debtors hereby further promise to pay all obligations and liabilities pursuant to the Settlement Agreement of even date herewith between the Debtors and the White Oak, to the order of White Oak in the manner set forth in the Settlement Agreement. Unless otherwise defined herein, all capitalized terms used herein shall have the meaning assigned thereto in the Settlement Agreement. This Note, the Settlement Agreement, the Confession of Judgment and the Mortgages are collectively referred to herein as the "**Credit Documents**".

   Pursuant to the provisions of the Settlement Agreement, the principal balance of this Promissory Note (this "**Note**") shall be paid as follows:

   (a)   Simultaneous with the closing of the sale to VMC or another purchaser as a result of competitive bidding at the hearing on the sale to VMC, the Debtors shall pay White Oak Three Hundred Thousand Dollars ($300,000) plus the Excess Proceeds (the "Subsection (a) Payment Amount") by wire transfer to the wire instructions set forth on Exhibit D annexed to the Settlement Agreement;

   (b)   If, after the payment of the Subsection (a) Payment Amount there is still an outstanding balance due under the Note, immediately upon the full payment and satisfaction of the DIP Loan which shall occur no later than 90 days after the entry of the Sale Order, Enterprise Bank shall release the DIP Deposit, which shall be paid by Enterprise Bank to White Oak pursuant to the terms of the DACA by wire transfer to the wire instructions set forth on Exhibit F annexed to the Settlement Agreement in an amount equal to the lesser of (a) the balance due under the Note after the Subsection (a) Payment Amount and (b) One Hundred Twenty Five Thousand Dollars ($125,000) (the "Subsection (b) Payment Amount"). In the event such release by Enterprise Bank is not made within such 90 day period, the Debtors shall pay White Oak an amount equal to the Subsection (b) Payment Amount. In the event the amount of the DIP Deposit released by Enterprise Bank and paid to White Oak is less than the Subsection (b) Payment Amount, Rajeev shall simultaneously pay White Oak an amount equal to the difference between the Subsection

(b) Payment Amount and the amount paid by Enterprise Bank to White Oak by wire transfer to the wire instructions set forth on Exhibit F annexed to the Settlement Agreement;

(c)    If, after the payment of the Subsection (a) Payment Amount and if, after the payment of the Subsection (b) Payment Amount there is still an outstanding balance due under the Note, commencing on the 1st day of the month following the closing of the sale to VMC or another purchaser as a result of competitive bidding at the hearing on the sale to VMC, and on the first day of each of the next 59 months thereafter (the "Payment Period") Rajeev shall pay to White Oak monthly payments each in an amount equal to Three Thousand Seven Hundred Fifty Dollars ($3,750). Any Excess Proceeds paid to White Oak that were not applied to the Subsection (b) Payment Amount and any additional payments made by Rajeev during the Payment Period shall be first applied to the last month of the Payment Period and next to the 2nd to last month of the Payment period and so forth, such that the effect of any additional payments shall be to reduce the length of the Payment Period.

This Note is issued pursuant to and is subject to the terms and provisions of the Settlement Agreement, upon the occurrence of a Termination Event, the principal balance of this Note shall automatically increase to One Million Dollars ($1,000,000). This Note is secured by the security interest in the DIP Deposit, the liens on the Properties in the Settlement Amount as evidenced by the Mortgages granted by the Sharmas, and the Confession of Judgment.

Debtors (i) waive diligence, demand, presentment, protest, and notice of any kind, (ii) agree that it will not be necessary for White Oak to first institute suit in order to enforce    payment of this Note, and (iii) consents to any one or more extensions or postponements of time of payment, release, surrender, or substitution of collateral security, or forbearance or other indulgence, without notice or consent. The pleading of any statute of limitations as a defense to any demand against Debtor is expressly hereby waived by Debtors. Should this Note be referred to an attorney for collection, whether or not suit has been filed, Debtors shall pay all out of pocket costs, fees and expenses, including attorneys' fees, resulting from such referral.

The validity, interpretation, and enforcement of this Note and the other Credit Documents and any dispute arising in connection herewith or therewith shall be governed by the internal laws of the Commonwealth of Pennsylvania (without giving effect to principles of conflicts of law).

**DEBTOR IRREVOCABLY CONSENTS AND SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COMMONWEALTH OF PENNSYLVANIA, THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA AND THE COMMONWEALTH OF PENNSYLVANIA, AND WAIVES ANY OBJECTION BASED ON VENUE OR FORUM NON CONVENIENS WITH RESPECT TO ANY ACTION INSTITUTED THEREIN ARISING UNDER THIS NOTE OR ANY OF THE OTHER CREDIT**

EXECUTION VERSION

DOCUMENTS OR IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF DEBTOR AND WHITE OAK IN RESPECT OF THIS NOTE OR ANY OF THE OTHER CREDIT DOCUMENTS OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER IN CONTRACT, TORT, EQUITY OR OTHERWISE, AND AGREES THAT ANY DISPUTE ARISING OUT OF THE RELATIONSHIP BETWEEN DEBTOR AND WHITE OAK OR THE CONDUCT OF SUCH PERSONS IN CONNECTION WITH THIS NOTE OR OTHERWISE SHALL BE HEARD ONLY IN THE COURTS DESCRIBED ABOVE (EXCEPT THAT WHITE OAK SHALL HAVE THE RIGHT TO BRING ANY ACTION OR PROCEEDING AGAINST DEBTOR OR ITS PROPERTY IN THE COURTS OF ANY OTHER JURISDICTION THAT WHITE OAK DEEMS NECESSARY OR APPROPRIATE IN ORDER TO REALIZE ON THE COLLATERAL OR TO OTHERWISE ENFORCE ITS RIGHTS AGAINST DEBTOR OR ITS PROPERTY).

This Note shall be binding upon the successors and assigns of Debtors and shall inure to the benefit of White Oak and its successors, endorsees, and assigns. Whenever used herein, the term "Debtors" shall be deemed to include their respective heirs, successors and assigns and the term "White Oak" shall be deemed to include its successors, endorsees, and assigns. If any term or provision of this Note shall be held invalid, illegal, or unenforceable, the validity of all other terms and provisions hereof shall in no way be affected thereby. This Note evidences an extension of credit made for business or commercial purposes.

[SIGNATURE PAGE TO FOLLOW]

**EXECUTION VERSION**

**[SIGNATURE PAGE TO PROMISSORY NOTE]**

WITNESS, the due execution of this Note, as a sealed instrument, the date and year first above written.

**VIDEOMINING CORPORATION**

By: _____

**Name: RAJEEV SHARMA**
**Title:   President**

_____
**Rajeev Sharma**

_____
**Vishnu Sharma**

## EXHIBIT E

## MORTGAGES

See Attached

EXECUTION VERSION

Record and Return To:

Jeffrey Rosenthal, Esq.
Mandelbaum Salsburg P.C.
3 Becker Farm Road
Roseland, NJ 07068

Parcel No.:    24-422-045

Address:    2391 Shagbark Court, State College, Pennsylvania 16803

---

## OPEN-END MORTGAGE

THIS IS AN OPEN END MORTGAGE AND SECURES FUTURE
ADVANCES PURSUANT TO 42 PA. C.S. §§ 8143 AND 8144

**THIS OPEN-END MORTGAGE** (this "**Mortgage**") is made as of August 12, 2021, by **Rajeev Sharma**, an individual, and **Vishnu Sharma**, an individual, (collectively, the "**Mortgagor**"), having an address at 2391 Shagbark Court, State College, Pennsylvania 16803, in favor of **WHITE OAK BUSINESS CAPITAL INC.** (formerly known as Federal National Payables, Inc., and formerly doing business as Federal National Commercial Credit) **("Mortgagee")**, a Delaware corporation, having an address at 7315 Wisconsin Avenue, Suite 600W, Bethesda, MD 20814.

## RECITALS

WHEREAS, Mortgagor owns in fee the land described in **Exhibit A** attached hereto and made a part hereof, together with the improvements now or hereafter erected thereon;

WHEREAS, Mortgagor is indebted to Mortgagee in the amount of $650,000, which amount may be increased to $1,000,000 (the "**Note Amount**") upon the occurrence of a Termination Event and expiration of the Cure Period, as such terms are defined in that that certain Settlement Agreement, dated as of the date hereof, by and between the Debtors and the Mortgagee (the "**Settlement Agreement**"), pursuant to that certain Promissory Note (the "**Note**"), dated as of the date hereof, made by Mortgagor and VideoMining Corporation, (collectively, the "**Debtors**") in favor of Mortgagee (as the same may be amended, supplemented or replaced from time to time, the "**Note**"); and

WHEREAS, it is a condition precedent to the effectiveness of the Settlement Agreement that Mortgagor grants this Mortgage to Mortgagee.

**NOW, THEREFORE**, for the purpose of securing the following (the "**Obligations**"):

A.      The Debtors' obligations to Mortgagee under the Note and the Settlement Agreement; and

B.      All other loans, advances, debts, liabilities and obligations from time to time owing by Mortgagor or any other Debtor to Mortgagee (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to Mortgagor or any Debtor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising; and

C.      Any amendments, extensions, renewals and increases of or to any of the foregoing, and all costs and expenses of the Mortgagee incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses;

Mortgagor, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound hereby, does hereby mortgage, grant and convey to Mortgagee the following property, all accessions and additions thereto, all substitutions therefor and replacements and proceeds thereof, and all reversions and remainders of such property now owned or held or hereafter acquired (collectively, the "**Property**"), to wit:

(a) the real property described on **Exhibit A** attached hereto and made a part hereof, having a street address of 2391 Shagbark Court, State College, Pennsylvania 16803 (the "**Premises**");

(b) all present and future buildings and improvements erected or to be erected thereon, as well as all present and future alterations, additions and improvements now or hereafter made thereto (collectively, the "**Improvements**"); and all streets, alleys, passages, easements, licenses, ways, water, water courses, water rights, air rights, other rights, timber, crops, minerals, liberties, privileges, hereditament and the appurtenances thereunto belonging (collectively, the "**Hereditaments**");

2

(c) all present and future reversions, remainders, incomes, rents, security deposits, issues, profits, fees, payments, grants, franchises, rights, claims, concessions, and operating privileges derived from or received in connection with any lease, license or other occupancy agreement (collectively, the "**Leases**"), whether now existing or hereafter arising (collectively, the "**Rents**");

(d) all present and future machinery, apparatus, equipment, fittings, fixtures, and articles of personal property now or hereafter owned by Mortgagor and located on, about, under or in the Premises or the Improvements, without regard to whether the same may be affixed to the Premises or Improvements, at any time and from time to time and used or usable in connection with any present or future operation or occupancy of the Improvements, including but not limited to all heating, electrical, air conditioning, ventilating, lighting, laundry, incinerating and power equipment, engines, pipes, pumps, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire prevention, fire extinguishing, and communications apparatus, appliances, carpeting, cabinets, partitions, ducts and compressors, and all parts and accessories therefor and all substitutions and replacements thereof, and the cash and non-cash proceeds of all the foregoing, including but not limited to the proceeds of any policy of insurance thereon (collectively, the "**Building Equipment**");

(e) all present and future rights of Mortgagor under contracts relating to the Premises, the Improvements, the Hereditaments; or the Building Equipment; all documents, contract rights, commitments, construction contracts, architectural agreements, instruments, notes and chattel paper arising from or by virtue of any transaction related to the Premises, the Improvements, or the Building Equipment; and all other interests of every kind and character that Mortgagor now has or hereafter acquires in and to the Premises, the Improvements, the Hereditaments and the Building Equipment; and

(f) all awards, decrees, proceeds and settlements made to or for the benefit of Mortgagor by reason of any damage to, destruction of or taking of the Premises or any part thereof or any Improvements, Hereditaments, or Building Equipment, whether made by reason of the exercise of the right of eminent domain or otherwise, or by any public or private authority, tribunal, corporation or other entity or by any natural person;

To have and to hold the same unto the Mortgagee, its successors and assigns, forever.

Provided, however, that if the Obligations shall be paid to the Mortgagee, and if the Mortgagor and any other obligor or guarantor of any of the Obligations shall keep

3

and perform each of its other covenants, conditions and agreements set forth herein and in the other Loan Documents, then, upon the termination of all obligations, duties and commitments of the Mortgagor and any other obligor or guarantor of any of the Obligations under the Obligations and this Mortgage, and subject to the provisions of the this Mortgage that survive termination, this Mortgage shall become null and void.

**This is an open-end mortgage that secures future advances pursuant to 42 Pa. C.S. § 8143. The maximum amount secured by this Mortgage is 200% of the Note Amount.**

**IT IS UNDERSTOOD AND AGREED THAT THIS MORTGAGE SECURES PRESENT AND FUTURE ADVANCES WITH RESPECT TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO: (i) ADVANCES MADE FOR THE PAYMENT OF TAXES, ASSESSMENTS, MAINTENANCE CHARGES, INSURANCE PREMIUMS, OR COSTS INCURRED FOR THE PROTECTION OF THE PROPERTY OR THE LIEN OF THE MORTGAGE AND (ii) OUT-OF-POCKET EXPENSES (INCLUDING REASONABLE LEGAL FEES) INCURRED BY THE MORTGAGEE AS A RESULT OF THE MORTGAGOR'S DEFAULT UNDER THE SETTLEMENT AGREEMENT.**

Mortgagee's receipt of notice from the Mortgagor, seeking to terminate, limit, or restrict future advances, whether sent pursuant to 42 Pa. C.S. § 8143(b) or 8143(c) shall be an Event of Default under this Mortgage, and Mortgagor shall not be entitled to any notice or cure period.

**REPRESENTATIONS, WARRANTIES AND COVENANTS.**

1.      Representation.  The Mortgagor represents and warrants to the Mortgagee that (i) the Mortgagor has good and marketable title to an estate in fee simple absolute in the Premises and Improvements and has all right, title and interest in all other property constituting a part of the Property, free and clear of all liens and encumbrances, except as set forth on **Exhibit B** hereto and (ii) the Mortgagor's name and address are true and complete as set forth in the heading of this Mortgage. This Mortgage is a valid and enforceable first lien on the Property (except for the permitted encumbrances set forth on **Exhibit B**, including the Prior Mortgages (as hereinafter defined)) and the Mortgagee shall, subject to the Mortgagor's right of possession prior to an Event of Default, quietly enjoy and possess the Property. The Mortgagor shall preserve such title as it warrants herein and the validity and priority of the lien hereof and shall forever warrant and defend the same to the Mortgagee against the claims of all persons.

2.      Taxes.  Mortgagor shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any, by making payment when due to the payee thereof. Mortgagor shall promptly furnish to Mortgagee all notices of amounts due

4

under this paragraph, and Mortgagor shall promptly furnish to Mortgagee receipts evidencing such payment. Mortgagor shall promptly discharge any lien which has priority over this Mortgage.

   3.  Hazard Insurance. Mortgagor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Premises in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender.  Mortgagor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insured in such liability insurance policy.  Additionally, Mortgagor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require.  Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Mortgagor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Mortgagor or any other person. Should the Premises be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Mortgagor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for so long as any Obligation is outstanding.

   Mortgagor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Mortgagor fails to do so within fifteen (15) days of the casualty. If no Event of Default has occurred and is continuing, Lender shall allow Mortgagor to receive the proceeds and apply them to the cost of restoration, with any excess proceeds being applied to the Obligations.  Otherwise, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Obligations, payment of any lien affecting the Property, or the restoration and repair of the Property, subject to such conditions as Lender in its discretion may impose.  If Lender holds any proceeds after payment in full of the Obligations, such proceeds shall be paid to Mortgagor as Mortgagor's interests may appear. Notwithstanding the foregoing, during any period in which any Prior Mortgage is in effect, compliance with the insurance provisions of such Prior Mortgage shall constitute compliance with the insurance requirements of this Mortgage, to the extent the same are in conflict. If any proceeds from insurance become payable on loss, the provisions of this Mortgage shall apply only to that portion of the proceeds not payable to the holder of the Prior Mortgage.

4823-8872-1393, v. 2

As used herein, "**Prior Mortgage**" means any mortgage described on **Exhibit B** that has not been paid and discharged in full at the relevant time.

4.      Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Mortgagor shall keep the Property in good condition and repair, and shall not, without the prior written approval of Mortgagee, remove, demolish or materially alter the buildings or improvements on the Property, nor commit or suffer waste with respect thereto and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

Mortgagor shall comply with all laws, rules, regulations and ordinances made or promulgated by any lawful authority which may now or hereafter become applicable to the Property. Mortgagor shall permit Mortgagee's agents at any reasonable time after reasonable notice to Mortgagor, and from time to time to enter upon the Property and the buildings and improvements thereon erected for the purpose of inspecting and appraising the same. Mortgagor shall not take or permit any action with respect to the Property which will in any manner impair the security of the Mortgage.

5.      Protection of Mortgagee's Security. If Mortgagor fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Mortgagee's interest in the Property, including but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Mortgagee at Mortgagee's option, may make such appearances, disburse such sums and take such action as is necessary to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees, entry upon the Property to make repairs, and any and all such action that Mortgagee may deem necessary to protect the security of this Mortgage.

Any amounts disbursed by Mortgagee pursuant to this paragraph 5, with interest thereon, shall become Obligations of Mortgagor secured by this Mortgage. Unless Mortgagor and Mortgagee agree to other terms of payment; all such sums so paid or advanced by Mortgagee shall immediately and without demand be repaid by Mortgagor to Mortgagee, together with interest thereon computed from the date of disbursement at the statutory default rate. The production of a receipt by Mortgagee shall be conclusive proof of a payment or advance authorized hereby, and the amount and validity thereof. Nothing contained in this paragraph 5 shall require Mortgagee to incur any expense or take any action hereunder.

6.     Inspection. Mortgagee may make or cause to be made reasonable entries upon and inspection of the Property, provided that Mortgagee shall give Mortgagor notice prior to any such inspections specifying reasonable cause therefor related to Mortgagee's interest in the Property.

7.     Condemnation. In the event that the Property, or any part thereof, shall be taken in condemnation proceedings or by the exercise of any right of eminent domain or bona fide sale in lieu thereof (hereinafter collectively referred to as "condemnation proceedings"), Mortgagor and Mortgagee shall have the right to participate in any such condemnation proceedings. The award that may be made in any such condemnation proceedings and the proceeds thereof or the agreed upon compensation for damages sustained shall be applied by Mortgagee, in such order and amounts as Mortgagee, in its sole discretion, reasonably exercised, may elect, in reduction of the outstanding principal balance of the Note, all accrued and unpaid interest thereon, or any other sum due under and/or secured by the Note, or this Mortgage, whether or not then due, or disbursed to Mortgagor to restore any damage to the remaining portion of the Property not taken in the condemnation proceedings. Any such application of proceeds to principal shall not extend or postpone the due date of any monthly installments due under the Note.

8.     Environmental Matters. Mortgagor makes the following representations, warranties and covenants. Mortgagor shall comply with all Environmental Laws, as defined herein, and, to the extent necessary for the conduct of its business, shall obtain, maintain and comply with all permits, licenses, registrations and authorizations required under the Environmental Laws. Mortgagor shall comply with all governmental orders, directives, judgments, orders, decrees, awards, administrative consent orders, settlement agreements, or other settlement documents entered into with any administrative or governmental agency or entity concerning compliance with Environmental Laws. Mortgagor shall conduct its operations and its business in compliance with all federal, state and local statutes, ordinances, regulations, rules, standards and requirements of common law concerning or relating to industrial hygiene and the protection of health and the environment (collectively the "**Environmental Laws**").

Mortgagor shall not use or permit the use of the Property for the generation, storage, recycling, processing, transportation, disposal of or release of any Hazardous Substances, as defined herein, in a manner that is contrary to any Environmental Law. Mortgagor shall not use or permit the use of the Property in a manner which is contrary to any Environmental Law and which may give rise to liability, the imposition of a statutory lien, or require any Response, Removal or Remedial Action, all of the foregoing as defined herein, under any of the Environmental Laws. In the event that conditions are discovered on, about, beneath or arising from the Property which may give rise to liability, the imposition of a statutory lien, or require Response, Removal or Remedial Action, Mortgagor shall promptly take all actions, including Response, Removal or Remedial Action required under the Environmental Laws.

7

Mortgagor shall immediately notify the Mortgagee, in writing, of Mortgagor's receipt, knowledge or discovery of: (i) any notice of violation, citation, notice of claim, proceeding or litigation from any party, relating to its compliance with Environmental Laws; and (ii) any other information concerning conditions upon the Property which may give rise to liability, the imposition of a statutory lien, or require Response, Removal or Remedial Action under any of the Environmental Laws.

Mortgagor shall indemnify, defend and hold harmless Mortgagee, its parents, subsidiaries, successors, assigns, officers, directors, shareholders, employees and agents, from and against any and all claims, liabilities, penalties, fines, damages, judgments, losses, suits, actions, legal or administrative proceedings, interest, costs and expenses (including attorneys' fees, consultants' fees and expert fees) arising out of or in any way relating to: (i) the presence of Hazardous Substances on, about, beneath or arising from the Property; (ii) the failure of Mortgagor, its subsidiaries or its Related Affiliates to comply with the Environmental Laws. Mortgagor's indemnity and defense obligations under this paragraph shall include, without limitation, any and all costs of any Response, Removal or Remedial Action required under the Environmental Laws. The covenants and indemnities contained in this paragraph shall survive the discharge of Mortgagor's obligations hereunder and under the loan documents, whether through full payment of the loans, foreclosure, in lieu of foreclosure or otherwise.

As used in this Mortgage, the term "**Hazardous Substance**" shall mean any substance regulated under any of the Environmental Laws including, without limitation, any substance which is: (i) petroleum, asbestos or polychlorinated biphenyls; (ii) defined, designated or listed as a "Hazardous Substance" pursuant to Sections 3Q7 and 311 of the Clean Water Act, 33 U.S.C. Sections 1317, 1321, Section 101(14) of CERCLA, 42 U.S.C. Section 9601 or Section 103 of the Pennsylvania Hazardous Sites Cleanup Act, (iii) defined, designated or listed as a "Hazardous Waste" under Section 1004(3) of the Resource Conservation and Recovery Act, or Section 103 of the Pennsylvania Solid Waste Management Act, Pa. Stat. Ann. tit. 35 §6108.103; (iv) regulated under the Pennsylvania Clean Streams Law; (v) listed in the United States Department of Transportation Hazardous Material Table. As used in this Mortgage, the terms "**Response**", "**Removal**" and "**Remedial Act**" shall be defined with reference to applicable sections of CERCLA, 42 U.S.C. §9601 et seq.

9.    Mortgagor Not Released. Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Mortgagee to Mortgagor shall not operate to release, in any manner, the liability of the original Mortgagor and Mortgagor's successor in interest. Mortgagee shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Mortgagor and Mortgagor's successor in interest.

10.     Forbearance by Mortgagee Not a Waiver. Any forbearance by Mortgagee in exercising any right or remedy hereunder or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Mortgagee shall not be a waiver of Mortgagee's right to accelerate the maturity of the indebtedness secured by this Mortgage.

11.     Successors and Assigns Bound; Joint and Several Liability; Captions. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective heirs, executors, administrators, successors and assigns of Mortgagee and Mortgagor, subject to the provisions of paragraph 13 hereof. All covenants and agreements of Mortgagor shall be joint and several, if there is more than one Mortgagor. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

12.     Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Mortgagor provided for in this Mortgage shall be given by mailing such notice by certified mail or sending such notice by recognized overnight courier to Mortgagor's address stated herein or at such other address as Mortgagor may designate by notice to Mortgagee as provided herein, and (b) any notice to Mortgagee shall be given by certified mail, return receipt requested, or by recognized overnight courier to Mortgagee's address stated herein or to such other address as Mortgagee may designate by notice to Mortgagor as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee (a) three (3) days after sent in the case of certified mail and (b) on the next day, in the case of delivery by recognized overnight courier.

13.     Transfer of the Property. In the event of Mortgagor selling, conveying, transferring, or entering into any agreement of sale or transfer of the Property to a purchaser, grantee or transferee without the written consent of Mortgagee, all monies hereby secured with accrued interest thereon shall forthwith become due and payable.

14.     Events of Default.  The occurrence of any one or more of the following events shall constitute an "**Event of Default**" hereunder:  (a) any default occurs under the Settlement Agreement or the Note; (b) any default under any of the Obligations that does not have a defined set of "Events of Default" and the lapse of any notice or cure period provided in such Obligations with respect to such default; (c) the Mortgagor's failure to perform any of its obligations under this Mortgage; (d) any inaccuracy or breach of any representation or warranty made by or on behalf of Mortgagor or any other Debtor in this Mortgage, the Settlement Agreement or the Note; (e) an uninsured material loss, theft, damage, or destruction to any of the Property, or the entry of any judgment against the Mortgagor or any lien against or the making of any levy, seizure or attachment of or on the Property; (f) the Mortgagee's failure to have a mortgage lien on the Property with

9

the priority required under paragraph 1; (g) [reserved]; (h) foreclosure proceedings are instituted against the Property upon any other lien or claim, whether alleged to be superior or junior to the lien of this Mortgage; (i) the Mortgagor's failure to pay any taxes and other impositions as required under paragraph 2, or to maintain in full force and effect any insurance required under paragraph 3; or (j) the Mortgagor, any other Debtor, or any other obligor or guarantor of any of the Obligations shall at any time deliver or cause to be delivered to the Mortgagee a notice pursuant to 42 Pa. C.S.A. §8143 (or any successor or similar law, rule or regulation) electing to limit the indebtedness secured by this Mortgage.

15.    Rights and Remedies of Mortgagee; Application of Proceeds.  If an Event of Default occurs, the Mortgagee may, at its option and without demand, notice or delay, do one or more of the following after the expiration of the Cure Period (as defined and described below):

(a)    The Mortgagee may declare the entire unpaid principal balance of the Obligations, together with all interest thereon, to be due and payable immediately.

(b)    The Mortgagee may (i) institute and maintain an action of mortgage foreclosure against the Property and the interests of the Mortgagor therein, (ii) institute and maintain an action on any instruments evidencing the Obligations or any portion thereof, and (iii) take such other action at law or in equity for the enforcement of any of the Loan Documents as the law may allow, and in each such action the Mortgagee shall be entitled to all costs of suit and attorneys' fees.

(c)    The Mortgagee may, in its sole and absolute discretion:  (i) collect any or all of the Rents, including any Rents past due and unpaid, (ii) perform any obligation or exercise any right or remedy of the Mortgagor under any Lease, or (iii) enforce any obligation of any tenant of any of the Property.  The Mortgagee may exercise any right under this subparagraph (c), whether or not the Mortgagee shall have entered into possession of any of the Property, and nothing herein contained shall be construed as constituting the Mortgagee a "mortgagee in possession", unless the Mortgagee shall have entered into and shall continue to be in actual possession of the Property.  The Mortgagor hereby authorizes and directs each and every present and future tenant of any of the Property to pay all Rents directly to the Mortgagee and to perform all other obligations of that tenant for the direct benefit of the Mortgagee, as if the Mortgagee were the landlord under the Lease with that tenant, immediately upon receipt of a demand by the Mortgagee to make such payment or perform such obligations. The Mortgagor hereby waives any right, claim or demand it may now or hereafter have against any such tenant by reason of such payment of Rents or performance of obligations to the Mortgagee, and any such payment or performance to the Mortgagee

10

shall discharge the obligations of the tenant to make such payment or performance to the Mortgagor.

(d)     The Mortgagee shall have the right, in connection with the exercise of its remedies hereunder, to the appointment of a receiver to take possession and control of the Property or to collect the Rents, without notice and without regard to the adequacy of the Property to secure the Obligations.  A receiver while in possession of the Property shall have the right to make repairs and to make improvements necessary or advisable in its or his opinion to preserve the Property, or to make and keep them rentable to the best advantage, and the Mortgagee may advance moneys to a receiver for such purposes. Any moneys so expended or advanced by the Mortgagee or by a receiver shall be added to and become a part of the Obligations secured by this Mortgage.

Anything to the contrary contained herein notwithstanding, upon the occurrence of an Event of Default, the Mortgagor shall have 5 business days to cure from the receipt of a written notice detailing the Event of Default prior to Mortgagee exercising its rights and remedies under this Mortgage (the "**Cure Period**"). Each such communication shall be in writing and shall be deemed to have been validly served, given or delivered (a) upon the earlier of actual receipt and three (3) days after deposit in the United States Mail, registered or certified mail, return receipt requested, with proper postage prepaid, (b) upon transmission, when sent by electronic mail to rsharma@videomining.com, with a courtesy copy to rcooney@lampllaw.com, (c) one (1) Business Day after deposit with a reputable overnight courier with all charges prepaid or (d) when hand-delivered, all of which shall be addressed to the party to be notified and sent to the address or electronic mail address indicated herein. Failure or delay in delivering copies of any such communication to anyone other than Mortgagor shall in no way adversely affect the effectiveness of such communication.

The Mortgagee shall apply the proceeds of any foreclosure sale of, or other disposition or realization upon, or Rents or profits from, the Property to satisfy the Obligations in such order of application as the Mortgagee shall determine in its exclusive discretion.

16.     Mortgagee's Right to Protect Security.  The Mortgagee is hereby authorized to do any one or more of the following, irrespective of whether an Event of Default has occurred: (a) appear in and defend any action or proceeding purporting to affect the security hereof or the Mortgagee's rights or powers hereunder; (b) purchase such insurance policies covering the Property as it may elect if the Mortgagor fails to maintain the insurance coverage required hereunder; and (c) take such action as the Mortgagee may determine to pay, perform or comply with any impositions or requirements of law, to cure any Events of Default and to protect its security in the Property.

11

17.     Appointment of Mortgagee as Attorney-in-Fact.  The Mortgagee, or any of its officers, is hereby irrevocably appointed attorney-in-fact for the Mortgagor (without requiring any of them to act as such), such appointment being coupled with an interest, to do any or all of the following:  (a) collect the Rents after the occurrence of an Event of Default; (b) settle for, collect and receive any awards payable under paragraph 3 or paragraph 7; and (c) execute, deliver and file, at Mortgagor's sole cost and expense such instruments as the Mortgagee may require in order to perfect, protect and maintain its liens and security interests on any portion of the Property.

18.     Certain Waivers.  The Mortgagor hereby waives and releases all benefit that might accrue to the Mortgagor by virtue of any present or future law exempting the Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any stay of execution, exemption from civil process or extension of time for payment or any rights of marshalling in the event of any sale hereunder of the Property, and, unless specifically required herein, all notices of the Mortgagor's default or of the Mortgagee's election to exercise, or the Mortgagee's actual exercise of any option under this Mortgage or any other Loan Document.

19.     Mortgage Extensions. The granting of an extension or extensions of time by Mortgagee with respect to the performance of any provision of this Mortgage or the Note on the part of Mortgagor to be performed, or the taking of any additional security, or the waiver by Mortgagee or failure by Mortgagee to enforce any provision of this Mortgage, or the Note or to declare a default with respect thereto, shall not operate as a waiver of any subsequent default or defaults or affect the right of Mortgagee to exercise all rights or remedies stipulated herein and therein.

20.     Attorneys' Fees and Expenses. If Mortgagee retains the services of counsel by reason of a claim of a default or an Event of Default hereunder or under any of the other loan documents or on account of any matter involving Mortgagor's title to the Property or the security interest intended to be granted hereby, or for examination of matters subject to Mortgagee's approval under the loan documents, all costs of suit and all reasonable attorneys' fees, but in no event less than the sum of $750.00 (and/or allocated fees of Mortgagee's in-house legal counsel) and such other reasonable expenses so incurred by Mortgagee shall forthwith become due and payable, on demand, and shall be secured hereby.

21.     The Mortgagor agrees to indemnify each of the Mortgagee, each legal entity, if any, who controls, is controlled by or is under common control with the Mortgagee and each of their respective directors, officers, employees and agents (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against, any and all claims, damages, losses, liabilities and expenses (including all

12

fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur, or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Mortgagor), in connection with or arising out of or relating to the matters referred to in this Mortgage, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Mortgagor, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority, whether incurred in connection with litigation, mediation, arbitration, other alternative dispute processes, administrative proceedings and bankruptcy proceedings, and any and all appeals from any of the foregoing.  The indemnity agreement contained in this paragraph shall survive the termination of this Mortgage, payment of any Obligations and assignment of any rights hereunder.  The Mortgagor may participate at its expense in the defense of any such action or claim.

22.    Governing Law and Jurisdiction.  This Mortgage has been delivered to and accepted by the Mortgagee and will be deemed to be made in the Commonwealth of Pennsylvania. **THIS MORTGAGE WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE LAWS OF THE Commonwealth of Pennsylvania, EXCLUDING ITS CONFLICT OF LAWS RULES.** The Mortgagor hereby irrevocably consents to the exclusive jurisdiction of any state or federal court for the county or judicial district where the Mortgagee's office indicated above is located and any state or federal court having jurisdiction over State College, Pennsylvania; provided that nothing contained in this Mortgage will prevent the Mortgagee from bringing any action, enforcing any award or judgment or exercising any rights against the Mortgagor individually, against any security or against any property of the Mortgagor within any other county, state or other foreign or domestic jurisdiction.  The Mortgagor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Mortgage.

23.    Prior Mortgages.  In the event of a conflict, the terms and provisions of this Mortgage are subject to the terms and provisions of any Prior Mortgages.

24.    **WAIVER OF JURY TRIAL.    THE MORTGAGOR IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS MORTGAGE, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS MORTGAGE OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH**

DOCUMENTS.   THE MORTGAGOR ACKNOWLEDGES THAT THE FOREGOING
WAIVER IS KNOWING AND VOLUNTARY.


REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

14

The Mortgagor acknowledges that it has read and understood all the provisions of this Mortgage, including the waiver of jury trial, and has been advised by counsel as necessary or appropriate.

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

**WITNESS:**

_____          _____
                                 Rajeev Sharma

_____          _____
                                 Vishnu Sharma

[Signature page to Open-End Mortgage]

4823-8872-1393, v. 2

COMMONWEALTH OF PENNSYLVANIA                    )
                                               )    ss:
COUNTY OF _____                        )

   On this, the _____ day of August, 2021, before me, a Notary Public, the undersigned officer, personally appeared RAJEEV SHARMA, who acknowledged that he/she, executed the foregoing instrument for the purposes therein contained.

   IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _____
                              Notary Public

         My commission expires:

> Commonwealth of Pennsylvania - Notary Seal
> Gwendolyn M English, Notary Public
> State College Boro, Centre County
> My Commission Expires   February 25, 2024
> Commission Number   1296510

COMMONWEALTH OF PENNSYLVANIA                    )
                                               )    ss:
COUNTY OF _____                        )

   On this, the _____ day of August, 2021, before me, a Notary Public, the undersigned officer, personally appeared VISHNU SHARMA, who acknowledged that he/she, executed the foregoing instrument for the purposes therein contained.

   IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _____
                              Notary Public

         My commission expires:

> Commonwealth of Pennsylvania - Notary Seal
> Gwendolyn M English, Notary Public
> State College Boro, Centre County
> My Commission Expires   February 25, 2024
> Commission Number   1296510

[Acknowledgment page to Open-End Mortgage]

4823-8872-1393, v. 2

CERTIFICATE OF RESIDENCE

The undersigned certifies that the residence of the Mortgagee is 7315 Wisconsin Avenue, Suite 600W, Bethesda, MD 20814.

Joe Silipigni
Senior Vice President
On behalf of the Mortgagee

EXECUTION VERSION

## EXHIBIT A

Legal Description of Premises

# EXHIBIT B

Permitted Encumbrances

EXECUTION VERSION

Record and Return To:

Jeffrey Rosenthal, Esq.
Mandelbaum Salsburg P.C.
3 Becker Farm Road
Roseland, NJ 07068

Parcel No.:    36-013-315-C101

Address:    403 South Allen Street, Suite 101
State College, PA

---

## OPEN-END MORTGAGE

### THIS IS AN OPEN END MORTGAGE AND SECURES FUTURE ADVANCES PURSUANT TO 42 PA. C.S. §§ 8143 AND 8144

**THIS OPEN-END MORTGAGE** (this "**Mortgage**") is made as of August 12, 2021, by **Rajeev Sharma**, an individual, and **Vishnu Sharma**, an individual, (collectively, the "**Mortgagor**"), having an address at 2391 Shagbark Court, State College, Pennsylvania 16803, in favor of **WHITE OAK BUSINESS CAPITAL INC.** (formerly known as Federal National Payables, Inc., and formerly doing business as Federal National Commercial Credit) **("Mortgagee"),** a Delaware corporation, having an address at 7315 Wisconsin Avenue, Suite 600W, Bethesda, MD 20814.

### RECITALS

WHEREAS, Mortgagor owns in fee the land described in **Exhibit A** attached hereto and made a part hereof, together with the improvements now or hereafter erected thereon;

WHEREAS, Mortgagor is indebted to Mortgagee in the amount of $650,000, which amount may be increased to $1,000,000 (the "**Note Amount**") upon the occurrence of a Termination Event and expiration of the Cure Period, as such terms are defined in that that certain Settlement Agreement, dated as of the date hereof, by and between the Debtors and the Mortgagee (the "**Settlement Agreement**"), pursuant to that certain Promissory Note (the "**Note**"), dated as of the date hereof, made by Mortgagor and

VideoMining Corporation, (collectively, the "**Debtors**") in favor of Mortgagee (as the same may be amended, supplemented or replaced from time to time, the "**Note**"); and

WHEREAS, it is a condition precedent to the effectiveness of the Settlement Agreement that Mortgagor grants this Mortgage to Mortgagee.

**NOW, THEREFORE**, for the purpose of securing the following (the "**Obligations**"):

A.     The Debtors' obligations to Mortgagee under the Note and the Settlement Agreement; and

B.     All other loans, advances, debts, liabilities and obligations from time to time owing by Mortgagor or any other Debtor to Mortgagee (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to Mortgagor or any Debtor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising; and

C.     Any amendments, extensions, renewals and increases of or to any of the foregoing, and all costs and expenses of the Mortgagee incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses;

Mortgagor, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound hereby, does hereby mortgage, grant and convey to Mortgagee the following property, all accessions and additions thereto, all substitutions therefor and replacements and proceeds thereof, and all reversions and remainders of such property now owned or held or hereafter acquired (collectively, the "**Property**"), to wit:

(a) the real property described on **Exhibit A** attached hereto and made a part hereof, having a street address of 403 South Allen Street, Suite 101, State College, Pennsylvania (the "**Premises**");

(b) all present and future buildings and improvements erected or to be erected thereon, as well as all present and future alterations, additions and improvements now or hereafter made thereto (collectively, the

2

"**Improvements**"); and all streets, alleys, passages, easements, licenses, ways, water, water courses, water rights, air rights, other rights, timber, crops, minerals, liberties, privileges, hereditament and the appurtenances thereunto belonging (collectively, the "**Hereditaments**");

(c) all present and future reversions, remainders, incomes, rents, security deposits, issues, profits, fees, payments, grants, franchises, rights, claims, concessions, and operating privileges derived from or received in connection with any lease, license or other occupancy agreement (collectively, the "**Leases**"), whether now existing or hereafter arising (collectively, the "**Rents**");

(d) all present and future machinery, apparatus, equipment, fittings, fixtures, and articles of personal property now or hereafter owned by Mortgagor and located on, about, under or in the Premises or the Improvements, without regard to whether the same may be affixed to the Premises or Improvements, at any time and from time to time and used or usable in connection with any present or future operation or occupancy of the Improvements, including but not limited to all heating, electrical, air conditioning, ventilating, lighting, laundry, incinerating and power equipment, engines, pipes, pumps, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire prevention, fire extinguishing, and communications apparatus, appliances, carpeting, cabinets, partitions, ducts and compressors, and all parts and accessories therefor and all substitutions and replacements thereof, and the cash and non-cash proceeds of all the foregoing, including but not limited to the proceeds of any policy of insurance thereon (collectively, the "**Building Equipment**");

(e) all present and future rights of Mortgagor under contracts relating to the Premises, the Improvements, the Hereditaments; or the Building Equipment; all documents, contract rights, commitments, construction contracts, architectural agreements, instruments, notes and chattel paper arising from or by virtue of any transaction related to the Premises, the Improvements, or the Building Equipment; and all other interests of every kind and character that Mortgagor now has or hereafter acquires in and to the Premises, the Improvements, the Hereditaments and the Building Equipment; and

(f) all awards, decrees, proceeds and settlements made to or for the benefit of Mortgagor by reason of any damage to, destruction of or taking of the Premises or any part thereof or any Improvements, Hereditaments, or Building Equipment, whether made by reason of the exercise of the right of eminent domain or otherwise, or by any public or private authority, tribunal, corporation or other entity or by any natural person;

3

To have and to hold the same unto the Mortgagee, its successors and assigns, forever.

Provided, however, that if the Obligations shall be paid to the Mortgagee, and if the Mortgagor and any other obligor or guarantor of any of the Obligations shall keep and perform each of its other covenants, conditions and agreements set forth herein and in the other Loan Documents, then, upon the termination of all obligations, duties and commitments of the Mortgagor and any other obligor or guarantor of any of the Obligations under the Obligations and this Mortgage, and subject to the provisions of the this Mortgage that survive termination, this Mortgage shall become null and void.

**This is an open-end mortgage that secures future advances pursuant to 42 Pa. C.S. § 8143. The maximum amount secured by this Mortgage is 200% of the Note Amount.**

**IT IS UNDERSTOOD AND AGREED THAT THIS MORTGAGE SECURES PRESENT AND FUTURE ADVANCES WITH RESPECT TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO: (i) ADVANCES MADE FOR THE PAYMENT OF TAXES, ASSESSMENTS, MAINTENANCE CHARGES, INSURANCE PREMIUMS, OR COSTS INCURRED FOR THE PROTECTION OF THE PROPERTY OR THE LIEN OF THE MORTGAGE AND (ii) OUT-OF-POCKET EXPENSES (INCLUDING REASONABLE LEGAL FEES) INCURRED BY THE MORTGAGEE AS A RESULT OF THE MORTGAGOR'S DEFAULT UNDER THE SETTLEMENT AGREEMENT.**

Mortgagee's receipt of notice from the Mortgagor, seeking to terminate, limit, or restrict future advances, whether sent pursuant to 42 Pa. C.S. § 8143(b) or 8143(c) shall be an Event of Default under this Mortgage, and Mortgagor shall not be entitled to any notice or cure period.

**REPRESENTATIONS, WARRANTIES AND COVENANTS.**

1.      Representation.  The Mortgagor represents and warrants to the Mortgagee that (i) the Mortgagor has good and marketable title to an estate in fee simple absolute in the Premises and Improvements and has all right, title and interest in all other property constituting a part of the Property, free and clear of all liens and encumbrances, except as set forth on **Exhibit B** hereto and (ii) the Mortgagor's name and address are true and complete as set forth in the heading of this Mortgage. This Mortgage is a valid and enforceable first lien on the Property (except for the permitted encumbrances set forth on **Exhibit B**, including the Prior Mortgages (as hereinafter defined)) and the Mortgagee shall, subject to the Mortgagor's right of possession prior to an Event of Default, quietly enjoy and possess the Property. The Mortgagor shall preserve such title as it warrants herein and the validity and priority of the lien hereof and shall forever warrant and defend the same to the Mortgagee against the claims of all persons.

4

2.      Taxes.  Mortgagor shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any, by making payment when due to the payee thereof. Mortgagor shall promptly furnish to Mortgagee all notices of amounts due under this paragraph, and Mortgagor shall promptly furnish to Mortgagee receipts evidencing such payment. Mortgagor shall promptly discharge any lien which has priority over this Mortgage.

3.      Hazard Insurance. Mortgagor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Premises in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender.  Mortgagor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insured in such liability insurance policy.  Additionally, Mortgagor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require.  Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Mortgagor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice.   Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Mortgagor or any other person. Should the Premises be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Mortgagor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for so long as any Obligation is outstanding.

Mortgagor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Mortgagor fails to do so within fifteen (15) days of the casualty. Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Obligations, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Mortgagor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Mortgagor from the proceeds for the reasonable cost of repair or restoration if Mortgagor is not in default under this Mortgage.  Any proceeds which have not been disbursed within 180 days after

4818-1201-2013, v. 4

their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Obligations. If Lender holds any proceeds after payment in full of the Obligations, such proceeds shall be paid to Mortgagor as Mortgagor's interests may appear. Notwithstanding the foregoing, during any period in which any Prior Mortgage is in effect, compliance with the insurance provisions of such Prior Mortgage shall constitute compliance with the insurance requirements of this Mortgage, to the extent the same are in conflict. If any proceeds from insurance become payable on loss, the provisions of this Mortgage shall apply only to that portion of the proceeds not payable to the holder of the Prior Mortgage. As used herein, "**Prior Mortgage**" means any mortgage described on **Exhibit B** that has not been paid and discharged in full at the relevant time.

4.      Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Mortgagor shall keep the Property in good condition and repair, and shall not, without the prior written approval of Mortgagee, remove, demolish or materially alter the buildings or improvements on the Property, nor commit or suffer waste with respect thereto and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

Mortgagor shall comply with all laws, rules, regulations and ordinances made or promulgated by any lawful authority which may now or hereafter become applicable to the Property. Mortgagor shall permit Mortgagee's agents at any reasonable time after reasonable notice to Mortgagor, and from time to time to enter upon the Property and the buildings and improvements thereon erected for the purpose of inspecting and appraising the same. Mortgagor shall not take or permit any action with respect to the Property which will in any manner impair the security of the Mortgage.

5.      Protection of Mortgagee's Security. If Mortgagor fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Mortgagee's interest in the Property, including but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Mortgagee at Mortgagee's option, may make such appearances, disburse such sums and take such action as is necessary to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees, entry upon the Property to make repairs, and any and all such action that Mortgagee may deem necessary to protect the security of this Mortgage.

6

Any amounts disbursed by Mortgagee pursuant to this paragraph 5, with interest thereon, shall become Obligations of Mortgagor secured by this Mortgage. Unless Mortgagor and Mortgagee agree to other terms of payment; all such sums so paid or advanced by Mortgagee shall immediately and without demand be repaid by Mortgagor to Mortgagee, together with interest thereon computed from the date of disbursement at the statutory default rate. The production of a receipt by Mortgagee shall be conclusive proof of a payment or advance authorized hereby, and the amount and validity thereof. Nothing contained in this paragraph 5 shall require Mortgagee to incur any expense or take any action hereunder.

6.      Inspection. Mortgagee may make or cause to be made reasonable entries upon and inspection of the Property, provided that Mortgagee shall give Mortgagor notice prior to any such inspections specifying reasonable cause therefor related to Mortgagee's interest in the Property.

7.      Condemnation. In the event that the Property, or any part thereof, shall be taken in condemnation proceedings or by the exercise of any right of eminent domain or bona fide sale in lieu thereof (hereinafter collectively referred to as "condemnation proceedings"), Mortgagor and Mortgagee shall have the right to participate in any such condemnation proceedings. The award that may be made in any such condemnation proceedings and the proceeds thereof or the agreed upon compensation for damages sustained shall be applied by Mortgagee, in such order and amounts as Mortgagee, in its sole discretion, reasonably exercised, may elect, in reduction of the outstanding principal balance of the Note, all accrued and unpaid interest thereon, or any other sum due under and/or secured by the Note, or this Mortgage, whether or not then due, or disbursed to Mortgagor to restore any damage to the remaining portion of the Property not taken in the condemnation proceedings. Any such application of proceeds to principal shall not extend or postpone the due date of any monthly installments due under the Note.

8.      Environmental Matters. Mortgagor makes the following representations, warranties and covenants. Mortgagor shall comply with all Environmental Laws, as defined herein, and, to the extent necessary for the conduct of its business, shall obtain, maintain and comply with all permits, licenses, registrations and authorizations required under the Environmental Laws. Mortgagor shall comply with all governmental orders, directives, judgments, orders, decrees, awards, administrative consent orders, settlement agreements, or other settlement documents entered into with any administrative or governmental agency or entity concerning compliance with Environmental Laws. Mortgagor shall conduct its operations and its business in compliance with all federal, state and local statutes, ordinances, regulations, rules, standards and requirements of common law concerning or relating to industrial hygiene and the protection of health and the environment (collectively the "**Environmental Laws**").

7

Mortgagor shall not use or permit the use of the Property for the generation, storage, recycling, processing, transportation, disposal of or release of any Hazardous Substances, as defined herein, in a manner that is contrary to any Environmental Law. Mortgagor shall not use or permit the use of the Property in a manner which is contrary to any Environmental Law and which may give rise to liability, the imposition of a statutory lien, or require any Response, Removal or Remedial Action, all of the foregoing as defined herein, under any of the Environmental Laws. In the event that conditions are discovered on, about, beneath or arising from the Property which may give rise to liability, the imposition of a statutory lien, or require Response, Removal or Remedial Action, Mortgagor shall promptly take all actions, including Response, Removal or Remedial Action required under the Environmental Laws.

Mortgagor shall immediately notify the Mortgagee, in writing, of Mortgagor's receipt, knowledge or discovery of: (i) any notice of violation, citation, notice of claim, proceeding or litigation from any party, relating to its compliance with Environmental Laws; and (ii) any other information concerning conditions upon the Property which may give rise to liability, the imposition of a statutory lien, or require Response, Removal or Remedial Action under any of the Environmental Laws.

Mortgagor shall indemnify, defend and hold harmless Mortgagee, its parents, subsidiaries, successors, assigns, officers, directors, shareholders, employees and agents, from and against any and all claims, liabilities, penalties, fines, damages, judgments, losses, suits, actions, legal or administrative proceedings, interest, costs and expenses (including attorneys' fees, consultants' fees and expert fees) arising out of or in any way relating to: (i) the presence of Hazardous Substances on, about, beneath or arising from the Property; (ii) the failure of Mortgagor, its subsidiaries or its Related Affiliates to comply with the Environmental Laws. Mortgagor's indemnity and defense obligations under this paragraph shall include, without limitation, any and all costs of any Response, Removal or Remedial Action required under the Environmental Laws. The covenants and indemnities contained in this paragraph shall survive the discharge of Mortgagor's obligations hereunder and under the loan documents, whether through full payment of the loans, foreclosure, in lieu of foreclosure or otherwise.

As used in this Mortgage, the term "**Hazardous Substance**" shall mean any substance regulated under any of the Environmental Laws including, without limitation, any substance which is: (i) petroleum, asbestos or polychlorinated biphenyls; (ii) defined, designated or listed as a "Hazardous Substance" pursuant to Sections 3Q7 and 311 of the Clean Water Act, 33 U.S.C. Sections 1317, 1321, Section 101(14) of CERCLA, 42 U.S.C. Section 9601 or Section 103 of the Pennsylvania Hazardous Sites Cleanup Act, (iii) defined, designated or listed as a "Hazardous Waste" under Section 1004(3) of the Resource Conservation and Recovery Act, or Section 103 of the Pennsylvania Solid Waste Management Act, Pa. Stat. Ann. tit. 35 §6108.103; (iv) regulated under the Pennsylvania Clean Streams Law; (v) listed in the United States Department of Transportation

8

Hazardous Material Table. As used in this Mortgage, the terms "**Response**", "**Removal**" and "**Remedial Act**" shall be defined with reference to applicable sections of CERCLA, 42 U.S.C. §9601 et seq.

9.      Mortgagor Not Released. Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Mortgagee to Mortgagor shall not operate to release, in any manner, the liability of the original Mortgagor and Mortgagor's successor in interest. Mortgagee shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Mortgagor and Mortgagor's successor in interest.

10.     Forbearance by Mortgagee Not a Waiver. Any forbearance by Mortgagee in exercising any right or remedy hereunder or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Mortgagee shall not be a waiver of Mortgagee's right to accelerate the maturity of the indebtedness secured by this Mortgage.

11.     Successors and Assigns Bound; Joint and Several Liability; Captions. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective heirs, executors, administrators, successors and assigns of Mortgagee and Mortgagor, subject to the provisions of paragraph 13 hereof. All covenants and agreements of Mortgagor shall be joint and several, if there is more than one Mortgagor. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

12.     Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Mortgagor provided for in this Mortgage shall be given by mailing such notice by certified mail or sending such notice by recognized overnight courier to Mortgagor's address stated herein or at such other address as Mortgagor may designate by notice to Mortgagee as provided herein, and (b) any notice to Mortgagee shall be given by certified mail, return receipt requested, or by recognized overnight courier to Mortgagee's address stated herein or to such other address as Mortgagee may designate by notice to Mortgagor as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee (a) three (3) days after sent in the case of certified mail and (b) on the next day, in the case of delivery by recognized overnight courier.

13.     Transfer of the Property. In the event of Mortgagor selling, conveying, transferring, or entering into any agreement of sale or transfer of the Property to a purchaser, grantee or transferee without the written consent of Mortgagee, all monies hereby secured with accrued interest thereon shall forthwith become due and payable.

9

14. Events of Default. The occurrence of any one or more of the following events shall constitute an "**Event of Default**" hereunder: (a) any default occurs under the Settlement Agreement or the Note; (b) any default under any of the Obligations that does not have a defined set of "Events of Default" and the lapse of any notice or cure period provided in such Obligations with respect to such default; (c) the Mortgagor's failure to perform any of its obligations under this Mortgage; (d) any inaccuracy or breach of any representation or warranty made by or on behalf of Mortgagor or any other Debtor in this Mortgage, the Settlement Agreement or the Note; (e) an uninsured material loss, theft, damage, or destruction to any of the Property, or the entry of any judgment against the Mortgagor or any lien against or the making of any levy, seizure or attachment of or on the Property; (f) the Mortgagee's failure to have a mortgage lien on the Property with the priority required under paragraph 1; (g) [reserved]; (h) foreclosure proceedings are instituted against the Property upon any other lien or claim, whether alleged to be superior or junior to the lien of this Mortgage; (i) the Mortgagor's failure to pay any taxes and other impositions as required under paragraph 2, or to maintain in full force and effect any insurance required under paragraph 3; or (j) the Mortgagor, any other Debtor, or any other obligor or guarantor of any of the Obligations shall at any time deliver or cause to be delivered to the Mortgagee a notice pursuant to 42 Pa. C.S.A. §8143 (or any successor or similar law, rule or regulation) electing to limit the indebtedness secured by this Mortgage.

15. Rights and Remedies of Mortgagee; Application of Proceeds. If an Event of Default occurs, the Mortgagee may, at its option and without demand, notice or delay, do one or more of the following after the expiration of the Cure Period (as defined and described below):

(a) The Mortgagee may declare the entire unpaid principal balance of the Obligations, together with all interest thereon, to be due and payable immediately.

(b) The Mortgagee may (i) institute and maintain an action of mortgage foreclosure against the Property and the interests of the Mortgagor therein, (ii) institute and maintain an action on any instruments evidencing the Obligations or any portion thereof, and (iii) take such other action at law or in equity for the enforcement of any of the Loan Documents as the law may allow, and in each such action the Mortgagee shall be entitled to all costs of suit and attorneys' fees.

(c) The Mortgagee may, in its sole and absolute discretion: (i) collect any or all of the Rents, including any Rents past due and unpaid, (ii) perform any obligation or exercise any right or remedy of the Mortgagor under any Lease, or (iii) enforce any obligation of any tenant of any of the Property. The Mortgagee may exercise any right under this subparagraph (c), whether or not the Mortgagee shall have entered into possession of any of the Property, and nothing herein contained shall be

construed as constituting the Mortgagee a "mortgagee in possession", unless the Mortgagee shall have entered into and shall continue to be in actual possession of the Property. The Mortgagor hereby authorizes and directs each and every present and future tenant of any of the Property to pay all Rents directly to the Mortgagee and to perform all other obligations of that tenant for the direct benefit of the Mortgagee, as if the Mortgagee were the landlord under the Lease with that tenant, immediately upon receipt of a demand by the Mortgagee to make such payment or perform such obligations. The Mortgagor hereby waives any right, claim or demand it may now or hereafter have against any such tenant by reason of such payment of Rents or performance of obligations to the Mortgagee, and any such payment or performance to the Mortgagee shall discharge the obligations of the tenant to make such payment or performance to the Mortgagor.

(d)     The Mortgagee shall have the right, in connection with the exercise of its remedies hereunder, to the appointment of a receiver to take possession and control of the Property or to collect the Rents, without notice and without regard to the adequacy of the Property to secure the Obligations. A receiver while in possession of the Property shall have the right to make repairs and to make improvements necessary or advisable in its or his opinion to preserve the Property, or to make and keep them rentable to the best advantage, and the Mortgagee may advance moneys to a receiver for such purposes. Any moneys so expended or advanced by the Mortgagee or by a receiver shall be added to and become a part of the Obligations secured by this Mortgage.

Anything to the contrary contained herein notwithstanding, upon the occurrence of an Event of Default, the Mortgagor shall have 5 business days to cure from the receipt of a written notice detailing the Event of Default prior to Mortgagee exercising its rights and remedies under this Mortgage (the "**Cure Period**"). Each such communication shall be in writing and shall be deemed to have been validly served, given or delivered (a) upon the earlier of actual receipt and three (3) days after deposit in the United States Mail, registered or certified mail, return receipt requested, with proper postage prepaid, (b) upon transmission, when sent by electronic mail to rsharma@videomining.com, with a courtesy copy to rcooney@lampllaw.com, (c) one (1) Business Day after deposit with a reputable overnight courier with all charges prepaid or (d) when hand-delivered, all of which shall be addressed to the party to be notified and sent to the address or electronic mail address indicated herein. Failure or delay in delivering copies of any such communication to anyone other than Mortgagor shall in no way adversely affect the effectiveness of such communication.

The Mortgagee shall apply the proceeds of any foreclosure sale of, or other disposition or realization upon, or Rents or profits from, the Property to satisfy the Obligations in such order of application as the Mortgagee shall determine in its exclusive discretion.

11

16.     Mortgagee's Right to Protect Security.  The Mortgagee is hereby authorized to do any one or more of the following, irrespective of whether an Event of Default has occurred: (a) appear in and defend any action or proceeding purporting to affect the security hereof or the Mortgagee's rights or powers hereunder;  (b) purchase such insurance policies covering the Property as it may elect if the Mortgagor fails to maintain the insurance coverage required hereunder; and (c) take such action as the Mortgagee may determine to pay, perform or comply with any impositions or requirements of law, to cure any Events of Default and to protect its security in the Property.

17.     Appointment of Mortgagee as Attorney-in-Fact.  The Mortgagee, or any of its officers, is hereby irrevocably appointed attorney-in-fact for the Mortgagor (without requiring any of them to act as such), such appointment being coupled with an interest, to do any or all of the following:  (a) collect the Rents after the occurrence of an Event of Default; (b) settle for, collect and receive any awards payable under paragraph 3 or paragraph 7; and (c) execute, deliver and file, at Mortgagor's sole cost and expense such instruments as the Mortgagee may require in order to perfect, protect and maintain its liens and security interests on any portion of the Property.

18.     Certain Waivers.  The Mortgagor hereby waives and releases all benefit that might accrue to the Mortgagor by virtue of any present or future law exempting the Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any stay of execution, exemption from civil process or extension of time for payment or any rights of marshalling in the event of any sale hereunder of the Property, and, unless specifically required herein, all notices of the Mortgagor's default or of the Mortgagee's election to exercise, or the Mortgagee's actual exercise of any option under this Mortgage or any other Loan Document.

19.     Mortgage Extensions. The granting of an extension or extensions of time by Mortgagee with respect to the performance of any provision of this Mortgage or the Note on the part of Mortgagor to be performed, or the taking of any additional security, or the waiver by Mortgagee or failure by Mortgagee to enforce any provision of this Mortgage, or the Note or to declare a default with respect thereto, shall not operate as a waiver of any subsequent default or defaults or affect the right of Mortgagee to exercise all rights or remedies stipulated herein and therein.

20.     Attorneys' Fees and Expenses. If Mortgagee retains the services of counsel by reason of a claim of a default or an Event of Default hereunder or under any of the other loan documents or on account of any matter involving Mortgagor's title to the Property or the security interest intended to be granted hereby, or for examination of matters subject to Mortgagee's approval under the loan documents, all costs of suit and

all reasonable attorneys' fees, but in no event less than the sum of $750.00 (and/or allocated fees of Mortgagee's in-house legal counsel) and such other reasonable expenses so incurred by Mortgagee shall forthwith become due and payable, on demand, and shall be secured hereby.

21.     The Mortgagor agrees to indemnify each of the Mortgagee, each legal entity, if any, who controls, is controlled by or is under common control with the Mortgagee and each of their respective directors, officers, employees and agents (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against, any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur, or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Mortgagor), in connection with or arising out of or relating to the matters referred to in this Mortgage, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Mortgagor, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority, whether incurred in connection with litigation, mediation, arbitration, other alternative dispute processes, administrative proceedings and bankruptcy proceedings, and any and all appeals from any of the foregoing.   The indemnity agreement contained in this paragraph shall survive the termination of this Mortgage, payment of any Obligations and assignment of any rights hereunder.   The Mortgagor may participate at its expense in the defense of any such action or claim.

22.     Governing Law and Jurisdiction.  This Mortgage has been delivered to and accepted by the Mortgagee and will be deemed to be made in the Commonwealth of Pennsylvania.  **THIS MORTGAGE WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE LAWS OF THE Commonwealth of Pennsylvania, EXCLUDING ITS CONFLICT OF LAWS RULES.** The Mortgagor hereby irrevocably consents to the exclusive jurisdiction of any state or federal court for the county or judicial district where the Mortgagee's office indicated above is located and any state or federal court having jurisdiction over State College, Pennsylvania; provided that nothing contained in this Mortgage will prevent the Mortgagee from bringing any action, enforcing any award or judgment or exercising any rights against the Mortgagor individually, against any security or against any property of the Mortgagor within any other county, state or other foreign or domestic jurisdiction.  The Mortgagor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Mortgage.

23.    Prior Mortgages.  In the event of a conflict, the terms and provisions of this Mortgage are subject to the terms and provisions of any Prior Mortgages.

24.    **WAIVER OF JURY TRIAL.    THE MORTGAGOR IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS MORTGAGE, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS MORTGAGE OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS.    THE MORTGAGOR ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

4818-1201-2013, v. 4

The Mortgagor acknowledges that it has read and understood all the provisions of this Mortgage, including the waiver of jury trial, and has been advised by counsel as necessary or appropriate.

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

**WITNESS:**


_____          _____
                                          Rajeev Sharma


_____          _____
                                          Vishnu Sharma


[Signature page to Open-End Mortgage]

COMMONWEALTH OF PENNSYLVANIA          )
                                      )          ss:
COUNTY OF _____             )

On this, the ___12th___ day of August, 2021, before me, a Notary Public, the
undersigned officer, personally appeared RAJEEV SHARMA, who acknowledged that
he/she, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My commission expires:

> Commonwealth of Pennsylvania - Notary Seal
> Gwendolynn M English, Notary Public
> State College Boro, Centre County
> My Commission Expires February 25, 2024
> Commission Number 1296510

COMMONWEALTH OF PENNSYLVANIA          )
                                      )          ss:
COUNTY OF _____             )

On this, the ___12th___ day of August, 2021, before me, a Notary Public, the
undersigned officer, personally appeared VISHNU SHARMA, who acknowledged that
he/she, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My commission expires:

> Commonwealth of Pennsylvania - Notary Seal
> Gwendolynn M English, Notary Public
> State College Boro, Centre County
> My Commission Expires February 25, 2024
> Commission Number 1296510

[acknowledgment page to Open-End Mortgage]

## CERTIFICATE OF RESIDENCE

The undersigned certifies that the residence of the Mortgagee is 7315 Wisconsin Avenue, Suite 600W, Bethesda, MD 20814.

Joe Silipigni
Senior Vice President
On behalf of the Mortgagee

EXECUTION VERSION

**EXHIBIT A**

Legal Description of Premises

## EXHIBIT B

Permitted Encumbrances

## EXHIBIT F

### WIRE INSTRUCTIONS

See Attached